# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION-CINCINNATI

| | |
|---|---|
| NORCAL TEA PARTY PATRIOTS, *et al.*, | Case No. 1:13-cv-000341 |
| Plaintiffs, | Chief Judge Susan J. Dlott |
| v. | |
| INTERNAL REVENUE SERVICE, *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## INDIVIDUAL MANAGEMENT DEFENDANTS' MOTION TO DISMISS

Defendants Steven F. Bowling, Bonnie Esrig, Joseph Grant, Sarah Hall Ingram, Lois G. Lerner, Brenda Melahn, Steven T. Miller, Holly Paz, Douglas Shulman, Cindy Thomas and William Wilkins (collectively, "Individual Management Defendants") hereby move to dismiss the First Amended Class Action Complaint ("Amended Complaint") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal is appropriate as to Defendants Joseph Grant, Sarah Hall Ingram, Lois Lerner, Steven Miller, Holly Paz, Douglas Shulman, and William Wilkins because this Court lacks personal jurisdiction over them. This Court should dismiss Counts One, Two, and Three of the Amended Complaint as to all Individual Management Defendants because Plaintiffs fail to state a claim for which relief may be granted.

WHEREFORE, the Individual Management Defendants respectfully request that this Court dismiss Counts One, Two, and Three of the Amended Complaint with prejudice.

Dated:  November 18, 2013

Respectfully Submitted,

/s/ Mark Hayden
Mark Hayden (0066162)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
E-mail: mhayden@taftlaw.com

/s/ Brigida Benitez
Brigida Benitez (admitted pro hac vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
E-mail: bbenitez@steptoe.com

*Counsel for Defendants Steven F. Bowling,
Bonnie Esrig, Joseph Grant, Sarah Hall
Ingram, Lois G. Lerner, Brenda Melahn,
Steven T. Miller, Holly Paz, Douglas
Shulman, Cindy Thomas and William
Wilkins in their individual capacities*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION-CINCINNATI

NORCAL TEA PARTY PATRIOTS, *et al.*,

                              Plaintiffs,

        v.

INTERNAL REVENUE SERVICE, *et al.*,

                              Defendants.

Case No. 1:13-cv-000341

Chief Judge Susan J. Dlott

<u>CIVIL ACTION</u>

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>INDIVIDUAL MANAGEMENT DEFENDANTS' MOTION TO DISMISS</u>

Respectfully Submitted,

/s/ Mark Hayden
Mark Hayden (0066162)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
E-mail: mhayden@taftlaw.com

/s/ Brigida Benitez
Brigida Benitez (admitted pro hac vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
E-mail: bbenitez@steptoe.com

*Counsel for Defendants Steven F. Bowling,*
*Bonnie Esrig, Joseph Grant, Sarah Hall*
*Ingram, Lois G. Lerner, Brenda Melahn,*
*Steven T. Miller, Holly Paz, Douglas*
*Shulman, Cindy Thomas and William*
*Wilkins in their individual capacities*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

ARGUMENT ..................................................................................................................5

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER JOSEPH GRANT, SARAH HALL INGRAM, LOIS G. LERNER, STEVEN T. MILLER, HOLLY PAZ, DOUGLAS SHULMAN AND WILLIAM WILKINS...............................................................................................................5

II.     PLAINTIFFS CANNOT ASSERT A *BIVENS* CLAIM AGAINST THE INDIVIDUAL MANAGEMENT DEFENDANTS...........................................10

         A.     Controlling Precedent Mandates Dismissal of Plaintiffs' *Bivens* Claim...............................................................................................11

         B.     Plaintiffs Cannot Overcome the Individual Management Defendants' Qualified Immunity .................................................14

                  1.     Plaintiff Failed to Allege that Each Individual Management Defendant Purposely Infringed on Each Plaintiff's First and Fifth Amendment Rights................................................16

                  2.     Plaintiffs Failed to Adequately Allege a First Amendment Violation .........................................................18

                  3.     Plaintiffs Failed to Adequately Allege a Fifth Amendment Violation .........................................................21

                  4.     Plaintiffs Failed to Allege Conduct that Clearly Violated Their Constitutional Rights............................................25

III.    PLAINTIFFS' PRIVACY ACT AND RETURN INFORMATION CLAIMS MUST BE DISMISSED .......................................................27

CONCLUSION...............................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ............................................................................12

*Anderson v. Creighton*,
483 U.S. 635 (1987)............................................................................................14

*Ashcroft v. al-Kidd*,
131 S. Ct. 2074 (2011)........................................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... passim

*Bd. of Regents v. Roth*,
408 U.S. 564 (1972)............................................................................................24

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)......................................................................................10, 11

*Berridge v. Heiser*,
993 F. Supp. 1136 (S.D. Ohio 1997) ..................................................................28

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. 2002) ...............................................................................6

*Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*,
403 U.S. 388 (1971)..................................................................................... passim

*Bush v. Lucas*,
462 U.S. 367 (1983)............................................................................................12

*Cameron v. I.R.S.*,
773 F.2d 126 (7th Cir. 1985) ..............................................................................10

*Capristo v. Middlebrooks*,
No. 1:13-cv-00849-JRA, 2013 WL 4785967 (N.D. Ohio Sept. 6, 2013)................9

*Club Italia Soccer & Sports Org. v. Charter Twp. Of Shelby*,
470 F.3d 286 (6th Cir. 2006) ..............................................................................21

*Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*,
692 F.3d 469 (6th Cir. 2012) ................................................................................9

*Conn v. Zakharov,*
   667 F.3d 705 (6th Cir. 2012) ........................................................................9

*Corr. Servs. Corp. v. Malesko,*
   534 U.S. 61 (2001) ......................................................................................14

*Crawford-El v. Britton,*
   523 U.S. 574 (1998) ....................................................................................26

*Ctr. for Bio-ethical Reform, Inc. v. Napolitano,*
   648 F.3d 365 (6th Cir. 2011) .........................................................19, 21, 22

*Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,*
   845 F.2d 113 (6th Cir. 1988) ............................................................. passim

*Edwards v. City of Santa Barbara,*
   150 F.3d 1213 (9th Cir. 1998) ....................................................................25

*Fishburn v. Brown,*
   125 F.3d 979 (6th Cir. 1997) .............................................................. passim

*Guidon v. Twp. of Dundee,*
   488 Fed. App'x 27 (6th Cir. 2012) .............................................................23

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ....................................................................................14

*Hudson Valley Black Press v. I.R.S.,*
   409 F.3d 106 (2d Cir. 2005) .......................................................................12

*Humphries v. Chicarelli,*
   No. 1:10-cv-00749, 2012 WL 368255 (S.D. Ohio Feb. 3, 2012) (Dlott, J.)....................10, 11

*Ingraham v. Wright,*
   430 U.S. 651 (1977) ....................................................................................24

*Judicial Watch, Inc. v. Rossotti,*
   317 F.3d 401 (4th Cir. 2003) ...............................................................12, 26

*Kim v. United States,*
   632 F.3d 713 (D.C. Cir. 2011) ...................................................................12

*Krieger v. U.S. Dep't of Justice,*
   529 F. Supp. 2d 29 (D.D.C. 2008) .............................................................21

*Kroger Co. v. Malease Foods Corp.,*
   437 F.3d 506 (6th Cir. 2006) ........................................................................6

*Marcilis II v. Twp. of Redford,*
    693 F.3d 589 (6th Cir. 2012) .......................................................................14, 15

