IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| NORCAL TEA PARTY PATRIOTS, et al., | ) | |
| ON BEHALF OF THEMSELVES, | ) | Case No. 1:13cv00341 |
| THEIR MEMBERS, and THE CLASS | ) | |
| THEY SEEK TO REPRESENT, | ) | Chief Judge Susan J. Dlott |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE INTERNAL REVENUE SERVICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————————— | ) | |

**MOTION TO DISMISS CLAIMS AGAINST FEDERAL DEFENDANTS
AND SUPPORTING MEMORANDUM OF LAW**

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT……………………………………………………….. 4

MOTION TO DISMISS……………………………………………………………….. 5

MEMORANDUM OF LAW……………………………………………………………...7

    I.    THE COURT LACKS JURISDICTION TO ENTERTAIN PLAINTIFFS' PRIVACY ACT CLAIMS. ………………………………………………… 7

        A.  Sovereign immunity bars Plaintiffs' claims under the Privacy Act because Plaintiffs fail to meet a condition of the Act's waiver. ……………... 7

        B.  Plaintiffs lack standing to bring claims under the Privacy Act because they are not individuals. …………………………………………………9

        C.  Associational standing does not apply here. ………………………………...10

            1.    The Privacy Act precludes the application of associational standing. …………………………………………… 10

            2.    Plaintiffs fail to satisfy the elements of associational standing. ... 11

                a.  Plaintiffs have failed to plead facts sufficient to demonstrate that their individual members would have standing to sue in their own right. …………………………...11

                b.  The interests the organizations seek to protect are not germane to the organizations' purposes. ………………………12

                c.  The claim asserted and the relief requested require the participation of individual members in the lawsuit. …………13

    II.    THE DECLARATORY AND INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK THROUGH COUNT II IS PRECLUDED BY STATUTE. ……………... 16

    III.    PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR DAMAGES UNDER SECTION 7431 OF THE INTERNAL REVENUE CODE. ………….. 19

        A.  Legal standards. ………………………………………………………20

        B.  Plaintiffs fail to identify the information that the IRS wrongfully inspected. ……………………………………………………………… 22

C.  Section 6103 does not bar the IRS from inspecting the very same information that Plaintiffs submitted for consideration in support of their tax exempt applications. ……………………………………………… 23

1. Section 7431 is not a remedy for alleged improper requests for information. …………………………………………………… 24

2. Section 7431 explicitly bars Plaintiffs' claim because Plaintiffs requested that the IRS inspect the information they submitted for review. …………………………………………………… 25

3. Under Section 6103, the IRS was authorized to inspect the information submitted by the Plaintiffs. …………………………… 26

CONCLUSION……………………………………………………………… 28

## SUMMARY OF ARGUMENT

The Internal Revenue Service, the Department of the Treasury, and the agency employees sued in their official capacity (referred to collectively as "the United States") again move to dismiss Plaintiffs' claims against them.  After our previous motion to dismiss Privacy Act claims, the original Plaintiff added new plaintiffs, new individual defendants, and new claims and allegations.  Nonetheless, Plaintiffs' amendments do not cure the fatal flaws with the Privacy Act claim.[1]  Plaintiffs are still ineligible for relief under the Privacy Act because they are organizations – *not* individuals.  Moreover, these Plaintiffs do not qualify for a limited judicial exception called "associational standing."  Therefore, they lack standing, and their claim does not fall within any waiver of sovereign immunity relating to the Privacy Act.

In Count II, which is ostensibly a *Bivens* claim against employees in their individual capacity, the Plaintiffs inserted a claim for declaratory and injunctive relief against the federal defendants.  This claim also should be dismissed because the Declaratory Judgment Act and the Anti-Injunction Act both operate to bar the relief Plaintiffs seek.

Finally, Plaintiffs' amended complaint added a new claim for damages under 26 U.S.C. 6103 and 7431, which allow a damages action for the unauthorized disclosure or inspection of confidential tax return information.  Plaintiffs allege that the IRS violated section 6103 by "inspecting" the information that Plaintiffs submitted in support of their application for tax exempt status.  Plaintiffs argue that the IRS should not have asked for the information and should

---

[1] Since the federal defendants moved to dismiss the claims asserted against them in the first amended complaint, Plaintiffs have amended their complaint for a second time.  The second amended complaint does not change any of the claims against the federal defendants, so the present motion to dismiss is unchanged from Doc. No. 35.

have conducted its investigation differently.  But how the IRS conducted its investigation is immaterial to whether the IRS was allowed to look at the information once submitted.  Nor do Plaintiffs even allege *what* portion of their separate tax return information was wrongfully inspected.  Moreover, section 7431 expressly bars an action for damages – like this one – that is based on an inspection that the taxpayer requested, and section 6103 expressly allows the IRS to inspect return information for "tax administration purposes," which includes the investigation triggered by Plaintiffs' applications for tax exempt status.  Therefore, Plaintiffs' claims against the United States in Counts I, II, and III should be dismissed.

## MOTION TO DISMISS

Plaintiff NorCal Tea Party Patriots, along with nine more Plaintiff organizations added in the amended complaint, raise the following four claims: (1) a claim for damages for violations of the Privacy Act of 1974 (Count I); (2) a claim for damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against the individual defendants for violations of Plaintiffs' rights under the First and Fifth Amendments to the U.S. Constitution (Count II); (3) a claim for declaratory relief that the Internal Revenue Service and the Treasury Department violated Plaintiffs' rights under the First and Fifth Amendments, and an injunction to prevent further alleged unauthorized actions (also in Count II); and (4) claims for violations of 26 U.S.C. § 6103, which relates to the unauthorized inspection and/or disclosure of tax returns or tax return information (Count III).  (Doc. 14 at 25-35.)

