```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF OHIO
 2                         WESTERN DIVISION
                              - - -
 3
     NORCAL TEA PARTY PATRIOTS,    : CIVIL NO. 1:13-CV-341
 4   et al.,                       :
                   Plaintiffs,     : Status Conference
 5        -vs-                     :
                                   :
 6   INTERNAL REVENUE SERVICE,     : Monday, October 21, 2013
     et al.,                       : 11:15 a.m.
 7                 Defendants.      : Cincinnati, Ohio
                              - - -
 8                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE SUSAN J. DLOTT, CHIEF JUDGE
 9                            - - -

10   For the Plaintiffs:  Edward D. Greim, Esq.
                          Todd P. Graves, Esq.(by phone)
11                        Graves Garrett, LLC
                          1100 Main Street, Suite 2700
12                        Kansas City, Missouri  64105

13                        David R. Langdon, Esq.
                          Langdon Law, LLC
14                        8913 Cincinnati-Dayton Road
                          West Chester, Ohio  45069
15
                          Christopher R. Finney, Esq.
16                        Finney, Stagnaro, Saba & Klusmeier Co. LPA
                          2623 Erie Avenue
17                        Cincinnati, Ohio  45208

18   For the Defendants Internal Revenue Service and Department of
     the Treasury:
19                        Grover Hartt, III, Esq. (by phone)
                          Christopher R. Egan, Esq. (by phone)
20                        U.S. Department of Justice
                          Tax Division
21                        717 North Harwood, Suite 400
                          Dallas, Texas  75201
22
                          Joseph A. Sergi, Esq. (by phone)
23                        Christopher D. Belen, Esq. (by phone)
                          U.S. Department of Justice
24                        Tax Division
                          555 Fourth Street, NW
25                        Washington, D.C. 20001
```

Proceedings recorded in stenotype.
Transcript produced using computer-aided transcription.

```
 1                        Matthew Joseph Horwitz, Esq.
                         Assistant United States Attorney
 2                       221 East Fourth Street, Suite 400
                         Cincinnati, Ohio  45202
 3
      For the Defendants Carter Hall, Joseph Herr, Grant Herring,
 4    Elizabeth Hofacre, Stephen Seok, Mitchel Steele, and Carly
      Young:
 5                       Pierre H. Bergeron, Esq.
                         Thomas E. Zeno, Esq.
 6                       Squire Sanders
                         221 East Fourth Street, Suite 2900
 7                       Cincinnati, Ohio  45202

 8                       Justin B. Shur, Esq. (by phone)
                         Eric R. Nitz, Esq. (by phone)
 9                       MoloLamken LLP
                         The Watergate
10                       600 New Hampshire Avenue, NW, Suite 660
                         Washington, D.C. 20037
11
      For the Defendants Douglas Shulman, Steven Miller, William
12    Wilkins, Sarah Hall Ingram, Joseph Grant, Lois Lerner, Holly
      Paz, Cindy Thomas, Bonnie Esrig, Brenda Melahn, and Steven
13    Bolling:
                         Brigida Benitez, Esq. (by phone)
14                       Steptoe & Johnson, LLP
                         1330 Connecticut Avenue, NW
15                       Washington, D.C.  20036

16                       Mark T. Hayden, Esq.
                         Taft, Stettinius & Hollister, LLP
17                       425 Walnut Street, Suite 1800
                         Cincinnati, Ohio  45202
18

19

20    Courtroom Deputy:    William Miller

21    Law Clerk:           Beth Mandel

22    Court Reporter:      Julie A. Wolfer, RDR, CRR

23                             - - -

24

25
```

PROCEEDINGS

1

2          (In chambers at 11:15 a.m.)

3               THE COURT:  Good morning.

4               COURTROOM DEPUTY:  Counsel, we're here for a status

5     conference today in Case Number 1:13CV341, <u>NorCal Tea Party</u>

6     <u>Patriots versus the Internal Revenue Service</u>.

7               And I'll go through the seating chart as to the

8     counsel that are in chambers.

9               First, I have Edward Greim present, I have Chris

10    Finney, David Langdon, counsel for the plaintiffs.

11              And counsel for the defendants in chambers, I have

12    Mark Hayden, Pierre Bergeron, Thomas Zeno, and Matthew Horwitz.

13              And the counsel on the phone for the plaintiffs, I

14    have Todd Graves.

15              THE COURT:  Let me just ask the folks on the phone, if

16    you tell me where you're from, I can kind of get a visual

17    picture of who you are.

18              Mr. Graves, where are you from?

19              MR. GRAVES:  I'm in Kansas City.

20              THE COURT:  All right.  And you're with Mr. Greim,

21    then.

22              MR. GRAVES:  Yes.  We're partners.

23              THE COURT:  Okay.  Great.  Thank you.

24              COURTROOM DEPUTY:  And then from the Department of

25    Justice, I have Grover Hartt, Chris Egan, Chris Belen, and

1    Joseph Sergi.

2            And then --

3            MR. HARTT:  Your Honor?

4            THE COURT:  I'm sorry, yes.

5            MR. HARTT:  I'm sorry, do you want us to tell you

6    where we're from also or --

7            THE COURT:  I take it you're in Washington; right?

8            MR. HARTT:  Well, this is Grover Hartt.  Chris Egan

9    and I are in Dallas.

10           THE COURT:  Okay.

11           MR. HARTT:  Sergi and Chris Belen are in Washington.

12           THE COURT:  You're permanently in Dallas?

13           MR. HARTT:  Yes, Your Honor.

14           THE COURT:  Oh, okay.

15           COURTROOM DEPUTY:  And then also on the phone, I have

16   Justin Shur.  And, Mr. Shur, where are you from?

17            MR. SHUR:  I'm from the MoloLamken law firm, and my

18   colleague Eric Nitz is also on the phone, and we're counsel for

19   some of the individual defendants in the case.  And our

20   co-counsel from Squire Sanders is participating in person, as

21   you know.