*Mid-South Music Corp. v. Kolak,*
    756 F.2d 23 (6th Cir. 1984) ........................................................................24, 28

*Sachs v. I.R.S,*
    59 F. App'x 116 (6th Cir. Feb. 21, 2003) ..............................................................11

*Scarbrough v. Morgan Cnty. Bd. of Educ.,*
    470 F.3d 250 (6th Cir. 2006) ...............................................................................22

*Schadl v. Kupinse,*
    No. 3:99-CV-844, 2001 WL 471891 (D. Conn. Mar. 29, 2001) ...........................10

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988) .............................................................................................11

*Spagnola v. Mathis,*
    859 F.2d 223 (D.C. Cir. 1988) (*en banc*) (*per curiam*) .........................................12

*Traton News, LLC v. Traton Corp.,*
    914 F. Supp. 2d 901 (S.D. Ohio 2012) .......................................................6, 8, 9

*Williams v. Bezy,*
    97 F. App'x 573 (6th Cir. 2004) .....................................................................24, 27

*Windsor v. The Tennessean,*
    719 F.2d 155 (6th Cir. 1984) ...............................................................................28

## CONSTITUTIONS

U.S. Const. amend. V......................................................................................... passim

U.S. Const. amend. XIV ..................................................................................... passim

## STATUTES

5 U.S.C. § 552a .........................................................................................5, 27, 28

5 U.S.C. § 552a(g)(1)...............................................................................................27

26 U.S.C. § 501(c)(3) ......................................................................................... passim

26 U.S.C. § 501(c)(4) ......................................................................................... passim

26 U.S.C. § 508(a) ...................................................................................13, 20, 26

26 U.S.C. § 6103 .......................................................................................5, 14, 27, 28

26 U.S.C. § 7428 ..............................................................................................13

26 U.S.C. § 7431 ...........................................................................5, 13, 14, 28

Ohio Rev. Code. Ann. § 2307.382 ..................................................................7

**INTERNET**

*About Us*, http://www.irs.gov/Charities-&-Non-Profits/About-IRS-Exempt-Organizations ..........3

**IRS GUIDANCE & DETERMINATIONS**

Rev. Proc. 2013-9, 2013-2 I.R.B. 255, Sec. 11.01 (Jan. 7, 2013)................................13

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(2) ......................................................5, 9

Federal Rule of Civil Procedure 12(b)(6) .......................................................10, 11

Defendants Steven F. Bowling,[1] Bonnie Esrig, Joseph Grant, Sarah Hall Ingram, Lois G. Lerner, Brenda Melahn, Steven T. Miller, Holly Paz, Douglas Shulman, Cindy Thomas and William Wilkins (collectively, "Individual Management Defendants") respectfully submit this Memorandum in Support of Individual Management Defendants' Motion to Dismiss the First Amended Class Action Complaint ("Amended Complaint").

## PRELIMINARY STATEMENT

This action stems from Plaintiffs' dissatisfaction with the manner in which the Internal Revenue Service ("IRS") reviewed and processed their applications for tax-exempt status. In seeking redress from the IRS, Plaintiffs also sued nineteen IRS employees, along with additional unnamed IRS employees, in their official and individual capacities. These employees include the Individual Management Defendants – eleven former or current IRS officials, none of whom is alleged to have personally reviewed, processed or even handled any of the Plaintiffs' applications. Despite the paucity of factual allegations, Plaintiffs contend that the Individual Management Defendants violated their First and Fifth Amendment rights, and have asserted a claim against them pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiffs' *Bivens* claim must fail. Courts of Appeal around the country, including the Sixth Circuit, have ruled that *Bivens* claims are unavailable against IRS employees, because the Internal Revenue Code provides potential litigants with a comprehensive remedial scheme of which they can avail themselves, as Plaintiffs have done here, by suing the IRS under both the Internal Revenue Code and the Administrative Procedure Act. Moreover, Plaintiffs' vague and

---

[1] Mr. Bowling's last name is spelled incorrectly in the Amended Complaint. *See* Compl. ¶ 32 (referring to Steven F. Bowling as "Steven F. Bolling").

generalized allegations of First and Fifth Amendment violations are insufficient to overcome the Individual Management Defendants' qualified immunity from suit. Accordingly, Plaintiffs' *Bivens* claim – Count Two of the Amended Complaint – should be dismissed with prejudice. Furthermore, to the extent that Plaintiffs' claims of Privacy Act violations and unauthorized inspection or disclosure of tax return information – Counts One and Three – are asserted against the Individual Management Defendants, those claims also must fail, as they are only available against the United States. As such, Counts I and III should also be dismissed.

## FACTUAL BACKGROUND

Plaintiffs are ten non-profit organizations that claim to "dissent from the policies or ideology of the Executive Branch of the United State[s] Government under its current Administration." Compl. ¶ 1. According to the Amended Complaint, all Plaintiffs, except the Texas Public Policy Foundation, filed applications with the IRS for tax-exempt status under 26 U.S.C. § 501(c)(3) or 26 U.S.C. § 501(c)(4). *Id*.

Before Plaintiffs filed their Complaint on May 20, 2013, the IRS had already granted the applications for tax-exempt status of NorCal Tea Party Patriots, Faith and Freedom Coalition of Ohio, Simi Valley Moorpark Tea Party, South Dakota Citizens for Liberty, Inc., and Tampa 9-12 Project. *Id*. ¶¶ 85-89. San Angelo Tea Party and Prescott Tea Party withdrew their applications. *Id*. ¶ 108, 110. The applications of Texas Patriots Tea Party and Americans Against Oppressive Laws are pending. *Id*. ¶¶ 90-93. Only one Plaintiff, the Faith and Freedom Coalition of Ohio, is an Ohio organization. *Id*. ¶ 8. All other Plaintiffs are out-of-state organizations. *Id*. ¶¶ 7, 9-16.

Among others, Plaintiffs sued eleven former or current management-level IRS employees in their individual capacity. *Id*. ¶¶ 17-40. These individuals are: Douglas Shulman, former Commissioner; Steven Miller, former Acting Commissioner; William Wilkins, who serves as

Chief Counsel; Joseph Grant, former Commissioner, Tax Exempt and Government Entities
Division; Sarah Hall Ingram, former Commissioner, Tax Exempt and Government Entities
Division; Lois Lerner, former Director of the Exempt Organizations Office; Holly Paz, former
Director of the Exempt Organizations Rulings and Agreements Office; Cindy Thomas, former
Program Manager of Exempt Organizations Determinations Unit; Steven F. Bowling, former
Manager in the Exempt Organizations Determinations Unit; Bonnie Esrig, former Area Manager
in the Exempt Organizations Determinations Unit; and Brenda Melahn, former Program Director
in the West Virginia Finance Office, former employee of the Small Business Self Employed
Division and former Program Manager in Exempt Organizations Determinations. *Id*. ¶¶ 21-27,
29-32.[2]

The IRS Exempt Organizations Division administers tax law governing charities,
foundations, and other entities that are not required to pay federal income tax. *See About Us*,
http://www.irs.gov/Charities-&-Non-Profits/About-IRS-Exempt-Organizations. Within the
Exempt Organizations Office, the Determinations Unit is responsible for reviewing applications
"as they are received to determine whether the organization qualifies for tax exempt status."
Compl. Ex. A, at 7 of 54. The Determinations Unit is located in Cincinnati, Ohio. *Id*. If the
Determinations Unit "needs technical assistance processing applications, it may call upon the
Technical Unit in the Rulings and Agreements office in Washington, D.C." *Id*.