NorCal originally filed this action on behalf of itself and its individual members, alleging claims for damages for violation of the Privacy Act and under *Bivens*.  (Doc. 1 ¶ 1.)  The named federal defendants, *i.e.*, the Internal Revenue Service and the United States Department of Treasury, moved to dismiss NorCal's Privacy Act claims because the United States has not

waived its sovereign immunity for NorCal to bring those claims and because NorCal lacks standing to raise them, either on its own or on behalf of its individual members.  (Doc. 12 at 1.)

NorCal then filed its amended complaint, adding nine additional organizations as plaintiffs.  The amended complaint also adds nineteen named IRS officers and/or employees to the original slate of defendants.[2]

Plaintiffs' Privacy Act claims in the amended complaint fail for the same reasons that NorCal's claims failed in the original complaint:  the United States has not waived its sovereign immunity for these ten plaintiff organizations to bring those claims and because the plaintiff organizations lack standing to raise them, either on their own or on behalf of their individual members.  In addition, Plaintiffs' claims for declaratory and injunctive relief in Count II are barred by operation of the Declaratory Judgment Act and the Anti-Injunction Act.  The only remaining claim against the government defendants is the claim for damages for alleged unauthorized inspection of return information (Count III).[3]  As described below, Plaintiffs have failed to state a claim upon which relief may be granted as to Count III.  The United States thus

---

[2] It appears that Plaintiffs are suing those nineteen named IRS officers and/or employees in both their official and individual capacities.  Although undersigned counsel represent those Defendants in their official capacities, the Civil Division of the Department of Justice has authorized representation by private counsel at government expense for those Defendants, and has hired outside counsel for them.

[3] The *Bivens* claim for damages in Count II is only against defendants in their individual capacities, and thus, that Count is not brought against the United States and is not addressed here.

moves to dismiss each of those claims.[4]  Pursuant to Local Rule 7.2, a supporting memorandum of law is incorporated with this motion.

## MEMORANDUM OF LAW

I. **THE COURT LACKS JURISDICTION TO ENTERTAIN PLAINTIFFS' PRIVACY ACT CLAIMS.**

A. **Sovereign immunity bars Plaintiffs' claims under the Privacy Act because Plaintiffs fail to meet a condition of the Act's waiver.**

The Privacy Act permits individuals – and only individuals – to bring actions against federal agencies for alleged violations under the Act.  The portion of the Privacy Act that authorizes such actions provides as follows:

Whenever any agency

(A) makes a determination under subsection (d)(3) of this section not to amend an *individual's* record in accordance with his request, or fails to make such review in conformity with that subsection;

(B) refuses to comply with an *individual* request under subsection (d)(1) of this section;

(C) fails to maintain any record concerning any *individual* with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the *individual* that may be made on the basis of such record, and consequently a determination is made which is adverse to the *individual*; or

---

[4] Plaintiffs have not been entirely clear about which defendants they intend to proceed against in their Privacy Act and section 7431 claims.  In the spirit of caution, the named federal defendants have assumed that Plaintiffs intend to bring their Privacy Act and section 7431 claims against all the defendants.  If that is the case, then Plaintiffs have named improper defendants to those claims.  Actions under the Privacy Act may be brought only against "the agency" in question. 5 U.S.C. § 552a(g)(1).  Actions under section 7431 may only be brought "against the United States."  26 U.S.C. 7431(a).  In addition to the reasons for dismissal addressed below, any Privacy Act or section 7431 claims brought against the individually named IRS officers and/or employees must be dismissed because they are brought against improper parties.

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an *individual*,

the *individual* may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1) (emphases added).  Under the Privacy Act, "the term 'individual' means a citizen of the United States or an alien lawfully admitted for permanent residence."  *Id.* § 552a(a)(2).

Here, Plaintiffs assert that each of them is "an organization comprised of individual citizens."  (Doc. 14 ¶ 1.)  None of the ten plaintiff organizations is an individual within the meaning of the Privacy Act, and each one fails to meet that condition of Congress' waiver of sovereign immunity under the Act.[5]

The doctrine of sovereign or governmental immunity renders the United States immune from suit except where Congress has waived its immunity by specific statute.  *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *United States v. Testan*, 424 U.S. 392, 399 (1976).  The Supreme Court has "said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text."  *Federal Aviation Administration v. Cooper*, 132 S. Ct. 1441, 1448 (2012) (citing, *inter alia*, *Lane v. Peña*, 518 U.S. 187, 192 (1996)).  But even where Congress has authorized a cause of action against the United States, "the terms of its

---

[5] Plaintiffs also assert that they "have assumed the corporate form and have sought exemptions to protect the organizations from paying taxes on the resources the individuals contribute to the groups for their expressive purposes."  (Doc. 14 ¶ 125.)  It is incongruous for Plaintiffs to try to assert a cause of action reserved to individuals in one setting while claiming the advantages of corporate formation in another.

consent to be sued in any court define that court's jurisdiction to entertain the suit." *Testan*, 424 U.S. at 399 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

In the case of the Privacy Act, one of the conditions of the United States' waiver of sovereign immunity is that any suit brought thereunder may be brought only by an individual. *See* 5 U.S.C. § 552a(g)(1). Just as waivers of immunity must be unequivocally expressed, the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Nakshian*, 453 U.S. at 161 (quoting *Soriano v. United States*, 352 U.S. 270, 276 (1957)); *see also Lane*, 518 U.S. at 192 (stating that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign"). As described above, Congress unambiguously defined who is an "individual" within the meaning of the Privacy Act, and Plaintiffs simply do not qualify. Plaintiffs fail to meet a clear condition of the Privacy Act's waiver of sovereign immunity. As a result, sovereign immunity remains intact, and the Privacy Act claims must be dismissed.