22           THE COURT:  Okay.  And where are you from, what part

23   of the country?

24            MR. SHUR:  I'm sorry.  I'm from Washington, D.C., but

25   I'm currently in Paris.

1          THE COURT:  You win the prize.

2          COURTROOM DEPUTY:  And then also on the phone, I

3    believe I have Brigida Benitez; is that correct?

4          MS. BENITEZ:  Yes, Brigida Benitez.  I'm from

5    Steptoe & Johnson in Washington, D.C.  And my co-counsel is

6    Mark Hayden who is present in the courtroom from the Taft law

7    firm.

8          COURTROOM DEPUTY:  Okay.  And is there anybody else on

9    the phone that I missed?

10          Great.  And also here in chambers we have Chief Judge

11   Dlott, Beth Mandel is the law clerk, and Julie Wolfer is the

12   court reporter.

13          And if you could please identify yourselves before you

14   speak for the people on the phone.

15          Thank you.

16          THE COURT:  Okay.  This is not a Rule 26 conference

17   because I guess everyone has not been served yet.

18          Why don't you tell me, Mr. Greim or Mr. Finney or

19   Mr. Langdon, where you think we are, and then I'll hear from

20   the defendants.

21          MR. GREIM:  Sure.  I'll tell you to the best of our

22   understanding where we are right now.  Eight of the 18

23   individual defendants have been served.  Ten have not.  Of the

24   eight who have been served, they are mainly the people who are

25   in the Washington, D.C. area and, rightly or wrongly, they're

1    the people who we are kind of thinking of as the more senior

2    individual defendants.  Most of the people who have been served

3    are represented, I think, by Steptoe & Johnson and by the Taft

4    law firm with a couple of exceptions.

5            THE COURT:  Okay.  And Taft is local counsel for

6    Steptoe; is that --

7            MR. HAYDEN:  Yes, ma'am.

8            THE COURT:  All right.

9            MR. GREIM:  So, okay.  Of the ten people who haven't

10   been served, surprisingly, nine of those are in the Cincinnati

11   area.  Many of them have received waivers that have been

12   delivered, and we've got the certificate back that they've

13   gotten the waiver.  Some of those have not so maybe we had the

14   wrong address, but I think at least as of this morning, all ten

15   of those are represented by counsel who are either at the table

16   or on the phone.  Five of those, I think, are represented by

17   Squire Sanders and MoloLamken, and five of them are represented

18   by Steptoe & Johnson and the Taft law firm.

19           So I've sent an e-mail on Thursday once I realized who

20   was representing who, at least to Squire Sanders, and I've

21   asked them to accept service, since we seem to be not doing

22   well with our process servers out there, on behalf of the five

23   people on whose behalf they've already entered an appearance in

24   this case.

25           THE COURT:  Okay.  And what's counsel going to do

 1    about that, Mr. --

 2            MR. BERGERON:  We will accept service for those.  I

 3    did not have a chance to respond.  I was traveling, Your Honor.

 4            THE COURT:  That was Mr. Bergeron.

 5            MR. BERGERON:  So for the seven that we have appeared

 6    on behalf of, I don't know which ones were served and which

 7    ones were not, but we will accept service on behalf of those

 8    seven individuals.

 9            THE COURT:  And the other gentleman, the fellow in

10    Paris, are you -- I didn't catch the name of your law firm.

11            MR. BERGERON:  He's with MoloLamken, Your Honor.

12    M-O-L-O and then Lamken, L-A-M-K-E-N.  We're co-counsel on the

13    case.

14            THE COURT:  Oh, okay.  All right.  And who is speaking

15    for them?

16            MR. BERGERON:  I'm speaking for them.

17            THE COURT:  Oh, you're speaking for them too.

18            MR. BERGERON:  Yes.

19            THE COURT:  Oh, okay.  So you're going to accept

20    service for the others as well, the other three, I guess.

21            MR. BERGERON:  Yes.

22            MR. GREIM:  It looks like there are actually five for

23    them to accept service for:  Carly Young, Grant Herring, Joseph

24    Herr, Mitchel Steele, and Stephen Seok.  The two that have

25    already been served that they represent are Elizabeth Hofacre

1   and Carter Hall.  So this will all make sense.

2          MR. BERGERON:  I think part of your confusion is the

3   e-mail had more people than were actually our clients, so I was

4   trying to figure out if we were actually -- it's been somewhat

5   of a challenge to figure out who we're representing, Your

6   Honor.

7          THE COURT:  Right.

8          MR. BERGERON:  So I wanted to make sure that we

9   weren't missing anyone, and that's one of the things we were

10  following up on internally.

11         THE COURT:  Mr. Bergeron, for the record, who are you

12  representing?

13         MR. BERGERON:  I brought a list, Your Honor.  Carter

14  Hall, Joseph Herr, Grant Herring, Elizabeth Hofacre, Stephen

15  Seok, Mitchel Steele, and Carly Young.

16         THE COURT:  Okay.  And that's so Squire Sanders and

17  MoloLamken and Taft are all representing --

18         MR. BERGERON:  No, Taft is not representing.  They're

19  representing the other individuals.

20         THE COURT:  Oh, okay.  So there are --

21         MR. BERGERON:  There's basically two groups of

22  individuals.  They've got the more managerial ones, for lack of

23  a better term, Your Honor.  We've got the more lower-level,

24  again, for lack of a better term.

25         THE COURT:  Oh, I'm with you.  I'm sorry.  Taft is

1    with Steptoe.  Okay.

2              So Ms. Benitez --

3              MS. BENITEZ:  Yes, Your Honor.

4              THE COURT:  -- who have you got?

5              MS. BENITEZ:  Well, we represent 11 of the

6    individuals:  Douglas Shulman, Steven Miller, William Wilkins,

7    Sarah Hall Ingram, Joseph Grant, Lois Lerner, Holly Paz, Cindy

8    Thomas, Bonnie Esrig, Brenda Melahn, and Steven Bolling.

9              THE COURT:  Okay.  Does that make all defendants?

10             MR. GREIM:  It does, Your Honor.  That matches exactly

11   my little chart that I have.