In about 2010, the IRS Exempt Organizations Office began receiving numerous inquiries
from the public, media, watchdog groups, and legislators, who were concerned that certain tax-
exempt organizations were engaged in "political campaign activity to an impermissible extent."

---

[2] These are the correct titles for these individuals. The Amended Complaint includes incorrect titles for
Steven Bowling, Bonnie Esrig, Joseph Grant, Brenda Melahn, Holly Paz and Cindy Thomas. The titles of the
Individual Management Defendants have no effect on the consideration of this motion.

*Id*. at 49 of 54 (Management's Response to the Draft [Treasury Inspector General's] Report (Apr. 30, 2013)).  That year, the IRS also began to see a significant increase in the number of tax-exemption applications from organizations apparently engaged in, or intending to engage in, political activity.  *Id*.  Many of the applications were vague as to the activities the organizations planned to conduct and contained incomplete or inconsistent information regarding the organizations' involvement in political campaign activities.  *Id*. at 50 of 54.  The IRS approached this influx of applications in the same way it handled such matters in other areas; specifically, by assigning cases to designated employees trained on the relevant issues.  *Id.* at 49 of 54.  Such a "centralization" approach is aimed at providing consistent and high-quality results, although occasionally, at least initially, it can result in slowing the processing for some applications.  *Id.*

The IRS concluded that it needed additional information from the Plaintiffs to determine whether or not each met the requirements of § 501(c)(3) or § 501(c)(4).  Plaintiffs received inquiries from the IRS seeking information about each organization's involvement in political campaigns, whether they use voter education to support particular candidates, whether they attempt to influence the outcome of legislation, and the content of programs hosted by the organizations, among other inquiries.  Compl. Exs. C, D, E, F, G.  After receiving the responses, the IRS granted tax-exempt status to four of the Plaintiffs.

The Amended Complaint is vague as to which claims are asserted against the Individual Management Defendants.  Count One alleges that "Defendants" or the "IRS" violated ten sections of the Privacy Act by requesting that Plaintiffs provide certain information, failing to make certain disclosures, failing to maintain records in accordance with applicable laws, and by failing to employ safeguards to keep Plaintiffs' information confidential.  Compl. ¶ 111-127

(citing 5 U.S.C. § 552a). There are no allegations that any of the Individual Management

Defendants took any action that violated the Privacy Act. *See id*. ¶¶ 111-127.

In Count Two, Plaintiffs assert a *Bivens* claim against the Individual Management

Defendants for violations of their First Amendment and Fifth Amendment rights. *Id*. ¶¶ 128-

143. Plaintiffs allege that the Individual Management Defendants violated their First

Amendment Rights by chilling their political expression and interfering with their freedom to

associate. *Id*. ¶¶ 131-32. Plaintiffs also allege that the Individual Management Defendants

violated their Fifth Amendment rights by denying them equal protection and due process. *Id*.

¶¶ 134, 135. There are no specific allegations as to how the Individual Management Defendants

violated the Plaintiffs' constitutional rights.

In Count Three, Plaintiffs seek damages "for knowing or negligent unauthorized

inspection of tax return information in violation of Section 6103." *Id*. ¶ 149 (citing 26 U.S.C.

§ 7431). Plaintiffs allege that Defendants requested information "that was not necessary to

determine their tax-exempt status." *Id*. ¶ 146. It is unclear whether or not Plaintiffs assert Count

Three against the Individual Management Defendants. Plaintiffs do not allege that any of the

Individual Management Defendants engaged in conduct that violated § 6103.

## ARGUMENT

## I. THIS COURT LACKS PERSONAL JURISDICTION OVER JOSEPH GRANT, SARAH HALL INGRAM, LOIS G. LERNER, STEVEN T. MILLER, HOLLY PAZ, DOUGLAS SHULMAN AND WILLIAM WILKINS

Taking the allegations of the Amended Complaint as true, Joseph Grant, Sarah Hall

Ingram, Lois G. Lerner, Steven T. Miller, Holly Paz, Douglas Shulman and William Wilkins

(collectively, the "Out-of-State Individual Management Defendants") are entitled to dismissal for

lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Plaintiffs failed to

establish that the Out-of-State Individual Management Defendants, who are residents of the

District of Columbia, Maryland or Virginia, are subject to personal jurisdiction under the Ohio long-arm statute or have had minimum contacts with Ohio. *See* Compl. ¶¶ 21-27, 29 (conceding that these defendants reside in the Washington, DC area).

Personal jurisdiction is a requirement in *Bivens* actions. *See Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988) ("the ordinary requirements for exercise of *in personam* jurisdiction are fully applicable" in *Bivens* actions). Plaintiffs bear the burden of establishing that this Court may exercise personal jurisdiction over each Individual Management Defendant. *Traton News, LLC v. Traton Corp.*, 914 F. Supp. 2d 901 (S.D. Ohio 2012). *See also Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 n.3 (6th Cir. 2006) (plaintiff must make *prima facie* showing of jurisdiction if the court does not hold an evidentiary hearing; plaintiff must show the court may exercise personal jurisdiction by a preponderance of the evidence, if the court holds an evidentiary hearing).

This Court may assert personal jurisdiction over each Individual Management Defendant only if Plaintiffs demonstrate that (1) each Individual Management Defendant meets one of the criteria in Ohio's long-arm statute and (2) the exercise of personal jurisdiction over each Individual Management Defendant is consistent with constitutional principles of due process. *Traton News, LLC*, 914 F. Supp. 2d at 910 (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'") (alteration in original).

It is also incumbent on the Plaintiffs to show that there are "minimum contacts" between each Individual Management Defendant and Ohio to establish that litigation in this forum "does not offend traditional notions of fair play and substantial justice." *Id*. Here, the allegations of

6

the Amended Complaint fail to satisfy these requirements to establish that this Court has

personal jurisdiction over the Out-of-State Individual Management Defendants.

The Ohio long-arm statute provides, in relevant part, that a court is authorized to exercise

personal jurisdiction over a person as to a cause of action arising from that person's

> (1) Transacting any business in this state;
> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> . . .
> (6) [c]ausing tortious injury in this state to any person by an act outside the state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev. Code. Ann. § 2307.382.

Plaintiffs failed to meet their burden of establishing that the Out-of State Individual

Management Defendants fall into one or more of these categories. Nothing in the Amended

Complaint suggests that the Out-of-State Individual Management Defendants transacted business

in Ohio or contracted to supply services or goods in Ohio. Likewise, the Amended Complaint is

wholly devoid of any allegations that the Out-of-State Individual Management Defendants

committed a single act in Ohio that has any nexus to Plaintiffs' *Bivens* claim. Plaintiffs have not

alleged that the Out-of-State Individual Management Defendants were present in Ohio for any of

the purported actions or omissions on which their action is premised. Plaintiffs also have not

alleged that the Out-of-State Individual Management Defendants caused a tortious injury in Ohio

by act or omission outside of it. All but one Plaintiff is a resident of a state other than Ohio.

None of the Plaintiffs, including the sole Ohio Plaintiff, has alleged facts that would support a

finding that injuries occurred or manifested in Ohio as required by the long-arm statute.