### B. **Plaintiffs lack standing to bring claims under the Privacy Act because they are not individuals.**

As described above, the Privacy Act authorizes suits brought only by individuals, and Plaintiffs are not individuals within the meaning of the Act. Plaintiffs thus lack standing to bring claims under the Act. "[T]he Privacy Act does not confer standing upon organizations on their own or purporting to sue on behalf of their members." *Committee in Solidarity with the People of El Salvador (CISPES) v. Sessions*, 738 F. Supp. 544, 547 (D.D.C. 1990); *see also Dresser Industries, Inc. v. United States*, 596 F.2d 1231, 1237-38 (5th Cir. 1979) (finding that a corporation was not an "individual" as defined in the Privacy Act and that it consequently lacked standing to pursue any claims under the Act); *Cell Assocs., Inc. v. Nat'l Institutes of Health*, 579 F.2d 1155, 1157 (9th Cir. 1978) (same).

9

Congress has mandated that individuals are the only parties who may bring suit for alleged violations of the Privacy Act. Plaintiffs are not individuals, and their claims for relief based on the Privacy Act must be dismissed for lack of standing.

**C. Associational standing does not apply here.**

Plaintiffs mistakenly assert that they have associational standing to bring Privacy Act claims on behalf of their individual members. (Doc. 14 ¶ 126.) The Supreme Court has recognized a "doctrine of associational standing, under which an organization may sue to redress its members' injuries, even without a showing of injury to the association itself." *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996). Under that doctrine,

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id*. at 553 (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). That doctrine, however, does not aid Plaintiffs because the Privacy Act precludes its application and, in any event, Plaintiffs do not meet the demands of all its required elements.

**1. The Privacy Act precludes the application of associational standing.**

As described above, the Privacy Act permits only individuals, and not associations or other groups, to bring suit for alleged violations of the Act. By the Act's own terms, any claims asserted or relief requested under the Privacy Act requires the participation of individual members in the lawsuit. As a result, the third element of associational standing cannot be met in cases brought under the Privacy Act.

The third element of associational standing is not a constitutionally mandated requirement of standing; instead, it is a prudential consideration, created by the courts, that Congress may abrogate. *United Food*, 517 U.S. at 558. If Congress is permitted to abrogate the usual requirement of the third prong of associational standing, it must also have the power to ensure its application without qualification. Congress has done so here, mandating in the clearest of terms that individuals are the only parties who may bring claims under the Privacy Act.

### 2. **Plaintiffs fail to satisfy the elements of associational standing.**

Even if application of associational standing were not expressly precluded here, Plaintiffs still have failed to meet all its required elements.

> a. *Plaintiffs have failed to plead facts sufficient to demonstrate that their individual members would have standing to sue in their own right.*

It is not clear that Plaintiffs' individual members would have standing to sue in their own right. Here, Plaintiffs' claims center on information requests that were made to the plaintiff groups and not to their individual members. Although Plaintiffs allege that the IRS requested various pieces of information from them and that the collection of that information violated the Privacy Act (*see* Doc. 14 ¶ 115), not all of the requests for information involved Plaintiffs' individual members. Plaintiffs give as an example the items of information allegedly requested from NorCal. The bulk of the information described appears to have been centered on that group, as opposed to its individual members. For example, Plaintiffs assert that the IRS requested information about NorCal's official events (Doc. 14 ¶ 70(a)), information about the group's website and internet activities (Doc. 14 ¶ 70(b)), whether the group conducted certain rallies (Doc. 14 ¶ 70(e)), copies of handouts that the group provided to the public (Doc. 14 ¶ 70(f)), whether the group conducted events involving political candidates (Doc. 14 ¶ 70(h)), whether the group conducted voter-education activities (Doc. 14 ¶ 70(j)), whether the group had

influenced or planned to try to influence the outcome of specific legislation (Doc. 14 ¶ 70(k)), information about the group's communications with members of legislative bodies (Doc. 14 ¶ 70(l)), information about the group's relationship to other organizations (Doc. 14 ¶ 70(m)), information about solicitations and fundraising by the group (Doc. 14 ¶ 70(n)), information about the group's board of directors (Doc. 14 ¶ 70(o)), and information about the group's income and expenses (Doc. 14 ¶ 70(q), (s)).

Although the Plaintiffs point to a handful of information requests that involve – or hypothetically might involve – information about their individual members (Doc. 14 ¶ 126(a)), the point remains that the bulk of the requested information about which Plaintiffs complain centers around the group in question and not its individual members.  At the very least, Plaintiffs have not described how their individual members were harmed by, and would have standing to bring claims for, all the alleged violations of the Privacy Act.

> b. *The interests the organizations seek to protect are not germane to the organizations' purposes.*

Through the Privacy Act claims raised in this suit, Plaintiffs state that that they seek to protect the privacy interests of their groups and their individual members.  But the purposes of the plaintiff associations are not geared toward the protection of their members' privacy interests. Collectively, Plaintiffs assert that each of them "was formed to advance social welfare and the education of society."  (Doc. 14 ¶ 126(b).)[6]  The "demand that an association plaintiff be organized for a purpose germane to the subject of its member's claim raises an assurance that the

---

[6] As an example of a particular group's purpose, NorCal alleges that its "purpose is to support and conduct non-partisan research, education, and informational activities to increase public awareness of legislation and legislators.  Its mission is three-fold:  (1) fiscal responsibility; (2) constitutionally limited government; and (3) free markets."  (Doc. 14 ¶ 7.)

association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." *United Food*, 517 U.S. at 555-56. Here, the purposes for which these groups were formed do not make the groups the proper parties to advance their individual members' privacy interests.