12             It leaves one outstanding issue --

13             THE COURT:  All right.

14             MR. GREIM:  -- with respect to service, then, and that

15   is whether the combination of the Taft law firm and the Steptoe

16   law firm would accept service for Esrig, Melahn, Thomas, Grant,

17   and Bolling.

18             MR. HAYDEN:  Ms. Benitez is going to have to make that

19   call, Your Honor.

20             MS. BENITEZ:  Yes, Your Honor, the one wrinkle -- I

21   assume we will, but the representation here, I think part of

22   what leads to confusion is I have not spoken to some of my own

23   clients yet because we were waiting to get the contact

24   information from the Department of Justice, and because of the

25   shutdown they were not there; and so I just received contact

1    information from them.  And so I assume we will be accepting

2    service, but I feel like I need to first confirm that we will

3    be representing them.  That's what I've been told, but I need

4    to confirm with the individuals.

5         THE COURT:  Okay.  Let's try to set a deadline for

6    that.  How long do you think it's going to take you to contact

7    the ones you haven't spoken with yet?  By the end of the week

8    maybe or --

9         MS. BENITEZ:  Oh, yes.  I think by the end of the

10   week, and I -- it should be only because some are already my

11   clients so it's an additional five individuals, including some

12   of the ones that were just mentioned.

13        THE COURT:  Okay.  All right.  So which five haven't

14   you spoken with yet?

15        MS. BENITEZ:  Or the ones I have not spoken with yet

16   are Bonnie Esrig, Brenda Melahn, Steven Bolling, Joseph Grant,

17   and then Cindy Thomas, I represent her in connection with

18   another matter, but we have not yet confirmed representation in

19   this case.

20        THE COURT:  Okay.  And you'll know by the end of this

21   week so will you -- will you then communicate with Mr. Greim?

22        MS. BENITEZ:  Yes, Your Honor.  I'd be happy to do

23   that.

24        THE COURT:  All right.  By Friday.

25        Bill, what's the date on Friday?

```
1              COURTROOM DEPUTY:  Friday is the 25th.

2              THE COURT:  All right.  By Friday, October 25th,

3    you'll be in communication with Mr. Greim about accepting

4    service.

5              MS. BENITEZ:  Yes.

6              THE COURT:  Okay.  Great.

7              MR. GREIM:  And, Your Honor, I just -- people are

8    afraid to pronounce my last name "grime," but you can feel

9    free.

10             THE COURT:  It's "grime," okay.  I'm sorry I'm

11   mispronouncing.

12             MR. HAYDEN:  Your Honor, just to close that loop on --

13             THE COURT:  Wait.  You all sitting here at the table

14   need to identify yourselves when you speak for the folks on the

15   phone or they have no clue who is talking.

16             MR. HAYDEN:  Yes, ma'am.  This is Mark Hayden.  We

17   represent the individual defendants that Ms. Benitez just

18   indicated.  I have entered an appearance as of this morning for

19   those individual defendants, and we filed a motion pro hac vice

20   for Miss Benitez just shortly before this conference.

21             THE COURT:  Okay.  All right.  So you filed an

22   appearance for whom?

23             MR. HAYDEN:  For all of those individual defendants

24   that Miss Benitez just listed.

25        (Noise.)
```

1          COURTROOM DEPUTY:  Is that Judge Barrett?

2          THE COURT:  Yes.  Judge Barrett planted something in

3     here.

4          MS. MANDEL:  It sounds like it's coming from over

5     here?  Where --

6          THE COURT:  Check the corner.  There's something.  We

7     found something in chambers, and he told me that wasn't the

8     only one.

9          MR. FINNEY:  That's a federal offense.  I'm not

10    sure --

11         THE COURT:  Oh, dear.

12         Okay.  Anything else, Mr. Greim?

13         MR. GREIM:  Yes.  And actually, I've got just a couple

14    of topics.  Not as ambitious as we would have for the Rule 26

15    conference because we're just getting started.  But there is a

16    pending motion to set a briefing schedule on the existing

17    government's motion to dismiss, we call the individual capacity

18    official defendants' motion to dismiss, and also the expected

19    motion to dismiss from the individual capacity defendants.

20    That is actually a rather urgent matter because today would

21    have been the day for us to respond to the government's motion

22    to dismiss or opposition brief would actually have been due

23    today.

24         THE COURT:  Okay.

25         MR. GREIM:  The parties have all conferred, though,

1   Your Honor, and we've set a day for the filing of the

2   individual capacity defendants' motion or motions to dismiss,

3   another day for us to file an opposition brief to that motion

4   and to the government's existing motion, and then a reply day;

5   and then we're also asking for some day maybe in late January

6   at the convenience of the Court for oral argument on those

7   motions to dismiss.

8           MR. HAYDEN:  That joint motion is 38, Your Honor.

9           THE COURT:  Oh, it's in that pleading.  It's document

10  38.

11          MR. HAYDEN:  Yes, ma'am.

12          THE COURT:  Thank you.  Let's see here.

13          MR. HAYDEN:  You're welcome to my copy.

14          THE COURT:  No, no, no.  You guys gave me too much

15  paper.  That's my problem.

16          I may not have 38.  That may be my problem.  I thought

17  I had it.  Ah, there we go.  Okay.  Thanks.

18          Okay.  So, yes, I remember seeing those dates.  All

19  right.  So when is your response, then, going to be due --

20          MR. GREIM:  It would be due --

21          THE COURT:  -- Mr. Greim?

22          MR. GREIM:  -- I think December the 16th, 2013.  It

23  would be a combined --

24          THE COURT:  That's plaintiffs'.

25          MR. GREIM:  Right.

1    THE COURT:  All right.  So the deadlines we've got

2    here are November 18th, 2013 -- and, Bill, this is out of

3    document 38.  We'll send out a scheduling order with these

4    dates.  November 18th for the individual capacity defendants'

5    motion or motions to dismiss, December 16th for plaintiffs'

6    combined opposition to the individual and official capacity

7    defendants' motion to dismiss, January 17th, two thousand I

8    guess that should be fourteen, for the reply briefs.  Time

9    flies when you're having fun.  And the soonest practical date

10   after January 17th for oral argument.