7

To be sure, Plaintiffs have alleged that IRS employees in Ohio "coordinated with Washington, D.C. regarding the targeting of dissenting groups." Compl. ¶¶ 30-33. These vague allegations do not establish this Court's ability to exercise personal jurisdiction over the Out-of-State Individual Management Defendants. The Amended Complaint references coordinating with "Washington, D.C." without naming any specific Individual Management Defendants. Even if the Amended Complaint had alleged coordination between specific IRS employees in Ohio and specific Out-of-State Individual Management Defendants, those allegations would not support exercising personal jurisdiction over the Individual Management Defendants because "the allegation of conspiratorial activities . . . in the forum state is insufficient to support jurisdiction under the long arm statute in the absence of some minimal factual showing." *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,* 845 F.2d 113, 116 (6th Cir. 1988) (holding that "plaintiffs' unsupported allegations of conspiracy are likewise insufficient to justify an exercise of personal jurisdiction over the nonresident defendants").

Even if the long-arm statute allowed personal jurisdiction over the Out-of-State Individual Management Defendants, which it does not, forcing them to litigate in this forum would violate their due process rights. To comply with due process requirements, Plaintiffs must establish that each Out-of-State Individual Management Defendant has had "sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Traton News, LLC v. Traton*, Corp., 914 F. Supp. 2d 901, 911 (S.D. Ohio 2012). Courts in the Sixth Circuit find that a defendant has sufficient minimum contacts such that the court may exercise specific personal jurisdiction over a defendant if the following three requirements are met: (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum

state;" (2) "the cause of action must arise from defendant's activities there;" and (3) "the acts of the defendant or consequences caused by defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable." *Id.*; *see also Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012); *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012).

As discussed *supra*, no such showing is made here. The Out-of-State Individual Management Defendants lived and worked in the District of Columbia, Maryland or Virginia at all relevant times and have not had sufficient minimum contacts with Ohio to justify exercising personal jurisdiction over them. *See Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir.1988) (explaining that district court lacked personal jurisdiction over IRS employees who "at all relevant times lived and worked in the Washington, D.C. metropolitan area."); *Capristo v. Middlebrooks*, No. 1:13-cv-00849-JRA, 2013 WL 4785967, at *1 (N.D. Ohio Sept. 6, 2013) (plaintiff failed to establish personal jurisdiction in *Bivens* action where federal officials lived in Florida, worked in Florida, and had no interaction with Ohio during the relevant time period).

Asserting personal jurisdiction over the Out-of-State Individual Management Defendants, therefore, would offend "traditional notions of fair play and substantial justice." *Traton News, LLC*, 914 F. Supp. 2d at 911. Accordingly, dismissal of Plaintiffs' *Bivens* claims against each is required under Federal Rule of Civil Procedure 12(b)(2).

II.      **PLAINTIFFS CANNOT ASSERT A *BIVENS* CLAIM AGAINST THE**
         **INDIVIDUAL MANAGEMENT DEFENDANTS**

*Bivens* claims are unavailable against IRS employees, because the Internal Revenue Code

provides a comprehensive remedial scheme for allegedly aggrieved parties.[3]  *Fishburn v. Brown*,

125 F.3d 979, 972 (6th Cir. 1997) (affirming dismissal of *Bivens* claim against IRS employees).

Moreover, the *Bivens* claim against the Individual Management Defendants should be dismissed

because they are entitled to qualified immunity.  Plaintiffs have failed to allege that each

Individual Management Defendant infringed upon each Plaintiff's First and Fifth Amendment

rights so as to overcome the Individual Management Defendants' qualified immunity.

The *Bivens* claim arising from Plaintiffs' applications for tax-exempt status pursuant to

§§ 501(c)(3) and 501(c)(4) should thus be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(6),[4] which requires dismissal of a complaint for "failure to state a claim upon which relief

can be granted."  Fed. R. Civ. P. 12(b)(6).  The tenet that a district court must read all well-

pleaded allegations of the complaint as true is "inapplicable to legal conclusions, or legal

conclusions couched as factual allegations."  *Humphries v. Chicarelli*, No. 1:10-cv-00749, 2012

WL 368255, at *3 (S.D. Ohio Feb. 3, 2012) (Dlott, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)).  To withstand dismissal, a complaint must contain "more than labels and

conclusions [or] a formulaic recitation of the elements of a cause of action."  *Id.* (quoting *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  "Factual allegations must be enough to

---

[3] Courts have observed that additional policy reasons, *i.e.*, special factors that counsel hesitation, support precluding *Bivens* actions against IRS employees.  *Cameron v. I.R.S.*, 773 F.2d 126, 129 (7th Cir. 1985) (noting that recognizing a *Bivens* action against IRS employees could "interfere with the effective functioning of government"); *Schadl v. Kupinse*, No. 3:99-CV-844, 2001 WL 471891, at *4 (D. Conn. Mar. 29, 2001) (explaining that allowing a *Bivens* action against IRS employees would interfere with the effective administration of the federal tax system).

[4] Even if the Individual Management Defendants were subject to liability under *Bivens*, which they are not, this Court should nevertheless dismiss Count Two of the Amended Complaint, because Plaintiffs have failed to state a claim upon which relief may be granted.  Plaintiffs have made no specific allegations as to how any of the Individual Management Defendants acted to infringe Plaintiffs' First Amendment and Fifth Amendment rights.

raise a right to relief above the speculative level." *Id.* Accordingly, the facts alleged must state a claim for relief that is "plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (quoting *Twombly*, 550 U.S. at 563).

Under the 12(b)(6) standard, Plaintiffs' *Bivens* claim is ripe for dismissal with prejudice.[5]

### A.    Controlling Precedent Mandates Dismissal of Plaintiffs' *Bivens* Claim

The Supreme Court has held that *Bivens* remedies are unavailable where the "design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). The Sixth Circuit applied this principle in *Fishburn v. Brown*, 125 F.3d 979, 972 (6th Cir. 1997), when it ruled that *Bivens* claims against IRS employees arising from the collection of taxes must be dismissed. *See also Sachs v. I.R.S*, 59 F. App'x 116, 120 (6th Cir. Feb. 21, 2003) (affirming dismissal of Fourth Amendment claim against IRS employees because "*Bivens* actions are not available to taxpayers claiming violations of the Fourth Amendment.")

In *Fishburn*, a taxpayer filed a *Bivens* claim alleging that IRS employees violated her due process rights when they seized her property and arrested her. *Fishburn*, 125 F.3d at 980-81. The Sixth Circuit held that the district court lacked subject matter jurisdiction because "Congress has provided a damages remedy for the reckless or intentional disregard of Internal Revenue

---

[5] The Out-of-State Individual Management Defendants do not concede to this Court exercising personal jurisdiction over them by arguing that, in the alternative, the *Bivens* claim against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Code provisions by IRS employees in collecting taxes." *Id.* at 982-83. The prohibition of *Bivens* claims against IRS employees arising from the collection of taxes has been extended by other courts to all *Bivens* claims against IRS employees because the Internal Revenue Code contains a comprehensive remedial scheme.