Plaintiffs put together a tenuous chain to try to equate the organizational purposes for which they were formed with their individual members' privacy interests. The groups allege that they were organized to advance social welfare and education, which the groups plan to achieve by "coordinating their individual members' expression," which the groups contend cannot be fostered in the individuals absent the individuals' privacy about their ideas. (Doc. 14 ¶ 126(b).) That attenuated string of reasoning does not meet the type of direct correlation between a group's purpose and the nature of the suit that is necessary to meet the purpose of associational standing. This is not a situation, for example, where a neighborhood association formed to promote open housing sued to assert its members' interests for harm to their neighborhood resulting from alleged racial discrimination. *Neighborhood Action Coalition v. City of Canton, Ohio*, 882 F.2d 1012, 1017 (6th Cir. 1989). In this case, the groups' stated organizational purposes have no direct correlation with the claims raised under the Privacy Act on behalf of their individual members.

> c. *The claim asserted and the relief requested require the participation of individual members in the lawsuit.*

The plaintiff groups seek relief under section 552a(g)(1)(D) of the Privacy Act. (Doc. 14 ¶ 124.) That particular subsection allows an individual to bring an action for civil damages, and only civil damages, against an agency for certain violations under the Act. *See American Federation of Gov't Employees v. Hawley*, 543 F. Supp.2d 44, 54 (D.D.C. 2008). As described above in part I.A, Congress has expressly limited those actions to be brought by individuals. By

13

the terms of the Privacy Act itself, both the claims asserted and the relief requested thereunder require the participation of individual members.

In addition, the type of relief sought here – civil damages – requires the participation of individual members and thus precludes the application of associational standing.  *See United Food*, 517 U.S. at 554 (describing how Supreme Court "precedents have been understood to preclude associational standing when an organization seeks damages on behalf of its members"); *Neighborhood Action Coalition*, 882 F.2d at 1017 (citing *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975) and finding that neighborhood association lacked standing to bring damages claim on behalf of individuals because damages for the individuals' diminished property values required individualized proof).

Plaintiffs fail to circumvent that problem by alleging that "[t]he costs of Plaintiffs' member-specific responses were equally borne by all members whose information was disclosed."  (Doc. 14 ¶ 126(c).)  That allegation ignores the principle that any determination of damages is uniquely tied to each individual who allegedly suffered them.  That principle holds true in suits for damages under the Privacy Act.  In cases in which organizations have sought damages under the Privacy Act on behalf of their individual members, courts have held that the organizations could not satisfy the third element of associational standing because the determination of damages required the participation of individual members.  *See Parks v. Internal Revenue Service*, 618 F.2d 677, 684-85 (10th Cir. 1980) (finding that employees' union lacked standing to bring Privacy Act claim on behalf of its individual members because "[e]ach of the plaintiffs would have to testify because the actionable injury and the damages are individual"); *American Federation of Gov't Employees*, 543 F. Supp.2d at 50 ("Here, because the sole remedy for plaintiffs' Privacy Act claim is actual damages, the union plaintiffs'

14

individual members would be required to participate in the lawsuit to prove their individual damages.") (internal footnotes omitted).[7]

The fact that the Privacy Act provides for a minimum of $1,000 in damages for "low-dollar claims" (Doc. 14 ¶ 126(c)) does not aid Plaintiffs' argument on this point.  By pointing out that fact, Plaintiffs appear to suggest that they anticipate that the determination of individualized damages will be unnecessary in this case because none of their individual members has damages in excess of the $1,000 threshold.  Even assuming that is the case, that situation would not relieve the individual members of their obligation to prove actual damages.  *See Doe v. Chao*, 540 U.S. 614, 620 (2004) (holding that a Privacy Act claimant was not entitled to the statutory minimum damages absent proof that the claimant incurred actual damages).

The determination of any actual damages incurred by any of Plaintiffs' individual members necessarily requires the participation of those individual members to prove their own actual damages, if any.  But regardless of that issue, the point remains that the text of the Privacy Act expressly requires the participation of individual members in this suit.  No individuals, however, are named as plaintiffs in this action.

---

[7] Had Congress wished to abrogate that requirement of associational standing by permitting groups to bring damages claims on behalf of their individual members, it certainly could have done so.  In fact, Congress has done that on at least one occasion, in the context of a different statute.  *See United Food*, 517 U.S. at 546 (holding that Congress abrogated the third element of associational standing by specifically authorizing employee unions to bring damages claims on behalf of their members under the Worker Adjustment and Retraining Notification Act).  Congress, however, did not choose that path in the Privacy Act.

## II.  THE DECLARATORY AND INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK THROUGH COUNT II IS PRECLUDED BY STATUTE.

The Declaratory Judgment Act and the Anti-Injunction Act preclude the relief Plaintiffs seek against the Service and the Treasury Department in Count II: a declaratory judgment that the Service violated Plaintiffs' First and Fifth Amendments rights by its treatment of Plaintiffs' applications for tax exemption and an injunction to prevent further similar practices and policies (*See* Doc. 14 ¶ 141).  "In a case of actual controversy within its jurisdiction," the Declaratory Judgment Act permits a court to issue a declaratory judgment "except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code."  28 U.S.C. § 2201(a).  With exceptions not relevant here, the Anti-Injunction Act similarly prohibits lawsuits filed "for the purpose of restraining the assessment or collection of any tax."  26 U.S.C. § 7421(a).  Those Acts are similar in operation, and if the Anti-Injunction Act bars relief, declaratory relief under the Declaratory Judgment Act also is unavailable.  *See Dickens v. United States*, 671 F.2d 969, 972 (6th Cir. 1982); *see also Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C. Cir. 1995).