11        How long are these motions and responses going to be?

12   Are you exceeding -- have you asked to exceed the page limit?

13   Are you going to?

14        MR. GREIM:  Your Honor, the government -- this is

15   Mr. Greim.  The government, with our consent, did exceed for

16   their motion to dismiss.

17        THE COURT:  Ah, ah.  No, no, no.  You don't give

18   consent.  I --

19        MR. GREIM:  With our okay.  We did not oppose; I guess

20   I could put it that way.

21        THE COURT:  All right, gentlemen, gentleman and lady.

22        MR. HARTT:  The Court granted it.  Your Honor, this is

23   Grover Hartt.

24        THE COURT:  I did.  Because I was going to say, I've

25   got my own rule here in the Southern District contrary to the

1    local rule, if you look at my trial procedures, that says that

2    memoranda may not exceed 20 pages unless you get permission of

3    the Court.  And in order to do that, you need to file a motion

4    for extension of the page limitation and you also need to tell

5    me in that motion approximately how many additional pages you

6    want.  And the reason is because the first time I ever granted

7    one of those, of course I got a hundred pages, so I learned my

8    lesson.

9          But, you know, I'd like to keep this down to as little

10   as possible.  How much was it exceeded already?

11          MR. HARTT:  I believe it was our brief was 28 pages,

12   Your Honor.

13          THE COURT:  Who --

14          MR. GREIM:  Mr. Hartt.

15          MR. HARTT:  I'm sorry.  Grover Hartt, Your Honor.

16          THE COURT:  Okay.  So, Bill, we need a date for an

17   oral argument.

18          MR. BERGERON:  And, Your Honor, this is Pierre

19   Bergeron.  For the defendants, it is possible that we will seek

20   to exceed the page limit also.  It's still early for us to say

21   yes or no on that.  We will obviously endeavor to keep it as

22   brief as possible, but we may need to come and ask for relief

23   for that.

24          MR. GREIM:  Your Honor, one thing we had asked --

25          THE COURT:  And this is Mr. Greim speaking.

1    MR. GREIM:  I'm sorry.  Mr. Greim.  One thing we had

2    asked individual defendants to come here to discuss today, page

3    limits would be one thing, but also will we be getting, you

4    know, 18 separate briefs that we'll have to respond to, will we

5    have two?  Is that possible to resolve today?

6        THE COURT:  Yes.  Thank you for bringing that up.  I

7    thank you.  My law clerk who is sitting here thanks you.

8        MR. BERGERON:  And I would say on this that -- Pierre

9    Bergeron again -- we're certainly not, at least on -- for our

10   seven, we're not going to file seven individual motions.  I

11   mean, that would be ridiculous.  But I think what the

12   difficulty is they may have issues, the managerial employees

13   may have different issues than we will.  I think we will

14   endeavor to work together with them so that we're not being

15   repetitive, but I don't know that we can -- I think what he had

16   initially suggested was just a combined for all the

17   individuals, and I don't think that's going to be possible.

18       THE COURT:  Okay.

19       MR. BERGERON:  But I think what we are shooting for is

20   one brief for our seven, and if there are personal jurisdiction

21   issues, those may have to be addressed separately.  But I think

22   the Bivens issues and those things can be addressed, at least

23   for our seven, in one brief.

24       THE COURT:  Okay.

25       MS. BENITEZ:  And, Your Honor, this is Brigida

1   Benitez.  I would expect that for our 11 individual defendants,

2   it would be the same; that we would aim to file one brief.  But

3   especially not having spoken to a few of the defendants,

4   especially those who are located in Cincinnati, I'm not sure if

5   there would be a need to file a separate brief on their behalf,

6   but it certainly wouldn't be 11 briefs.

7           THE COURT:  Okay.  That's good.  And let me say this:

8   I encourage counsel to call my chambers if you have any

9   questions, so you're welcome to talk to Mr. Miller, my case

10  manager, Beth Mandel, who is the law clerk on this case.  You

11  know, rather than spin your wheels doing something and

12  wondering if it's right, don't hesitate to call chambers.

13  We're glad to answer your questions, and I find it usually

14  saves us some work.

15          So that's okay.  That's a good point.

16          What else, Mr. Greim?

17          MR. GREIM:  We wanted to see if we could schedule a

18  date.  We've had one Rule 26(f) conference but it was only the

19  plaintiffs and the official capacity defendants' counsel.  We'd

20  like to see if we could set a date for a conference and report

21  for everybody together within the next maybe month or so.

22          THE COURT:  Okay.  Does that give you all enough time?

23  I will guess Miss Benitez needs to talk to her clients and

24  everything first.

25          MR. BERGERON:  And we're largely --

1          THE COURT:  This is Mr. Bergeron speaking.

2          MR. BERGERON:  We're largely in the same boat.  I

3    mean, we've come to the party pretty late too and we have just

4    recently reached out to our individuals and gotten their

5    contact information.  We were dealing with the same challenges

6    that they were.  And so I just think it's too -- we've got to

7    obviously focus on getting the motion to dismiss ready, and so

8    I just think anything in the next month is going to be a

9    challenge.

10          THE COURT:  Mr. Bergeron, what would you suggest?

11          And, again, just for everybody's knowledge, I don't

12   push people on strict deadlines initially.  I want you to when

13   you give me a deadline, I want you to be realistic about it

14   because once we set a deadline, I mean to keep it.  But, you

15   know, I've been in practice too and I know that, you know, if

16   you set unrealistic deadlines to start with, then it's always

17   going to be a problem.  So, you know, give me your best

18   estimate.

19          MR. BERGERON:  I would honestly say, Your Honor, after

20   the first of the year.