Indeed, every circuit that has addressed whether a plaintiff may pursue a *Bivens* claim against IRS employees has declined to afford *Bivens* relief against IRS employees. *See Adams v. Johnson*, 355 F.3d 1179, 1184 (9th Cir. 2004) (collecting cases from the First, Third, Fifth Sixth, Seventh, Eighth, and Tenth Circuits holding that *Bivens* relief was unavailable in actions against IRS agents due to the comprehensive remedial scheme set forth in the Internal Revenue Code); *see also Kim v. United States*, 632 F.3d 713, 717 (D.C. Cir. 2011) (affirming dismissal of a *Bivens* claim against IRS officials because the Internal Revenue Code contains a "comprehensive remedial scheme"); *Hudson Valley Black Press v. I.R.S.*, 409 F.3d 106, 113 (2d Cir. 2005) (no *Bivens* relief against IRS agents for First Amendment violations); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 403, 408-13 (4th Cir. 2003) (no *Bivens* remedies were available where complaint alleged that IRS employees conducted "retaliatory, politically-motivated, and unconstitutional" audits against § 501(c)(3) organization in violation of First and Fifth Amendments because there was comprehensive remedial scheme under tax code).[6]

Here, Plaintiffs concede that all the Individual Management Defendants were IRS employees at all times relevant to the allegations of the Amended Complaint. *See* Compl. ¶¶ 21-

---

[6] Furthermore, even if the comprehensive remedial scheme does not address a plaintiff's particular claim, a *Bivens* action is not available, since availability hinges on the comprehensiveness of the statutory scheme, not access to specific remedies. *See Bush v. Lucas*, 462 U.S. 367, 388-90 (1983) (holding that a congressionally-created remedial scheme precluded a *Bivens* remedy even where such a remedy) would not fully compensate the plaintiff for harm suffered); *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988) (*en banc*) (*per curiam*) ("[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention[,] the inability for a plaintiff to obtain complete relief under a particular statute is not a sufficient basis for awarding that plaintiff damages under *Bivens*.").

27, 29-32.  The *Bivens* remedy that Plaintiffs seek is, accordingly, unavailable because the Internal Revenue Code provides a comprehensive remedial scheme.  *See Fishburn*, 125 F.3d at 972.  To be sure, in addition to seeking relief pursuant to *Bivens*, in the Amended Complaint, Plaintiffs seek relief under the Internal Revenue Code's comprehensive remedial scheme.

First, in Count Two, Plaintiffs seek declaratory relief against the IRS pursuant to the Internal Revenue Code.  The Amended Complaint alleges that some Plaintiffs filed applications for tax-exempt status pursuant to § 501(c)(3).  Congress has vested certain courts with authority to issue a declaratory judgment with respect to an organization's 501(c)(3) status in certain circumstances.  *See* 26 U.S.C. § 7428.  Indeed, Plaintiffs concede that "[t]his Court may grant declaratory and injunctive relief against the IRS and Treasury Department, pursuant to 28 U.S.C. §§ 2201 and 2202."  Compl. ¶ 141.  In this case, Plaintiffs seek precisely that relief for alleged violation of the First and Fifth Amendments.  *Id*. ¶ 4.

Second, although applicants for § 501(c)(4) status have no remedy similar to the declaratory judgment provision available to § 501(c)(3) applicants, § 501(c)(4) applicants have a different remedy built into the Internal Revenue Code.  Organizations seeking exemption under § 501(c)(4) are not required to submit applications for exemption.  *See* 26 U.S.C. § 508(a).  Instead, an organization may choose to hold itself out as exempt under § 501(c)(4), in which case it informs the IRS of its designation by filing the required annual information returns.  Treas. Reg. § 1.6033-1(a)(1) (as amended in 1971).  As with § 501(c)(3) applications, § 501(c)(4) exemptions are retroactive to the date of incorporation.  Rev. Proc. 2013-9, 2013-2 I.R.B. 255, Sec. 11.01 (Jan. 7, 2013).

Third, Plaintiffs seek damages under § 7431 of the Internal Revenue Code for unlawful inspection or disclosure of return information.  Plaintiffs assert that the "United States has

waived sovereign immunity and has provided taxpayers a cause of action for damages for knowing or negligent unauthorized inspection of tax return information in violation of Section 6103." Compl. ¶ 149 (citing 26 U.S.C. § 7431).

This Circuit has already declined to recognize *Bivens* claims against IRS employees, because the Internal Revenue Code sets forth a comprehensive remedial scheme. *See Fishburn* v. Brown, 125 F.3d 979, 972 (6th Cir. 1997).[7]  Consequently, the *Bivens* claim against the Individual Management Defendants should be dismissed.

### B. Plaintiffs Cannot Overcome the Individual Management Defendants' Qualified Immunity

This Court should dismiss Plaintiffs' *Bivens* claim because the Individual Management Defendants are entitled to qualified immunity from suit. *See Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988) (holding that IRS employees had qualified immunity from *Bivens* suit alleging First and Fifth Amendment violations in connection with IRS denial of § 501(c)(3) application). Qualified immunity protects government officials, including IRS employees, from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marcilis II v. Twp. of Redford*, 693 F.3d 589, 598 (6th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is immunity from suit and "should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009) ("the sufficiency of [the]

---

[7] The Supreme Court has made clear that "[b]ecause implied causes of action are disfavored, the court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" *Ashcroft v Iqbal*, 556 U.S. 662, 675 (2009); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that in the years since *Bivens*, the Court has repeatedly identified new "special factors counseling hesitation" and has "consistently refused" to extend *Bivens* liability to any new context or new category of defendants.").

pleadings is both inextricably intertwined with and directly implicated by the qualified immunity defense") (internal citations and quotations marks omitted).

Thus, "the relevant question in determining whether an official is entitled to qualified immunity is whether a reasonable person in his position could have believed his conduct to be lawful in light of clearly established law and the information the official possessed." *Ecclesiastical Order of the Ism of Am, Inc.*, 845 F.2d at 117. To overcome qualified immunity, a plaintiff must plead sufficient facts that, accepted as true, support a conclusion that a government official intentionally violated a clearly established statutory or constitutional right of which a reasonable person would have known. *Marcilis II*, 693 F.3d at 598. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (U.S. 2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

To survive a motion to dismiss, the complaint must "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Id.* at 596-97 (affirming dismissal of *Bivens* claim where complaint lumped defendants together and failed to allege with particularity what each did to violate the constitution) (emphasis in original). Plaintiffs' Amended Complaint is devoid of facts alleging that the Individual Management Defendants violated Plaintiffs' First and Fifth Amendment rights.

The First and Fifth Amendment claims in the Amended Complaint fail to trump the Individual Management Defendants' qualified immunity for at least four reasons. <u>First</u>, Plaintiffs have not alleged that each of the Individual Management Defendants purposely and personally infringed on Plaintiffs' First Amendment or Fifth Amendment rights. <u>Second</u>,

Plaintiffs have failed to adequately allege a First Amendment violation.  Third, Plaintiffs have failed to adequately allege a Fifth Amendment violation.  Finally, Plaintiffs have failed to allege conduct that a reasonable person would know clearly violated Plaintiffs' constitutional rights.

> **1.** **Plaintiff Failed to Allege that Each Individual Management Defendant Purposely Infringed on Each Plaintiff's First and Fifth Amendment Rights**

To overcome qualified immunity, Plaintiffs must plead that each Individual Management Defendant, through his or her own actions, intentionally violated each Plaintiff's First Amendment and Fifth Amendment rights.  *See Iqbal*, 556 U.S. at 676.  The Amended Complaint falls far short in this respect.

The allegations against the Individual Management Defendants boil down to contentions that some had varying degrees of knowledge regarding the alleged "targeting of dissenting groups" for heightened review based on purportedly discriminatory criteria or oversaw "the actions of the IRS and its employees."  Compl. ¶¶ 21-27, 29, 30.  Specifically, Plaintiffs allege that Mr. Shulman, Mr. Wilkins and Ms. Lerner were aware of, supervised, directed, and concealed the alleged "targeting of dissenting groups."  Compl. ¶¶ 21, 23, 24.  Plaintiffs similarly allege that Ms. Thomas and Ms. Melahn supervised, directed, and concealed "the targeting of dissenting groups."  *Id*. ¶¶ 29, 30.