The primary purpose of the Anti-Injunction Act is to protect the government's ability to assess and collect taxes expeditiously with a minimum of pre-enforcement judicial interference. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974).  That Act "has been interpreted broadly to encompass almost all premature interference with the assessment or collection of any federal tax."  *RYO Machine, LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 471 (6th Cir. 2012).  Here, even though Plaintiffs couch their claims for declaratory and injunctive relief in constitutional terms, the determination of Plaintiffs' tax-exempt statuses – and thus whether they owe federal taxes – remains at the heart of that claim.  Any injunctive relief aimed at the Service's processes for determining Plaintiffs' tax statuses necessarily interferes with the Service's tax collection.  In

16

that circumstance, the Court may grant a pre-enforcement injunction only if there are no circumstances whatsoever under which the government might ultimately prevail *and* if equity jurisdiction otherwise exists. *Alexander v. Americans United Inc.*, 416 U.S. 752, 758 (1974) (citing *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)). The fact that Plaintiffs raise a constitutional claim does not alter that analysis. *Americans United*, 416 U.S. at 759-63 (applying the *Williams Packing* criteria and denying injunctive relief to entity seeking tax-exempt status under section 501(c)(3) in its attempt to challenge the constitutionality of statute). "The exception for tax matters is very broad, and applies regardless of a recitation of alleged constitutional violations." *Boggs v. United States*, 109 F. Supp.2d 834, 836 (S.D. Ohio 2000) (quoting *Tien v. Goldenberg*, No. 96-6100, 1996 WL 751371, at *1 (2d Cir. Oct. 31, 1996) (internal citations omitted)).

Here, it is clear that equity jurisdiction does not exist because Plaintiffs have adequate legal remedies available to pursue their claims. To the extent that any Plaintiffs are seeking tax exemption under Internal Revenue Code section 501(c)(3),[8] those Plaintiffs have an alternative legal remedy to obtain determinations of their tax statuses under section 7428. Under that provision, an organization seeking tax-exempt status under section 501(c)(3) may file suit in the United States Tax Court, the United States Court of Federal Claims, or the United States District Court for the District of Columbia to obtain a declaration as to whether it qualifies for tax-exempt status. 26 U.S.C. § 7428(a).

---

[8] Plaintiffs allege that they all are entities that have sought exemption from federal taxes under either section 501(c)(3) or (c)(4). (Doc. 14 ¶ 1.)

Although that particular remedy is not available to organizations that seek tax exemption under section 501(c)(4), those Plaintiffs also have other legal remedies at their disposal.  If the Service determines that any of the 501(c)(4) Plaintiffs do not qualify as an exempt organization and issues a notice of deficiency asserting a tax liability, any such Plaintiff may challenge the Service's determination in the Tax Court before paying the deficiency.  *See* 26 U.S.C. §§ 6212, 6213; *Bob Jones*, 416 U.S. at 730.  Also, if any tax is assessed, any such Plaintiff may pay the assessed tax and sue for a refund in district court or the court of federal claims, arguing that it should be recognized as a tax-exempt organization.  *See* 26 U.S.C. § 7422; *Bob Jones*, 416 U.S. at 730.  And, to the extent that any Plaintiffs seek a remedy directly dealing with their constitutional rights, they have pursued a claim under *Bivens*.

Lack of irreparable harm also precludes the exercise of equity jurisdiction here.  Plaintiffs assert generally that they have suffered irreparable harm (Doc. 14 ¶ 141), but they do not specify what form that alleged harm has taken.  Plaintiffs do list various alleged harms for which they seek *damages* (Doc. 14 ¶ 139), but the fact that Plaintiffs seek damages for those harms suggests that the harms they allegedly experienced are quantifiable and subject to reparation.  Plaintiffs' conclusory assertion of irreparable harm, without further explanation, is insufficient to support their claim for injunctive and declaratory relief.  *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (finding that "a plaintiff's obligation to provide the grounds of his entitlement to relief [in its complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

For Plaintiffs who are seeking tax-exempt status under section 501(c)(4), it is especially difficult to conceive how they could allege particular facts to support their allegation of irreparable harm.  Although organizations that seek tax exemption under section 501(c)(3) are

required to apply to the Secretary of the Treasury before they may be recognized and treated as tax-exempt entities, *see* 26 U.S.C. § 508, no such requirement exists for section 501(c)(4) groups. Section 501(c)(4) groups *may* apply for express recognition of their status, but they are not required to do so. As a result, nothing currently prevents any of the 501(c)(4) Plaintiffs from operating with all the advantages attendant to that status.

Plaintiffs all have alternative legal remedies available to them, and they have not alleged facts sufficient to demonstrate irreparable harm. As a result, the Anti-Injunction Act and the Declaratory Judgment Act bar the injunctive and declaratory relief that Plaintiffs request in Count II in connection with the determination of their tax statuses.

## III. PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR DAMAGES UNDER SECTION 7431 OF THE INTERNAL REVENUE CODE.

Count Three, alleging that Service employees engaged in an unauthorized inspection of Plaintiffs' tax return information by merely reviewing the information Plaintiffs freely provided them, fails to state a claim upon which relief can be granted. As shown above, Plaintiffs have alleged various causes of action to recover damages arising from the application process. Like those other claims, Count Three relies on the assertion that the Service wrongly "targeted" Plaintiffs' applications for unnecessary scrutiny, and Count Three is based upon the nature and scope of the Service's requests that Plaintiffs submit specific information in support of their applications for exempt status.