21          THE COURT:  Okay.  Mr. Greim.

22          MR. GREIM:  Yeah, Your Honor, the only thing that I

23   would say is I know we don't want to push people too far in

24   advance, but there are some issues here that I think should be

25   discussed between the parties that probably don't require

1    specific conversation with somebody, with one individual

2    client.  I think, you know, at least two sets of these

3    attorneys were representing some of the same individuals in

4    parallel proceedings in Washington, D.C.  I actually learned

5    about that and invited them to listen and to join our first

6    Rule 26(f) conference.  So I think --

7         THE COURT:  Now, wait.  Who are you referring to?  I'm

8    confused here.

9         MR. GREIM:  I don't want to go too far.  Miss Benitez

10   got an e-mail from me and also Mr. Shur.

11        THE COURT:  Okay.

12        MR. GREIM:  But that's only because I had heard that

13   they are representing some of the same individual defendants.

14   They don't completely overlap, Your Honor.  There are new

15   people in this case, so I want to make that clear.

16        THE COURT:  What is the case going on in Washington?

17        MR. GREIM:  There's a couple, a couple cases.  One of

18   them is brought by a group represented by the ACLJ, and they

19   are -- I think they have 30 or 40 plaintiffs.  They're suing

20   some of the same managerial level employees, but I think the

21   lower-level employees largely are not represented in that

22   they've not been sued.

23        There is a separate case on behalf of National

24   Organization for Marriage.  I don't know as much about that

25   case.  I think there was even one more that I'm forgetting.

1      MS. BENITEZ: Actually -- this is Brigida Benitez --

2  I'd be happy to chime in. I am involved in both of those

3  cases. And while I very much appreciated Mr. Greim reaching

4  out, what I had said to him at that time is I had not been

5  authorized to represent anyone in this current case and didn't

6  feel it was appropriate for me to be involved if I wasn't going

7  to be counsel.

8      But there are two cases pending. One is brought on

9  behalf of the 42 or 41, 42 plaintiffs, and the other is on an

10  individual plaintiff in Texas, both against some but not all of

11  these individual defendants as well as the IRS and the other

12  institutional defendants; and the claims are very similar in

13  that there are allegations, at least against the individuals,

14  of constitutional violations based on <u>Bivens</u> and the like, and

15  it's against both managerial and nonmanagerial employees. And

16  while those cases have been just recently started as well, we

17  have not had any kind of discovery pursuant to a Rule 26(f)

18  conference and would not expect that that would happen in those

19  cases until after briefing and perhaps decision on the motions

20  to dismiss.

21      THE COURT: Okay. Is there any reason to consolidate

22  these cases? Are we all doing the same thing or with different

23  parties or what?

24      MR. GREIM: Your Honor --

25      MR. HARTT: Your Honor, this is Grover Hartt. I can

1    speak to some of the issues that are inherent in the question

2    the Court's asked.

3           There is a significant overlap, as I think the Court's

4    heard already, in three of these cases, the case pending before

5    Your Honor, a case called True the Vote pending in Washington,

6    D.C. before Judge Reggie Walton, and Linchpins of Liberty.

7    That's the one with the 40-some-odd different plaintiffs.

8           THE COURT:  And what -- who's got that case?

9           MR. HARTT:  Judge Walton has that case as well, Your

10   Honor.

11          THE COURT:  Okay.  Great.

12          MR. HARTT:  Now, there was mention made a moment ago

13   by Mr. Greim about another case filed by a National

14   Organization for Marriage.  At least from our perspective, that

15   case really involves some different issues, and we don't really

16   consider it as one of these three that have a significant

17   overlap.

18          In any case, the case before Your Honor is unique in

19   that plaintiffs are asking to certify a class, and it is unique

20   in that they are asserting a ground based upon the alleged

21   violation of the Privacy Act.  Those two points are not in

22   either of the cases before Judge Walton.

23          The other issue that may come up in this case, and

24   we're, frankly, not completely clear yet, there are two

25   different provisions of the Internal Revenue Code applicable to

1     exempt organizations in these cases.  One, and the one which

2     involves the much greater number of plaintiffs, is Section

3     501(c)(4).  The other is Section 501(c)(3).  (c)(3) basically

4     says you're a tax-exempt organization, whereas the other is a

5     community action organization that has various functions and

6     may be permitted some political activity.

7          The 501(c)(3) cases, the reason I'm going into this

8     somewhat detailed discussion right now, those cases by statute

9     can only be brought in U.S. Tax Court, U.S. Court of Federal

10    Claims, or the only District Court that may be brought in is

11    the one for the District of Columbia.  And to the extent that

12    any relief under 501(c)(3) is part of what NorCal or the other

13    plaintiffs are seeking in this case, when that becomes clear,

14    then we would be asserting that that part of the relief is

15    really not appropriate in this particular court.

16         THE COURT:  Okay.  Mr. Greim.

17         MR. GREIM:  This is Mr. Greim.  Just to respond, up

18    until the very end, I think I agreed with Mr. Hartt's kind of

19    thumbnail sketch of the different cases.  I don't think we've

20    got a -- I don't think we have the issue that he's referencing

21    there, although there is one (c)(3) organization involved here.

22    There the claim they're asserting is not the kind of claim that

23    Mr. Hartt says has to be brought in Tax Court or in D.C.  And,

24    in fact, some of our Privacy Act claims, under the Privacy Act

25    you can bring that claim in the district where your documents

1    are which is actually here.  This is where the processing was

2    done.  This is where all the, you know, the lower-level workers

3    who were doing the work were.  This is where they were handling

4    the documents and sending out requests or that's why this case

5    is here and that's why this is a class action.  But to put all

6    that aside, I forgot kind of how we got into this.  I guess it

7    was on the scheduling of the Rule 26(f) conference.

8            THE COURT:  Yes.

9            MR. GREIM:  Look, we want it to be a useful

10   conference.  We don't want people to come in and say they

11   haven't had a chance.  But I guess my only point is we've been,

12   you know, this was the second amended or third amended

13   complaint was filed back in early August.  People maybe haven't

14   talked to some of the individuals, but these are not brand new

15   issues.  We're a few months in, and we'd just like to do it as

16   soon as we can, Your Honor.