The Amended Complaint also alleges that some of the Individual Management Defendants oversaw "the actions of the IRS and its employees."  Plaintiffs allege that Mr. Miller, Mr. Grant, Ms. Hall Ingram, and Ms. Paz supervised, directed, were aware of and attempted to conceal "the actions of the IRS and its employees."  *Id*. ¶¶ 22, 25-27.  Indeed, the Amended Complaint focuses on what each Individual Management Defendant purportedly *knew*, rather than what any of them *did*.  Knowledge of an alleged constitutional violation – even assuming a constitutional violation has been alleged – does not trump qualified immunity.  *Iqbal*, 556 U.S. at

677 (explaining that "purpose rather than knowledge is required" to overcome qualified immunity).

The few allegations of actions taken by particular Individual Management Defendants fail to state a First Amendment violation. The Amended Complaint alleges that Mr. Bowling and Ms. Esrig "participated" in the direction, supervision, development of criteria, and concealment of the targeting of dissenting groups. Compl. ¶ 31, 32. Furthermore, Mr. Bowling, Ms. Esrig, Ms. Thomas and Ms. Melahn are alleged to have coordinated with Washington regarding targeting dissenting groups. These allegations are vague and fail to plead what actions Mr. Bowling, Ms. Esrig, Ms. Thomas and Ms. Melahn took to target the Plaintiffs. *Id*. ¶¶ 29-32. The allegation that Ms. Paz sat in on the Inspector General interviews to intimidate fellow IRS employees is also defective, because it fails to state what Ms. Paz did to intimidate anyone or how this had any connection to an injury to the Plaintiffs. *See Id*. ¶ 27. The only Individual Management Defendants who are accused of any involvement with the implementation of the so-called targeting of dissenting groups are Mr. Wilkins, Ms. Lerner, Ms. Thomas, Mr. Bowling, and Ms. Esrig. *Id*. ¶¶ 21, 24, 30-32. The Amended Complaint, however, is silent on what they did to implement the so-called targeting scheme.

Plaintiffs appear to be attempting to hold the Individual Management Defendants liable under a theory of *respondeat superior*, which is not permitted. Conspicuously absent from the Amended Complaint are allegations that any of the Individual Management Defendants personally received, reviewed, evaluated, processed or made any decisions with respect to the Plaintiffs' § 501(c)(3) or § 501(c)(4) applications. There are no allegations that any of the Individual Management Defendants sent letters requesting additional information or

communicated in any way with Plaintiffs. Furthermore, there are no allegations that any of the Individual Management Defendants targeted the Plaintiffs' applications for heightened review.

To be sure, the Amended Complaint contains the conclusory and generic allegations that Defendants "succeeded in [chilling the political expression of entities like Plaintiffs] by imposing unreasonable burdens upon the exercise of First Amendment rights and by intimidating through massive government snooping into protected First Amendment activities." Compl. ¶ 131. Plaintiffs further allege that Defendants "interfered with the freedom of expressive association of Plaintiffs and its members by demanding details of all the groups they associated with and details about their speakers, members, and literature they allowed or distributed." *Id.* ¶ 132. Plaintiffs also contend that "because of their political viewpoints, dissenting groups were subjected to harassment, intimidation, delay, discrimination, expense, intrusiveness, and embarrassment all as part of a scheme by IRS agents, named Defendants, and officers John Does 1-100 to suppress their political activity and punish their political views." *Id.* ¶ 138.

These summary allegations against all the named defendants in this case, as well as the defendants who are unknown named employees of the IRS, do not absolve Plaintiffs' failure to make factual allegations regarding each Individual Management Defendant's intentional violations of Plaintiffs' First and Fifth Amendment rights. In sum, Plaintiffs have not overcome each Individual Management Defendant's qualified immunity, because they failed to plead facts to support a conclusion that each Individual Management Defendant intentionally infringed Plaintiffs' First and Fifth Amendment rights.

### 2. Plaintiffs Failed to Adequately Allege a First Amendment Violation

To state a First Amendment retaliation claim, a plaintiff must plead that "(1) the plaintiff was participating in a constitutionally protected activity; (2) the defendant's action injured the plaintiff in a way likely to deter a person of ordinary firmness from further participation in that

activity; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Ctr. for Bio-ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011). Plaintiffs have failed to plead facts that support a finding in their favor as to each element of a First Amendment claim.

First, the Amended Complaint does not contain allegations that each Plaintiff was participating in constitutionally protected activity.  Plaintiffs summarily allege that the Individual Management Defendants "impaired their ability to participate in the political process," "chill[ed] the political expression of dissenting associations like Plaintiffs," "interfered with the freedom of expressive association" and "impair[ed] their members' expressive associational effectiveness in the 2010 and 2012 election cycles."  Compl. ¶¶ 130-33.  These allegations are vague and fail to identify the constitutionally protected activity in which each Plaintiff was engaged.

Second, the Amended Complaint fails to allege that each Individual Management Defendant's conduct injured Plaintiffs in a way likely to deter a person of ordinary firmness from further participation in that activity.  648 F.3d at 371-72 ("the operative question is whether Plaintiffs have adequately pleaded that Defendants' actions would be sufficient to deter a citizen of ordinary firmness from participating in meetings or otherwise criticizing federal officials about matters relevant to Plaintiffs' political views.").

The Amended Complaint misses the mark because it contains only conclusory and bare allegations, which are not entitled to the presumption of truth.  *Id.* at 374 (concluding that "conclusory and bare allegations that defendants' actions have had the effect of chilling plaintiffs' speech" are "not well-pleaded, and their conclusory nature 'disentitles them to the presumption of truth'").  For example, Plaintiffs allege that the delay in processing their

applications and the requests for information "chilled dissenting groups and caused them to withdraw their applications for tax-exempt status."  Compl. ¶ 105.

Plaintiffs fail to allege *how* each organization's speech was chilled as a result of delay in processing their applications for tax-exempt status.  It is not reasonable to infer that a person of ordinary firmness would be silenced or avoid associating with others because of a delay in processing a tax-exempt application.  Furthermore, only two out of ten Plaintiffs withdrew their applications for tax-exempt status.  In any event, Plaintiffs have not alleged how the withdrawal of an application for tax-exempt status impacts speech or their ability to associate.[8]

Plaintiffs further allege that IRS agents or officers imposed "unreasonable burdens upon the exercise of First Amendment rights" and intimidated Plaintiffs with "massive government snooping into protected First Amendment activities."  Compl. ¶ 132.  It is not clear that this is an allegation with respect to the Individual Management Defendants.  The Amended Complaint does not identify the "unreasonable burdens" and fails to provide any information about the alleged "massive government snooping."

In addition, Plaintiffs contend that the Individual Management Defendants "interfered with the freedom of expressive association of Plaintiffs and its members by demanding details of all the groups they associated with and details about their speakers, members, and literature they allowed or distributed."  Compl. ¶ 132.  Again, Plaintiffs fail to include any allegations as to how they curtailed their expressive association as a result of the alleged requests for information.