Plaintiffs allege the Service violated the confidentiality provision of the Internal Revenue Code, 26 U.S.C. § 6103, when Service employees reviewed the information submitted by Plaintiffs. Plaintiffs' claim can be summarized as this: the Service should not have asked Plaintiffs for certain information, and therefore, when the Plaintiffs submitted information and the Service reviewed it, the Service violated section 6103 and damages should be awarded under

26 U.S.C. § 7431.  Plaintiffs overreach; calling this a section 6103 claim is nothing more than different wrapping paper around the same box.  Whether this series of events gives rise to liability under some other statute or legal principle, the Plaintiffs do not state a claim for relief under section 6103 or 7431.

A.  **Legal standards.**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must make sufficiently detailed factual allegations in his complaint "to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  In evaluating a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), but "need not, however, accept conclusory allegations or conclusions of law dressed up as facts," *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief [in its complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555.

Section 6103 serves to protect the confidentiality of tax return information, which is defined broadly in 26 U.S.C. § 6103(b)(2) to include:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

Section 6103, however, contains numerous exceptions to the general principle of confidentiality, including:

> Returns and return information shall, without written request, be open to inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes.

26 U.S.C. § 6103(h)(1).  "Tax administration" is defined broadly to mean "the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party," and it "includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions."  26 U.S.C. § 6103(b)(4).

A taxpayer has a private right of action "[i]f any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to [the] taxpayer in violation of section 6103…."  26 U.S.C. § 7431.

Plaintiffs mistakenly assert that the Service violated section 6103 when it "inspected" the materials that Plaintiffs submitted in support of their applications for tax exempt status.  (Doc. 14 ¶¶ 143-153.)[9]  Plaintiffs concede, as they must, that "[a]ll information furnished by Plaintiffs in

---

[9] In addition to Plaintiffs' allegations of wrongful inspection, Plaintiff Texas Public Policy Foundation ("TPPF") appears to allege an instance of unauthorized disclosure.  (Doc. 14 ¶ 148.) That plaintiff alleges that "Defendants released . . . a list of donors on [its] Form 990 . . . to the public at large."  (*Id.*)  The complaint merely states that "[i]n or around the spring of 2012, the IRS illegally released TPPF's 990 form [sic] with the donor information un-redacted. Subsequently, this highly confidential information was widely circulated in the media."  (Doc. 14 ¶ 83.)  Stripping away the legal conclusions, all that is left is a vague time reference, an allegation that the IRS "released" donor information, and that "[s]ubsequently" the donor information was reported in the media.  (*Id.*)  The disclosure claim, like the inspection claims, is insufficient and should be dismissed under Fed. R. Civ. P. 12(b)(6).  For example, there are no
(continued...)

response to the IRS' requests was return information pursuant to Section 6103." (Doc. 14 ¶ 145.)  Indeed, such materials were "received by, … furnished to, or collected by the Secretary …." 26 U.S.C. § 6103(b)(2)(A).  Moreover, "all information communicated *to, from, and within the IRS* regarding the actual or potential tax liabilities, audits, or *tax-exempt status* of a particular organization falls under the broad definition of 'return information' in § 6103."  *Landmark Legal Foundation v. IRS*, 87 F. Supp. 2d 21, 26 (D.D.C. 2000), *aff'd*, 267 F.3d 1132, 1336 (D.C. Cir. 2001) (emphasis supplied).  But what Plaintiffs fail to do is state a claim for the unauthorized inspection of that tax return information.

### B.  Plaintiffs fail to identify the information that the IRS wrongfully inspected.

Plaintiffs do not identify *what* return information was wrongfully inspected.  Surely, Plaintiffs would not argue that *all* the information they submitted in connection with their applications was off limits to the Service.  Each of the Plaintiffs must identify what portion of their return information was wrongfully inspected.  But none of the Plaintiffs make any effort whatsoever to describe what portion of their return information was wrongfully inspected.  (See Doc. 14 ¶¶ 169-187.)[10]  Therefore, Plaintiffs fail to state a claim upon which relief may be granted.  *See, e.g.*, *Fostvedt v. United States*, 824 F. Supp. 978, 985-986 (D. Colo. 1993) (collecting cases where section 7431 claim was dismissed for insufficient specificity about

---

(… continued)

factual allegations about how the information was "released," to whom it was released, and that the Service was the source of the media reports.  Moreover, it is far from clear how that claim – unique to a lone plaintiff – is properly brought in this purported class action.

[10]  To the extent that Plaintiffs would identify any inspections prior to August 5, 2011, their claim would be time-barred because section 7431(d) requires that an action be filed within two years of when Plaintiffs knew or reasonably should have known of the inspection.  (See Doc. 14 (complaint amended on August 5, 2013 to assert section 7431 claim).)

information disclosed or inspected); *Schroeder v. United States*, No. 12-cv-00152, 2013 WL 3832445, at*2 (D. Nev. July 23, 2013) (dismissing section 7431 claim where plaintiff alleged "unlawful inspection of his 'tax return information'"); *Dean v. United States*, No. 09-3095, 2010 WL 1257792, at *4-5 (D.N.J. Mar. 29, 2010).

### C. <u>Section 6103 does not bar the IRS from inspecting the very same information that Plaintiffs submitted for consideration in support of their tax exempt applications.</u>

Plaintiffs' section 6103 claim is flawed in ways that run deeper than insufficient pleading. As with Plaintiffs' other claims, the basis of the section 6103 claim is the nature of the Service's requests for information.  Plaintiffs assert that the inspection was unauthorized under section 6103 because "the Defendants demanded information from Plaintiffs that was not necessary to determine their tax-exempt status. Defendants made these demands knowing that they were unnecessary for determining Plaintiffs' status, and knowing that Plaintiffs had been selected for special scrutiny and delay based on their political viewpoint." (Doc. 14 ¶ 146.)  For the same reasons, Plaintiffs conclude that "the inspection, review, and disclosure was objectively unnecessary, and subjectively not undertaken, 'for tax administration purposes.'"  (*Id.* ¶ 147.) *Cf.* 26 U.S.C. § 6103(b)(4) (defining "tax administration purposes").