17           THE COURT:  Okay.  Give me your best.

18           MR. BERGERON:  Well, I do -- it's Pierre Bergeron

19   again.  I do want to echo what Brigida said that, you know,

20   it's one thing to have the Rule 26 conference, but if they're

21   viewing that as a prelude to discovery, I mean, we've got a lot

22   of case law on immunity that say that shouldn't happen until

23   the issues are resolved on dismissal.

24           So, I mean, I think I still say realistically if we're

25   going forward with the Rule 26 conference, it would make the

1     most sense to do it after the holidays.

2              THE COURT:  I'm inclined to agree with you just

3     because we all know nothing happens, like, the last two weeks

4     of December.  And it's almost -- it's almost November.  So

5     we're actually looking at a pretty short time period.

6              How is that going to relate to my setting a date for

7     oral argument?

8              MR. GREIM:  Well, we could work back.  This is

9     Mr. Greim.  We could work back, Your Honor, for a date that we

10    could have oral argument but also do our preliminary pretrial

11    conference, and so actually this could all fit together pretty

12    nicely.  If we were to set oral argument in late January or the

13    first week of February, assuming there's no big snow problems

14    with that, we could, you know, we could have our conference in

15    mid January when briefing is done.

16             MR. HARTT:  Your Honor, this is Grover Hartt again.

17    We're all, of course, eager to move these cases forward.

18    Speaking at least for the defendants we represent, we think at

19    the end of the day there's not a case to be brought against

20    them.  Presumably, the counsel for the individuals that -- the

21    defendants sued in their individual capacities may have a

22    similar view.  I'll let them speak to that.  But it really

23    makes no sense for us to have the Court tell us first whether

24    there's any cases going forward and some of the but not all the

25    grounds they brought, but until we know really how much of a

1  viable case there is here, these other matters seem, to us, to

2  be premature.

3       MS. BENITEZ:  Yes, this is Brigida Benitez.  I would

4  agree with that.

5       THE COURT:  Yes, it does seem to me to make sense to

6  do the oral argument first.  So what are we looking at?  Let's

7  go back, then, to the timing for the oral argument.  What --

8       MR. HAYDEN:  Your Honor, this is Mark Hayden.  We

9  suggested a date after January 17th.  The reply briefs have to

10  be filed on January 17th, 2014.  So the parties had agreed on

11  an oral argument some day thereafter.

12       THE COURT:  Okay.  So we're looking at essentially

13  February.  When will we have all the briefing?

14       MR. HAYDEN:  By January 17th.

15       THE COURT:  17th.  Okay.  So we need to put in some

16  time for us, then.

17       MS. MANDEL:  We also have the Younger trial scheduled

18  the last week of January and the first week of February.

19       THE COURT:  Okay.

20     (Off-the-record discussion.)

21       THE COURT:  How long is that trial, a couple weeks?

22       MS. MANDEL:  Each one is supposed to last a week.

23       THE COURT:  So realistically, what are we talking

24  about, March?

25       MS. MANDEL:  Not necessarily March but at least mid

1  February, end of February.

2       THE COURT:  End of February.  What have we got, Bill?

3       COURTROOM DEPUTY:  I was going to suggest maybe

4  Wednesday, February 26th.

5       THE COURT:  That's clear.  Does that work for

6  everyone?  Wednesday, February 26th, for oral argument?

7       MR. HARTT:  This is Grover Hartt, Your Honor.  It

8  works for the government.

9       MS. BENITEZ:  This is Brigida Benitez.  Yes, it works

10  for us.

11       THE COURT:  Okay.  Anybody here --

12       MR. GREIM:  Your Honor, that works for -- that works

13  for the plaintiffs.

14       THE COURT:  Great.

15       MR. BERGERON:  Works for me, Your Honor.

16       THE COURT:  Okay.  Anybody have a problem with it?

17  Let's do it that way.

18       All right.  Great.  We've got a date.

19       All right.  So why don't we have oral argument and

20  then we'll figure out when we're going to set the discovery

21  cut -- when we're going to set the Rule 26.

22       MS. MANDEL:  How long do you think oral argument might

23  take?

24       THE COURT:  Yes, good question, Beth.  What about

25  plaintiff.  Let's start with plaintiffs.

1        MR. GREIM:  Ninety minutes.  I'm saying that's a long

2   time because I know in the Court of Appeals, you think you've

3   got a lot to say but it all happens pretty fast.  So, Your

4   Honor, I would almost defer to the Court.  I mean, I don't know

5   if you like more or less.

6        THE COURT:  I want, you know, I want what you feel

7   comfortable with because I find -- when you mentioned the Court

8   of Appeals, I always found 15 minutes, well, depending on the

9   case, 15 minutes was never enough for me.  On the other hand,

10  you know, I don't need a lot of repetition.  Ninety minutes

11  sounds fine with me.

12       What about how are defendants going to do this?  Are

13  you going to --

14       MR. BERGERON:  We'll have to coordinate in advance,

15  Your Honor, but I would expect, you know, maybe 15 to 20

16  minutes for my group of individuals and then, you know,

17  obviously the government and the other individuals want to

18  speak.  But I imagine that if we did 90 minutes per side, that

19  should be -- I mean, I don't want to speak for anyone else, but

20  that seems fine.

21       THE COURT:  Mr. Hartt, how does that sound to you?

22       MR. HARTT:  I think that sounds reasonable, Your

23  Honor.  We'll obviously need to talk with the counsel for the

24  individuals about dividing that up.  We each have issues that

25  are somewhat unique to our respective parties.  But I think we

1    can do that.

2              THE COURT:  Okay.  I won't schedule anything else that

3    day so, you know, if we need to run over, we do.  You know, I

4    prefer, you know, to have full and complete argument and get it

5    done.