To be sure, the Amended Complaint does not plead how each Individual Management Defendant engaged in conduct that would cause a person of ordinary firmness to abandon exercising First Amendment rights.  Plaintiffs never identify how each Individual Management

---

[8] Indeed, at least with respect to the § 501(c)(4) applicants, no IRS approval is even required to operate as a § 501(c)(4) tax-exempt organization.  *See* 26 U.S.C. § 508(a); Treas. Reg. § 1.6033-1(a)(1) (as amended in 1971).

Defendant infringed their First Amendment rights. Plaintiffs fail to allege that they suffered an injury as a result of conduct that is actionable under the First Amendment. There are simply no facts alleged, that taken as true, support a conclusion that the Individual Management Defendants' conduct caused Plaintiffs to alter or withhold their speech or association with their members or others. *See Krieger v. U.S. Dep't of Justice*, 529 F. Supp. 2d 29, 58 (D.D.C. 2008) ("[W]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech").

Third, the Amended Complaint fails to adequately plead that the Individual Management Defendants took an adverse action against Plaintiffs that was motivated by activity protected by the First Amendment. As explained above, there is a dearth of allegations with respect to the Individual Management Defendants taking *any* action with respect to Plaintiffs' applications for tax-exempt status. *See supra* II.B.1.

### 3. Plaintiffs Failed to Adequately Allege a Fifth Amendment Violation

Plaintiffs allege that the Individual Management Defendants violated their Fifth Amendment rights by denying them equal protection and due process. Compl. ¶¶ 134, 135. The Fifth Amendment "does not itself contain a guarantee of equal protection, but instead incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth Amendment." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). "The Equal Protection Clause of the Fourteenth Amendment commands that 'no state shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Id.* (quoting U.S. Const. amend. XIV, § 1). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Id.* at 379 (quoting *Club Italia Soccer & Sports Org. v.*

*Charter Twp. Of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006).  "The 'threshold element of an equal protection claim is disparate treatment' of similarly situated persons." *Id*. (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

Plaintiffs fail to adequately allege an equal protection violation because the Amended Complaint "fails to make a plausible allegation that similarly situated organizations and individuals, of a different political viewpoint, have not been subject to the same alleged treatment." *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379 (affirming dismissal of equal protection claim where disparate treatment allegations were "conclusory and unadorned" and plaintiffs failed to "make any comparison to similarly situated groups").

Here, Plaintiffs allege that they were denied equal protection in three ways.  <u>First</u>, Plaintiffs contend that applications from "favored groups" were processed more swiftly than "dissenting groups."  Compl. ¶ 134.  <u>Second</u>, Plaintiffs contend that tax-exempt status was "conferred based on political viewpoint – not equally, as the law requires." *Id*.  <u>Third</u>, Plaintiffs contend that "the political expression of dissenting groups as a class was greatly burdened by IRS agents, individual Defendants, and officers John Does 1-100, while favored groups (including those using the title 'progressive' in their names) were afforded full privileges of the law." *Id*.  These allegations, however, are conclusory and are not entitled to the presumption of truth. *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379 (reasoning that "conclusory and unadorned" allegations to disparate treatment "are not well-pleaded, and not entitled to a presumption of truth at this stage of the litigation").

First and foremost, there are no allegations that the Individual Management Defendants themselves did anything to subject Plaintiffs to disparate treatment in comparison to similarly situated organizations.  Furthermore, Plaintiffs allege that many groups were selected for special

scrutiny because the groups had certain terms, such as tea party or patriot in their name. Compl. ¶¶ 42-43. In addition, Plaintiffs allege that groups were targeted that focused on issues such as government spending, government debt, expanding or limiting government or taxes. *Id*. ¶ 44.

The Amended Complaint contains general allegations that other groups' applications were processed faster than Plaintiffs' applications. *See, e.g.*, Compl. ¶ 49 ("There is no evidence that liberal or 'progressive' political groups or groups supporting the re-election of President Barack Obama or the election of Democrats were targeted for similar delay, intrusive questions, or impairment of their First Amendment rights."). But, the Amended Complaint identifies only *one* other group whose application for tax-exempt status, according to a press article, was processed more quickly than Plaintiffs' applications for tax-exempt status. *See* Compl. ¶ 102 (observing that one organization's tax-exempt application was granted in 34 days). These contentions, however, lack any allegation that the group whose application was processed faster than Plaintiffs' applications was similarly situated to Plaintiffs. *See Guidon v. Twp. of Dundee*, 488 Fed. App'x 27, 37 (6th Cir. 2012) (ruling that a resident did not state an equal protection claim by alleging that other residents were granted permits while the town failed to act on his permit where the landowner failed to establish that he was treated "differently than other similarly situated residents."). Plaintiffs also fail to allege that the Individual Management Defendants had any role in the processing or timing of Plaintiffs' applications or the application of the other group. In any event, an equal protection violation cannot be presumed because one application for tax-exempt status was processed in a shorter period of time than Plaintiffs' applications.

Furthermore, even if Plaintiffs had alleged disparate treatment, they have not adequately pleaded an equal protection claim, because they have failed to allege disparate treatment that

"either burdens a fundamental right, targets a suspect class, or has no rational basis."  *See Williams v. Bezy*, 97 Fed. App'x 573, 574 (6th Cir. 2004) (affirming dismissal of *Bivens* claim where "plaintiff did not set out a cognizable equal protection claim because he did not allege that he was the victim of any invidious discrimination based on membership in a protected class").

Similarly, Plaintiffs fail to allege that they were denied due process.  The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  To prevail on a claim of deprivation of due process, a plaintiff must first establish the existence of a liberty or property interest for which the protection is sought; it then has to be decided "what procedures constitute 'due process of law.'"  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977) (citations omitted); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972).

The Sixth Circuit has stated that "[i]t is settled, however, that not every expectation is entitled to the due process protections of the Fifth Amendment."  *Mid-South Music Corp. v. Kolak*, 756 F.2d 23, 25 (6th Cir. 1984).  Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property.  *See Bd. of Regents*, 408 U.S. at 577.  Plaintiffs bear the burden of alleging that each Individual Management Defendant took some action that directly deprived each Plaintiff of property.  *See Mid-South Music Corp.*, 756 F.2d at 25 (declining to find that the IRS deprived plaintiff of a property interest where "the IRS's actions and the alleged business injury is attenuated.").

It is incumbent on a plaintiff that asserts a due process claim to allege (1) there was a property interest to which they were entitled by law, (2) of which they were deprived, (3) without due process of law.  Plaintiffs have failed to adequately allege a due process violation.  <u>First</u>, tax-exempt status is not a property interest to which Plaintiffs are entitled by law.  *See id.* (ruling that

plaintiff failed to allege deprivation of a "property interest cognizable under the Fifth Amendment" where plaintiff alleged that it lost income as a result of IRS sending a letter to its investors informing them that investments in plaintiff would not be entitled to a tax deduction).

Second, even if tax-exempt status were a property interest to which Plaintiffs are entitled under the law, there was no deprivation here. Plaintiffs basically allege that the IRS took too long to process their applications for tax-exempt status. But, during the time their applications were pending, they were not deprived of tax-exempt status, because the IRS recognizes tax-exempt status retroactively to the date the application was filed. And the § 501(c)(4) applicants could operate as such without the IRS processing their applications.

### 4.    Plaintiffs Failed to Allege Conduct that Clearly Violated Their Constitutional Rights

Showing that each Individual Management Defendant's conduct clearly violated established law "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). The allegations in the Amended Complaint fall far short of alleging that each Individual Management Defendant engaged in conduct that amounts to a clearly established constitutional violation. *See supra* Part II.B.1-3.