Plaintiffs' claim is that the Service and its employees targeted them for special treatment and requested the Plaintiffs provide information in support of their application that was not truly necessary to the determination of their tax-exempt status.  Sections 6103 and 7431, however, provide a remedy for the improper inspection and disclosure of tax return information, not the Service's alleged improper obtaining of information.  As a result, Plaintiffs' claim fails as a matter of law.

### 1. Section 7431 is not a remedy for alleged improper requests for information.

Section 7431 does *not* limit what the Service's officers and agents can ask for in the course of an investigation.  That provision, therefore, is inapplicable in this case.  After an amendment in 1997, section 7431 provides a civil remedy for unauthorized inspection of tax return information.  *See* Taxpayer Browsing Protection Act, Pub. L. 105-35, 11 Stat. 1104 (1997) (amending section 7431 to include "inspection" as grounds for relief).  The legislative history – indeed the name of the legislation itself – belies any connection to the facts alleged by Plaintiffs in this case.

The "Taxpayer Browsing Protection Act" was squarely and exclusively aimed to deter Service employees and contractors from improperly accessing existing tax records.  *See* H. Rep. No. 105-51, 1997 WL 183944, at *3 (1997) (listing the reason for legislation as "[w]idespread indications of browsing …"); 143 Cong. Rec. H1461-08, 1997 WL 179139 (Apr. 15, 1997) (statement of lead sponsor, Rep. Archer, that purpose was to deter those who "browse and snoop" in personal taxpayer records maintained by the Service), *id.* at H1466 (statement of Rep. Neal, "This legislation will provide a deterrent against IRS employees taking a quick look at tax returns for purposes not related to work."); *id.* at H1467 (statement of Rep. Kleczka, "This bill will prohibit unauthorized review or browsing of Federal tax information *which the IRS possesses*." (emphasis supplied)); Statement by President William J. Clinton Upon Signing H.R. 1226 (Taxpayer Browsing Protection Act), 33 Weekly Comp. Pres. Doc. 1226 (Aug. 11, 1997), 1997 WL 806823 ("Maintaining the confidentiality of the information submitted by taxpayers is critical to the operation of this system [of taxation]. … This is a bipartisan issue on which everyone can agree: 'browsing' taxpayer information is wrong and we all condemn it.").

The legislation was spurred by reports that curious employees accessed taxpayers'
records in Service files, including those belonging to celebrities.  *E.g.,* 143 Cong. Rec. H1464
(statement of Rep. Camp, referring to reports of "IRS employees even browsing the records of
celebrities like Tom Cruise"); *id.* at H1466 (statement of Rep. Neal, "IRS employees should not
act on impulses based upon curiosity.  It may be tempting to look at the tax files of such famous
individuals as Lucille Ball, but everyone should have their expectation of privacy met.").  The
legislation itself, the committee report, the Congressional Record, and President Clinton's
signing statement all unequivocally demonstrate that "inspection" was added to section 7431 to
address a problem which is wholly different from the Plaintiffs' allegations of improper requests
for information.

Moreover, a thorough search of section 7431 case law did not produce a single case
where a court has held that section 6103 or 7431 was an appropriate remedy for allegations of
improper requests for information from a taxpayer.  In fact, to the contrary, courts have
recognized that section 7431 is limited to address "information handling" and not other functions
performed by the Service.  *See, e.g.*, *Venen v. United States*, 38 F.3d 100, 105-107 (3d Cir. 1994)
(concluding that section 7431 can only challenge "information handling," and was not applicable
in a challenge to the underlying validity of the collection of tax); *Wilkerson v. United States*, 67
F.3d 112, 116-118 (5th Cir. 1995) (same).

> ## 2.  Section 7431 explicitly bars Plaintiffs' claim because Plaintiffs requested that the IRS inspect the information <u>they submitted for review.</u>

In the "Taxpayer Browsing Protection Act," Congress specifically barred section 7431
"inspection" claims if the taxpayer requested the inspection by the Service.  *See* 26 U.S.C.
§ 7431(b)(2); Pub. L. 105-35 § 3(c) ("NO DAMAGES FOR INSPECTION REQUESTED BY

TAXPAYER").  That is common sense, but it is also an express limitation on the waiver of sovereign immunity that must be strictly construed.  In order to evade this statutory bar to relief in this case, Plaintiffs baldly claim that they did not request the Service's inspections of the tax return information they submitted to the Service.  (Doc. 14 ¶ 152.)  Plaintiffs offer no factual allegations to support that statement, and in fact, the circumstances and facts pled by Plaintiffs refute that assertion.  If Plaintiffs were not requesting that the Service review the documents they submitted, what was the purpose of submitting the information?  Each Plaintiff chose to file an application for tax exempt status and, in the course of the Service's investigation, the Plaintiffs separately submitted information in response to requests for additional information.  Plaintiffs allege no reason for submitting the information other than the hope that the Service would review the information and grant their pending applications for tax-exempt status.  Accordingly, section 7431(b)(2) bars the relief that Plaintiffs seek because they requested that the Service inspect the information.

### 3.   Under section 6103, the IRS was authorized to inspect the information submitted by the Plaintiffs.

By relying on an argument that the inspection was not "for tax administration purposes," Plaintiffs imply that *no one* at the Service could inspect the information that Plaintiffs submitted without running afoul of section 6103.  *See* 26 U.S.C. § 6103(h)(1) (explicit exception for employees of the Department of Treasury if for "tax administration purposes").  Plaintiffs may believe that the Service should not have asked for the information, but Plaintiffs seek a nonsensical result: a taxpayer can submit information to the Service and then seek damages under section 7431 if the Service reviews documents that the taxpayer believes the Service didn't need.  Section 6103's purpose, however, is to protect information in the possession of the Service, to prevent its unauthorized disclosure by the Service, and to prevent unauthorized

26

inspection within the Service.  It strains credulity that Plaintiffs, on the one hand, sought tax exempt status and asked the Service to determine their eligibility, but now claim the Service was barred from reviewing the information submitted in support of their applications.  This plainly illustrates the Plaintiffs' misplaced reliance on section 6103 as the remedy to their perceived harm.