6              So why don't we --

7              COURTROOM DEPUTY:  Let's start at ten.

8              THE COURT:  Yes, we'll start at ten o'clock that

9    morning and, you know, we may take a short break for lunch,

10   then, at some point.

11             MR. GREIM:  Okay.

12             THE COURT:  Okay.  What else?

13             MR. GREIM:  Okay, Your Honor.  I wanted to, before we

14   move away from the Rule 26 issue, we had one other comment to

15   make.  This is a matter where documents are sort of being

16   produced to Congress while we're briefing and things and, you

17   know, if we were to draft a complaint now, it would probably be

18   different from what we drafted in August just because we know

19   more because discovery is sort of happening but just not civil

20   discovery, just it's happening out there.

21             The other thing is a lot of these defendants are

22   working on other things, time is going by, and we actually

23   we -- one reason we wanted a early Rule 26(f) conference is

24   because we think some limited discovery should happen.

25   Respectfully, I know the defendants all believe that the entire

1   case should go away.  We kind of believe it's unlikely that

2   everything goes away, and this case is not segmented into

3   factual clusters.  It's sort of an all or nothing under some

4   theory.  So it sounds like we're headed in the direction where

5   we do, you know, February 26 oral argument, then we just begin

6   to talk about setting Rule 26(f).  I just wanted to make one

7   last effort for an earlier party conference so that maybe we

8   could have a preliminary pretrial.

9           THE COURT:  I think it seems to me, and I'll hear from

10  defendants, but it seems to me some conference between the

11  parties might be productive in order to make sure there is a

12  preservation of documents.  If there are documents being

13  produced, to the extent that you want to make sure they're

14  preserved, you know, I don't think -- I think that's a

15  legitimate concern.  And you can probably have that reasonably

16  soon.  How soon would you like it?

17          MR. GREIM:  Your Honor, we would do it after we're

18  done -- this is Mr. Greim.  I'm sorry.  We'd do it right now.

19  I mean, we'll do it as soon as the defendants can be ready.

20          THE COURT:  Okay.

21          MR. HARTT:  Your Honor, this is Grover Hartt.  May I

22  be heard on that?

23          THE COURT:  Sure.

24          MR. HARTT:  First, to address the Court's concern,

25  obviously, about preservation, we have, the government, again,

1    the IRS is in about a vast amount of potentially responsive

2    material with respect to inquiries being conducted by several

3    Congressional committees.  That information has been preserved

4    and is being screened on ongoing basis by a very large team of

5    lawyers and support staff and the IRS chief counsel.  As that

6    process goes forward, is being produced to Congress.

7            Again, I hate to get too strung out on this, but one

8    committee, the Ways and Means Committee, has a right basically

9    to see anything the IRS has.  The other committee, the

10   Oversight Committee headed by Chairman Issa, does not have that

11   same authority and, therefore, the IRS has to go through and

12   screen the information to ensure that Section 6103, which is

13   one of the issues in this case, has not been violated, would

14   not be violated by the information being disclosed.

15           The other part of that is that while the ESIO letters,

16   all that have gone out some months back now, the information

17   that we believe would be potentially relevant in this case, to

18   the extent that it goes forward in its capacity, is a subset of

19   that much larger universe of documents that I've just

20   described.  We're happy to tell counsel, you know, what efforts

21   are being made to preserve all this information, but to the

22   extent that he wants to go beyond that and have us start now

23   trying to make another cut on this information, start producing

24   it to them ahead of the decision on the motion to dismiss, that

25   does create a very serious problem for us, primarily because we

1    think it's ultimately a useless consumption of scarce

2    resources.

3          THE COURT:  Okay.  Mr. Greim.

4          MR. GREIM:  Your Honor, with one -- I mean, I think

5    the assumption there, and we're kind of moving into sort of the

6    quasi discovery conference here, but the assumption there is

7    that this class action wouldn't be certified, I think, and that

8    would only cover the named plaintiffs who are sort of party

9    representatives right now.  But we actually believe that we

10   don't see subsets of what's being produced to Congress as being

11   relevant here.  I mean, we think this case encompasses the

12   claims that any of the (c)(4)s would have.  I can't promise if

13   there isn't something that's been produced in response to, you

14   know, a Congressman's letter that doesn't relate to this case,

15   but this case as we conceive it is pretty broad.

16          And so one thing we suggested, and surely I will not

17   use up much more of our time on this, but is that as documents

18   are being produced to the lower-level committee that has things

19   redacted, you know, what would stop the government, the

20   official, you know, we've had our official capacity Rule 26

21   conference, from just producing those same documents to us.  I

22   mean, you know, we read about them for the first time on the

23   internet, yet we're in litigation with the government.  We've

24   had our Rule 26(f) conference.  Why can't those be produced to

25   us?  It's certainly, you know, if there were to be a deadline

1    for amendments down the road, it would be good to have the

2    information earlier rather than later.  You got this kind of

3    extended briefing time.  We think we ought to make some use of

4    it.

5           But we're happy to take our preservation.  We're happy

6    to get that nailed down now.  We'd like to get production of

7    what they're already producing redacted to the government.  And

8    then I got one final issue to raise after all that.

9           THE COURT:  Okay.

10          MR. HARTT:  Your Honor, this is Grover Hartt again.

11   The problem, as Mr. Greim just said, this is pretty broad,

12   extremely broad lawsuit they've brought here, and we really

13   don't believe, frankly, that it merits what they're trying to

14   build into it.

15          Beyond simply screening these documents for Section

16   6103, in contrast to a case in District Court, we need to make

17   a further screening of these documents to -- with regard to any

18   privileges that may be involved.  And it seems to us that we

19   are really basically kind of circumventing the whole purpose of

20   filing motions to dismiss if we're now going to get down in the

21   weeds on all these discovery issues.  And we really think that

22   it would be more appropriate once they're told all the efforts

23   have gone on to preserve the material so it will be there if

24   and when it ever becomes relevant for them to see it, but once

25   we satisfied that issue, we think it's really inappropriate to

1   get into discovery beyond that point.