First, and significantly, Plaintiffs fail to allege that any one of the Individual Management Defendants took any action with respect to any of the Plaintiff's applications. There are no allegations that any of the Individual Management Defendants singled any Plaintiff out for heightened scrutiny. Indeed, there is no concrete connection alleged between the Individual Management Defendants and the Plaintiffs.

Second, taking Plaintiffs' allegations as true, they alone do not assert a clearly established constitutional violation. *See Edwards v. City of Santa Barbara*, 150 F.3d 1213, 1216 n.3 (9th

Cir. 1998) ("The fact that a majority of those prosecuted under the ordinance have been anti-abortion protesters does not permit an automatic inference of discriminatory purpose.").[9] All applicants for § 501(c)(3) status face some level of scrutiny. *See* 26 U.S.C. §§ 501(c)(3), 508(a). That is provided for in the Internal Revenue Code. Some applications will encounter a more stringent level of scrutiny than others. And, as a result, processing times for each applicant may differ. Bad faith cannot be presumed. *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) (observing that "[i]t is obvious, of course, that bare allegations of malice would not suffice to establish a constitutional claim"). It is Plaintiffs' burden to show that they were targeted for an impermissible purpose.

Finally, *even if* the Individual Management Defendants were alleged to have reviewed Plaintiffs' applications, and had done so on the basis of their political activities, this is explicitly provided for in the statute, and cannot be the basis of a constitutional injury. "Section 501(c)(3) provides an explicit basis for the IRS to investigate [applicant's] tax-exempt status and determine if its 'political' activities merit a change in its status." *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 403, 407 (4th Cir. 2003) (holding that it was possible and even "plausible" that the IRS's pursuit of an audit in that case was prompted by its legitimate suspicions that the petitioner's "earnest efforts to assist in the impeachment of President Clinton" constituted the sort of "prohibited political activity barred by 501(c)(3) status.").

The Sixth Circuit has declined to trump IRS officials' qualified immunity in a similar case. In *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988),

---

[9] The "obvious alternative explanation" for the IRS allegedly applying heightened scrutiny to Plaintiffs is that the IRS was legitimately investigating whether Plaintiffs qualified for tax-exempt status under § 501(c)(3) or § 501(c)(4). *See Ashcroft v Iqbal*, 556 U.S. 662, 682 (2009) (providing that discrimination is not a plausible conclusion where an "obvious alternative explanation" for an allegedly unconstitutional policy was that a legitimate policy had produced disparate, incidental impact on supposedly "targeted" groups, "even though the purpose of the policy was to target [no such groups]").

a religious organization sued IRS employees pursuant to *Bivens* for First and Fifth Amendment violations in connection with the denial of their application for tax-exempt status under § 501(c)(3). The Sixth Circuit affirmed the dismissal on qualified immunity grounds. The court reasoned that "a reasonable IRS official certainly could have believed that the actions taken by defendants in processing and ultimately denying plaintiffs' application for tax-exempt status were lawful in light of clearly established law and the information that was available to defendants." *Id.* at 117. The court further stated that "the district court correctly found that none of the actions taken by the defendants violated any of the plaintiffs' clearly established constitutional or statutory rights. The IRS and its employees have statutory authority under Internal Revenue Code §§ 501(c)(3) and 7601 to investigate and determine the plaintiffs' claim to tax-exempt status." *Id.* This case presents a virtually identical scenario and should lead to the same result.

For the above stated reasons, the allegations of the Amended Complaint fail to overcome the Individual Management Defendants' qualified immunity from suit.

## III. PLAINTIFFS' PRIVACY ACT AND RETURN INFORMATION CLAIMS MUST BE DISMISSED

To the extent that the Amended Complaint can be construed as asserting a Privacy Act claim under 5 U.S.C. § 552a in Count One, and alleges a claim for unauthorized inspection or disclosure of tax return information under 26 U.S.C. § 6103 in Count Three, such claims are not available against Individual Management Defendants and should be dismissed.[10] The plain text of the Privacy Act authorizes civil actions solely "against the agency." 5 U.S.C. § 552a(g)(1); *see also Williams v. Bezy*, 97 F. App'x 573, 573 (6th Cir. 2004) (affirming dismissal of privacy

---

[10] The Out-of-State Individual Management Defendants do not concede to this Court exercising personal jurisdiction over them by arguing that, in the alternative, the Privacy Act claim under 5 U.S.C. § 552a and claim for unauthorized inspection or disclosure of tax return information under 26 U.S.C. § 6103 should be dismissed.

act claims against federal prison officials in their individual capacities because "Plaintiff's Privacy Act cause of action is available only against an agency of the United States."). The Sixth Circuit has ruled that "[t]he term 'agency' [in § 552a] does not encompass individual government officials." *Windsor v. The Tennessean*, 719 F.2d 155, 160 (6th Cir. 1984). In *Windsor*, the Sixth Circuit stated that "Congress could have exposed individuals to civil liability under section 552a(g) but chose not to do so." *Id.* at 160. The court held, therefore, that there was no § 552a Privacy Act claim available against the defendants "even if the defendants violated" § 522a.

The same analysis applies to preclude Plaintiffs' claims alleging the unauthorized inspection or disclosure of tax return information pursuant to § 6103 because Plaintiffs may pursue this claim only against the United States. *See Mid-South Music Corp. v. Kolak*, 756 F.2d 23, 25 (6th Cir. 1984) (affirming dismissal of claim against IRS officials alleging that they violated § 6103 because the only proper defendant in such an action is the United States). Furthermore, 26 U.S.C. § 7431 provides the exclusive remedy for the types of claims asserted by Plaintiffs. *Berridge v. Heiser*, 993 F. Supp. 1136, 1144 (S.D. Ohio 1997) (holding that § 7431 provides the exclusive remedy for § 6103 violations and plaintiff's Privacy Act claims were thus brought "under the wrong statutory scheme"). Plaintiffs' § 552a and § 6103 claims are not available against the Individual Management Defendants. Counts One and Three of the Amended Complaint, therefore, also require dismissal.

## CONCLUSION

For the foregoing reasons, the Individual Management Defendants respectfully request that Counts One, Two and Three of the Amended Complaint be dismissed with prejudice.

Dated:  November 18, 2013

Respectfully Submitted,

/s/ Mark Hayden
Mark Hayden (0066162)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
E-mail: mhayden@taftlaw.com

/s/ Brigida Benitez
Brigida Benitez (admitted pro hac vice)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
E-mail: bbenitez@steptoe.com

*Counsel for Defendants Steven F. Bowling,*
*Bonnie Esrig, Joseph Grant, Sarah Hall*
*Ingram, Lois G. Lerner, Brenda Melahn,*
*Steven T. Miller, Holly Paz, Douglas*
*Shulman, Cindy Thomas and William*
*Wilkins in their individual capacities*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18TH day of November, 2013, a copy of the foregoing was

filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing

system to the parties indicated on the electronic filing receipt.  Parties may access this filing

through the Court's system.

/s/ Mark T. Hayden
*Counsel for Defendants Steven F. Bowling, Bonnie*
*Esrig, Joseph Grant, Sarah Hall Ingram, Lois G.*
*Lerner, Brenda Melahn, Steven T. Miller, Holly*
*Paz, Douglas Shulman, Cindy Thomas and William*
*Wilkins in their individual capacities*

29