Moreover, Plaintiffs' own allegations demonstrate that the challenged inspections were authorized under section 6103(h)(1).  As alleged in the complaint, Plaintiffs submitted the information to the Service in response to specific requests for additional information.  The Service requested the additional information in the course of investigating Plaintiffs' eligibility for tax exempt status under the Internal Revenue Code.  Therefore, notwithstanding Plaintiffs' conclusory statement to the contrary, the information was inspected in connection with tax administration – namely, the resolution of Plaintiffs' application for tax exempt status.  That conclusion is consistent with the reasoning in *Lehrfeld v. Richardson*, 954 F. Supp. 9 (D.D.C. 1996), where the Court definitively held that information relating to a tax-exempt application is "return information" for purposes of section 6103.  As the Court in *Lehrfeld* explained,

> IRS argues, and the Court concurs, that the *proceeding* involving the determination of an organization's tax-exempt application is an investigation of the taxpayer by the IRS directly related to that organization's tax liability . . . An official inquiry, into the qualification of an organization for tax-exempt status, even the initial inquiry, is *an IRS investigation* related to that organization's tax liability.

*Lehrfeld*, 954 F. Supp. at 13 (emphasis supplied).

Finally, Plaintiffs' approach to section 7431 and 6103 would cause drastic consequences for the federal tax system.  If Plaintiffs' interpretation of those sections is adopted by the Court, taxpayers who are dissatisfied with the Service's audit or investigation can obtain relief for improper "inspection."  For example, if a taxpayer submits documentation of an income tax

27

deduction, according to the Plaintiffs' logic, *section 7431* would allow that taxpayer to challenge the *necessity* of each and every item of information on every page voluntarily submitted to the Service.  Courts would be enlisted to review the minute details of a routine audit to evaluate whether the Service requested more information than was necessary and, if so, award damages to the taxpayer as a violation of confidentiality.  All of this, Plaintiffs argue, is contemplated by sections 6103 and 7431.  Plaintiffs are wrong.  Those two statutes are aimed at protecting the confidentiality of tax return information from unauthorized disclosure or improper browsing. Those statutes do **not** extend to cover the second-guessing of the Service's requests for information during the course of an investigation.

## CONCLUSION

The United States has not waived its sovereign immunity for any group, including the ten plaintiffs here, to bring claims under the Privacy Act.  In addition, those ten plaintiff organizations lack standing to bring their Privacy Act claims, either on their own or on behalf of their individual members.  The Court also lacks jurisdiction to award the declaratory and injunctive relief requested in Count II.  Finally, Plaintiffs have failed to state a claim upon which relief may be granted as to Count III.

WHEREFORE, the United States respectfully prays the Court dismiss Count I and the claims for declaratory and injunctive relief in Count II under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and dismiss Count III under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

DATED: September 27, 2013

Respectfully submitted,

KATHRYN KENEALLY
Assistant Attorney General, Tax Division

s/ *Grover Hartt, III*
GROVER HARTT, III (TX 09174500)
Senior Litigation Counsel
CHRISTOPHER R. EGAN (TX 24036516)
Trial Attorney
U.S. Department of Justice, Tax Division
717 N. Harwood Street, Suite 400
Dallas, Texas  75201
(214) 880-9733; (214) 880-9741 (FAX)
Grover.Hartt@usdoj.gov

JOSEPH A. SERGI (DC 480837)
Senior Litigation Counsel
U.S. Department of Justice, Tax Division
555 4th Street, N.W., JCB 7207
Washington, D.C.  20001
(202) 305-0868; (202) 307-2504 (FAX)
Joseph.A.Sergi@usdoj.gov

JENNIFER D. AUCHTERLONIE (WA 29481)
LAURA C. BECKERMAN (CA 278490)
CHRISTOPHER D. BELEN (VA 78281)
LAURA M. CONNER (VA 40388)
JEREMY N. HENDON (OR 982490)
PHILIP M. SCHREIBER (DC 502714)
Trial Attorneys
U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C.  20001
(202) 514-2000

Of Counsel:
CARTER M. STEWART
United States Attorney

MATTHEW J. HORWITZ (OH 0082381)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Matthew.Horwitz@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

29

## CERTIFICATE OF SERVICE

I certify that on January 30, 2014, I electronically filed the Motion to Dismiss Claims Against Federal Defendants and attached memorandum of law with the Clerk of the Court using the ECF system, which will send notification of such filing to the following counsel for plaintiffs:  David R. Langdon, Joshua B. Bolinger, Todd P. Graves, Edward D. Greim, Bill Randles, Bev Randles and Christopher P. Finney; and the following counsel for the individual defendants.

Mark T. Hayden
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202

Brigida Benitez
Steptoe & Johnson LLP
1330 Connecticut Avenue
Washington, D.C.  20036

Jeffrey A. Lamken
Justin V. Shur
MoloLamken LLP
The Watergate
600 New Hampshire Ave., N.W., Suite 660
Washington, D. C.  20037

Pierre H. Bergeron
Thomas E. Zeno
Lauren Kuley
Squire Sanders (US) LLP
221 East Fourth Street, Suite 2900
Cincinnati, Ohio  45202

s/ *Grover Hartt, III*
GROVER HARTT, III