2          THE COURT:  Yes, I would agree with that.  I agree.

3   As long as the documents are preserved, let's handle the

4   motions to dismiss first.

5          Okay.  What else?

6          MR. GREIM:  Final issue, Your Honor.  Something that

7   we'd have to do in this case is file a class certification

8   motion, and under your local rules, you have to get consent or

9   you've got to wait till after the Rule 26(f) conference and

10  then give you a date for that.  Since we're going to have a

11  sort of briefing time now built into --

12      (Noise.)

13         MR. GREIM:  I'm sorry.

14         THE COURT:  For counsel on the phone, the reason we're

15  laughing is the Article III judge in the chambers next to me

16  used to be my law partner, trial partner, best -- is my best

17  friend, and he plants things in my chambers and conference room

18  from time to time that make noises, and that's why we're

19  laughing because he's planted something in here and we don't

20  know where it is.

21         MR. GREIM:  Your Honor, what we'd like to do is use

22  the same time, because we've got about four months built in

23  where we're only briefing motion to dismiss, to also go ahead

24  and file our motion for class certification.  That may shed

25  some light on the issues for the Court.  You'll have that in

1   front of you.  We'll be talking about what the case would look

2   like.  Let's do -- if we're not going to have discovery, let's

3   put this time to use, this sort of briefing time to use, and

4   get that taken care of too, and we'd be prepared to file that

5   very soon.

6               THE COURT:  Okay.

7               MR. HARTT:  Well, Your Honor, this is Grover Hartt

8   again.  Again, it just seems like circumventing the purpose of

9   filing these motions to dismiss.  Moreover, if we're going to

10  be expected to respond to his seeking a class, certification of

11  class, and I anticipate that we would probably have to be

12  involved in some kind of discovery ourselves, and, again, this

13  is just, it seems to me, a very premature stage to be getting

14  involved in that.

15              MR. FINNEY:  Your Honor, this is Chris Finney.

16              THE COURT:  You've got to speak up, Mr. Finney.

17              MR. FINNEY:  I think the concern --

18              THE COURT:  Can you hear Mr. Finney, counsel?

19              MR. FINNEY:  The concern of the plaintiffs is just

20  that when we start stacking these things one after another, the

21  question will be six months from now or a year from now where

22  are we.  I'm involved in some litigation right now where people

23  have died in the middle of litigation, you lose their

24  testimony, memories are lost.  And then, of course, there's

25  questions of both spoliation of evidence and just preserving

1    all the stuff that's being produced to Congress right now.

2              It seems to the plaintiffs that the Court might want

3    to try to get its arms around this now at the front end to

4    figure out not so much, you know, disagreeing with any

5    particular decision that you're making but to say really how

6    far are we going to stack this out before discovery commences

7    and we can get to the substantive issues in this case.

8              So I think that's our bigger concern.  And what we're

9    hearing is just we're going to do one, then we're going to do

10   the other and then the other, and it's going to be a long time

11   before discovery could ever commence in this matter.

12             MR. HARTT:  Well, Your Honor, Grover Hartt again.  The

13   plaintiffs are the ones who brought this already very broad

14   lawsuit, and it's broader by having a class certified, which we

15   don't think is correct.  But if we're correct on the first

16   point that there's really no viable case to go forward, then

17   once again, a great deal of effort's been expended for no good

18   purpose.

19             The preservation issue, we'll deal with that.

20   Whatever we've got is going to be there, and if and when it

21   becomes relevant, they can see it.  But to get involved now

22   with a whole nother kind of satellite war in this thing doesn't

23   really seem to be, to us, the correct or efficient way to

24   proceed.

25             THE COURT:  Mr. Bergeron.

1          MR. BERGERON:  Just one other point to add there, Your

2    Honor.  I think it should be clear to everyone that as we

3    discussed today, at least five of our clients have not even

4    been served and yet we're agreeing to file a motion to dismiss.

5    You know, they would have 60 days, Your Honor, so we're filing

6    well in advance of that.  And, you know, this is the first

7    we're hearing about class action, you know, certification

8    motion.  We would have never agreed to file that soon on the

9    motion to dismiss if we're having to brief these other issues.

10         THE COURT:  Yes.  I understand your desire to move the

11   case along, and I know in big cases like this sometimes it

12   seems like it's moving at a snail's pace, but my experience has

13   been that you have to take these things in order.  And I think

14   the first thing to do is the motion to dismiss and then, you

15   know, we'll figure out how you want to do the motion for class

16   cert. along with discovery.  We'll figure which is next.  But I

17   think that that's got to wait until we do the motion to

18   dismiss, motions to dismiss.

19         Okay.  Anything else?

20         MR. GREIM:  Your Honor, that's all I've got on my

21   plate unless I've forgotten something.  Turning to my

22   co-counsel here.

23         THE COURT:  That's the quietest I've ever seen

24   Mr. Finney.

25         Okay.  All right.  Defendants, anything?

1          MR. BERGERON:  Nothing else, Your Honor.

2          MR. HORWITZ:  Nothing else, Your Honor.

3          MR. HARTT:  Nothing else for the government, Your

4   Honor.

5          THE COURT:  Great.  Well, we'll get a scheduling order

6   out with all these dates and I guess we'll go from there.  We

7   just have to get finished in time for the English Dog Show.

8          Okay.  Thank you, everyone.

9          MR. LANGDON:  Thank you, Your Honor.

10         MR. FINNEY:  Pleasure appearing in front of you.

11         MR. HARTT:  Thank you, Your Honor.

12      (Proceedings concluded at 12:06 p.m.)

13                           - - -

14

15

16                   C E R T I F I C A T E

17       I, Julie A. Wolfer, the undersigned, do hereby

18   certify that the foregoing is a correct transcript from the

19   record of the proceedings in the above-entitled matter.

20                         s/Julie A. Wolfer
                         Julie A. Wolfer, RDR, CRR
21                         Official Reporter

22

23

24

25