IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| NorCal Tea Party Patriots, *et al.*, | : | Case No. 1:13-cv-341 |
| | : | |
| Plaintiffs, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting Dismissal Motions of |
| | : | Management Defendants, Line-Level |
| The Internal Revenue Service, *et al.*, | : | Employee Defendants, and Carter Hull; |
| | : | Granting in Part Dismissal Motion of |
| Defendants. | : | Federal Defendants; and Denying as |
| | : | Moot Motion for Leave to Conduct |
| | : | Limited Discovery |

This matter is before the Court on four dismissal motions and one discovery motion:

(1) Motion to Dismiss Claims against Federal Defendants (Doc. 73); (2) Management

Defendants' Motion to Dismiss the Second Amended Class Action Complaint (Doc. 77);

(3) Line-Level Employee Defendants' Motion to Dismiss Count 2 of the Second Amended Class

Action Complaint (Doc. 78); (4) Motion to Dismiss of Individual Defendant Carter Hull (Doc.

79); and (5) Plaintiffs' Motion for Leave to Conduct Limited Discovery Related to Personal

Jurisdiction (Doc. 83).  For the reasons that follow, the Motions to Dismiss filed by Management

Defendants, Line-Level Employee Defendants, and Carter Hull will be granted and the Motion to

Dismiss filed by Federal Defendants will be granted in part.  Plaintiffs' Motion for Leave to

Conduct Limited Discovery will be denied as moot.

## I.     BACKGROUND

## A.     Factual Allegations

Because the pending dismissal motions raise primarily questions of law, and because the

Court need not address the disputed factual issues concerning personal jurisdiction, the well-

pleaded facts in the 272-paragraph Second Amended Class Action Complaint ("SACAC") (Doc. 71) can be briefly summarized.

This lawsuit was filed by ten Plaintiff Groups,[1] organizations "comprised of individual citizens who have joined together to exercise their rights to freedom of speech and expression" and who share a philosophy of "dissent from the policies or ideology of the Executive Branch of the United States Government under its current Administration."  (Doc. 71 at PageID 981.) Plaintiff Groups refer to themselves, and the members of the class which they seek to represent, as "dissenting groups."  Plaintiff Groups are suing four sets of defendants:  Federal Defendants, consisting of the Department of the Treasury, the Internal Revenue Service ("IRS"), and IRS employees sued in their official capacities; Management Defendants of the IRS sued in their individual capacity;[2] Line-Level Employee Defendants of the IRS sued in their individual capacities;[3] and Defendant Carter Hull, an IRS attorney sued in his individual capacity.

Beginning in 2010, nine of the Plaintiff Groups applied to the IRS for exemption from federal taxation pursuant to Internal Revenue Code, 26 U.S.C. § 501(c)(4).  (*Id.* at PageID 990.)[4] Plaintiff Groups applied for § 501(c)(4) status to avoid the burden of double taxation.  (*Id.* at PageID 989–90.)[5]  Each Plaintiff Group sought advanced recognition of their tax-exempt status

---

[1] Plaintiff Groups are NorCal Tea Party Patriots, Faith and Freedom Coalition of Ohio, Simi Valley Moorpark Tea Party, Tampa 9-12 Project, South Dakota Citizens for Liberty, Inc., Texas Patriots Tea Party, Americans against Oppressive Laws, Inc., San Angelo Tea Party, Prescott Tea Party, and the Texas Public Policy Foundation.

[2] Management Defendants include Steven F. Bowling, Bonnie Esrig, Joseph Grant, Sarah Hall Ingram, Lois Lerner, Brenda Melahn, Steven Miller, Holly Paz, Douglas Shulman, Cindy Thomas, and William Wilkins.

[3] Line-Level Employee Defendants include Joseph Herr, Grant Herring, Elizabeth Hofacre, Stephen Seok, Mitchell Steele, and Carly Young.

[4] At the oral arguments held on June 30, 2014, Defendants asserted, and Plaintiff Groups appeared to concede, that Plaintiff Texas Public Policy Foundation applied for and received a tax-exempt status from the IRS years before the targeting activities alleged in this lawsuit.

[5] Plaintiff Groups suggest in other paragraphs of the SACAC that Plaintiff Groups, or at least other dissenting groups, also sought recognition as tax-exempt entities under § 501(c)(3).  (Doc. 71 at PageID 981, 1038.)

from the IRS, instead of acting as a self-declared tax-exempt organization, to avoid the risk of facing a "crippling and unexpected tax and penalty" if the IRS determined upon an audit that the organization was not operating under the tax exemption guidelines.  (*Id.* at PageID 990.)

Plaintiff Groups allege that Defendants subjected them and other dissenting groups, on the basis of their beliefs, to delays and intrusive scrutiny during the tax-exempt status application process.  (*Id.*)  Plaintiff Groups allege that Defendants targeted dissenting groups by selecting groups whose names included terms such as "Tea Party," "Patriots," or "912 Project" or by selecting groups focused on issues such as government spending, limited government, or educating the public about the Constitution.  (*Id.* at PageID 991.)  Plaintiff Groups allege that Defendants subjected their tax-exempt status applications to "unreasonable delays and often harassing, illegal, and discriminatory demands for private information."  (*Id.* at PageID 982, 994.)  Plaintiff Groups allege that Defendants demanded that they disclose "information not authorized by the Internal Revenue Code or any other federal law."  (*Id.* at PageID 1010, 1032.)  Plaintiff Groups allege that as a result of the Defendants' conduct they suffered an invasion of their privacy, the administrative costs of responding to burdensome and unlawful requests for information, and the loss of donations and membership fees.  (*Id.* at PageID 982, 1037, 1044.)

**B.     Procedural History**

Plaintiff Groups filed the Second Amended Class Action Complaint on January 23, 2014. Plaintiff Groups assert three causes of action:

Count One:  Violation of the Privacy Act, 5 U.S.C. § 552;

Count Two:  Violations of the First and Fifth Amendments to the United States Constitution; and

Count Three:  Violation of 26 U.S.C. § 6103, a statute which protects the confidentiality of tax return information.

(Doc. 71 at PageID 1032–46.) Plaintiff Groups also seek to certify a class that would include generally "all dissenting groups targeted for additional scrutiny by the IRS from January 20, 2009 through July 15, 2013." (*Id.* at PageID 1047.)

Four sets of Defendants have filed Motions to Dismiss (Docs. 73, 77, 78, 79). All Defendants assert pursuant to Federal Rule of Civil Procedure 12(b)(6) that Plaintiff Groups have failed to state a claim upon which relief can be granted. Certain Defendants, each a non-Ohio resident, also assert that the Court lacks personal jurisdiction over them. Plaintiff Groups oppose dismissal of their claims and also have filed a Motion for Leave to Conduct Limited Discovery Related to Personal Jurisdiction (Doc. 83). The Motions are ripe for adjudication.

## II.    STANDARDS GOVERNING MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations, which are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]he complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Harvard v. Wayne Cty.*, 436 F. App'x 451, 457 (6th Cir. 2011) (internal quotation and

4

citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.[6]  The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.    ANALYSIS

### A.    Count One:  Privacy Act Claim

In Count One of the SACAC, Plaintiff Groups allege that Federal Defendants violated the Privacy Act, 5 U.S.C. §§ 552a(e)(1), 552a(e)(3)(A)-(D), 552a(e)(4), 552a(e)(5), 552a(e)(7), and 552a(e)(10).  (Doc. 71 at PageID 1032–37.)  The Privacy Act "delineates duties and responsibilities for federal agencies that collect, store, and disseminate personal information about individuals." *Butler v. U.S. Dep't of Justice*, 368 F. Supp. 2d 776, 782 (E.D. Mich. 2005). The Privacy Act creates a private cause of action in favor of "the *individual*" when an agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on [the] individual."  5 U.S.C. § 552a(g)(1)(D) (emphasis added).

Federal Defendants move to dismiss this claim on the grounds that the United States has not waived its sovereign immunity as to claims by the Plaintiff Groups because they are not individuals.  The United States is immune from suit except to the extent that Congress has waived the immunity by specific statute. *Lehman v. Nakshian*, 453 U.S. 156, 160–61 (1981);

---

[6] In accordance with this standard, the Supreme Court also specifically repudiated the pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that a complaint fails to state a claim when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562–63.  The Court in *Twombly* said the "no set of facts" language from *Conley* had "earned its retirement" and was "best forgotten." *Id.* at 563.

*Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819–20 (6th Cir. 2007). Plaintiff Groups concede that only "individuals" can sue under the Privacy Act, but they assert that Plaintiff Groups can bring the claims of their individual members pursuant to the doctrine of associational standing.  (Doc. 84 at PageID 1433.)

Under the doctrine of associational standing, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  At least one federal district court, the District of Columbia, has refused to allow Privacy Act claims on the basis of associational standing because the statutory language in § 552a(g) creates a cause of action only for individuals, not for groups representing individuals.  *Committee in Solidarity with the People of El Salvador v. Sessions*, 738 F. Supp. 544, 547 (D.D.C. 1990) ("[T]he Privacy Act does not confer standing upon organizations on their own or purporting to sue on behalf of their members."), *aff'd*, 929 F.2d  742 (D.C. Cir. 1991); *see also In re Dep't of Veterans Affairs Data Theft Lit.*, MDL Docket No. 1796, 2007 WL 7621261, at *3 (D.D.C. Nov. 16, 2007) (adopting *Sessions*); *but see Nat'l Ass'n of Letter Carriers v. U.S. Postal Serv.*, 604 F. Supp. 2d 665, 670–73 (S.D.N.Y. 2009) (allowing Privacy Act claim based on associational standing).  This Court need not decide in this case whether associational standing could allow representative groups to brings Privacy Act claims on behalf of individuals, because Plaintiff Groups here do not meet the third prong of the test for associational standing.

The third prong of the associational standing test is not jurisdictional, but rather is focused on matters of administrative convenience and efficiency.  *United Food and Commercial*

*Workers Union Loc. 751 v. Brown Group*, 517 U.S. 544, 557 (1996).  Under the third prong of

the associational standing test, an association lacks standing when "the fact and extent of the

injury that gives rise to the claims for injunctive relief would require individualized proof or

where the relief requested would require the participation of individual members in the lawsuit."

*Nat'l Ass'n of Letter Carriers*, 604 F. Supp. 2d at 670 (citation omitted).  For example, the

adjudication of a pure question of law that does not require consideration of individualized

circumstances is appropriate for associational standing.  *Id.*

 The third prong of the test has been recognized to allow organizational standing in suits

for declarative and injunctive relief, but to preclude suits for damages.  *Brown Group*, 517 U.S.

at 553–54.  A Southern District of New York court permitted a plaintiff union to assert a Privacy

Act claim based on associational standing in *National Association of Letter Carriers*, but the

case is distinguishable insofar as the plaintiff union sought only injunctive relief.  604 F. Supp.

2d at 667.  Here, Plaintiff Groups seek damages on behalf of their individual members.  (Doc. 71

at PageID 1037.)

 Plaintiff Groups contend that their request for damages does not preclude associational

standing because Plaintiff Groups would seek only statutory minimum damages.  (Doc. 84 at

PageID 1438–39.)  The Privacy Act provides for damages in the minimum amount of $1,000 per

individual.  5 U.S.C. § 552a(g)(4)(A).  However, proof of a statutory violation is not sufficient to

qualify for statutory damages under the Privacy Act.  Plaintiff Groups asserting Privacy Act

claims must first prove actual damages before statutory damages can be awarded.  *Doe v. Chao*,

540 U.S. 614, 620 (2004).

 Plaintiff Groups assert that damages can be apportioned without individual members of

the groups needing to participate or testify in the suit.  In Count One of the SACAC, Plaintiff

Groups alleged that the IRS targeted privacy interests of individual members "by making blanket disclosure demands" to the Groups, that the Groups then "provided [responsive] information on their individual members[,]" and that the costs of the Groups' "member-specific responses were equally borne by all members whose information was disclosed." (Doc. 71 at PageID 1036–37.)[7] The last part of the Count One allegation—that all costs would be borne equally by members whose information was disclosed—is conclusory and need not be accepted as true without specific supporting facts. For example, Plaintiff Groups allege that the IRS asked the NorCal Tea Party to provide the amount of time that members spent at events, the names of members who would distribute materials from other organizations, and the duties and work hours of its board members. (Doc. 71 at PageID 1013–15, 1035.) It is not plausible that Plaintiff Groups would have records of all of that information without needing to consult with individual members. Additionally, rather than costs being borne equally, it is more plausible that the costs borne by each member whose information was disclosed would be dependent upon the type and extent of his or her participation in activities requiring disclosure. The Court concludes that the Plaintiff Groups' claim for damages would require individual members to participate in this suit. The Privacy Act claim fails the third prong of the test for associational standing.

Accordingly, the Court holds that the Plaintiff Groups did not have associational standing to assert a Privacy Act claim on behalf of their members. The Court will dismiss Count One of the SACAC.

---

[7] To the extent that the Plaintiff Groups suggested a different means by which damages could be calculated at the June 30, 2014 oral argument, the Court will not consider that argument. Plaintiff Groups have had three opportunities to plead their claims for relief in the Complaint (Doc. 1), the Amended Complaint (Doc. 14) and the SACAC. The Court will not allow them to amend their claim again by virtue of their oral argument.

**B.      Count Two:  First and Fifth Amendment Claims**

Plaintiff Groups allege in Count Two that Defendants engaged in viewpoint-based discrimination and retaliation in violation of the First Amendment and the Equal Protection Clause of the Fifth Amendment by subjecting them and other dissenting groups to "(1) delayed and extended processing[,] and (2) intrusive and public disclosure of their confidential political speech and association."  (Doc. 71 at PageID 1037–45.)

**1.      Subclaim against Individual Defendants**

Management Defendants, Line-Level Employee Defendants, and Carter Hull (collectively, "Individual Defendants") move for dismissal of Count Two on several grounds. First, they assert that no cause of action for damages can be asserted against IRS employees or officials pursuant to the doctrine articulated in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Second, they assert that they would be entitled to qualified immunity from liability even if a *Bivens* cause of action could be filed against IRS employees and officials.  Third, Individual Defendants Joseph Grant, Sarah Hall Ingram, Lois Lerner, Steven Miller, Holly Paz, Douglas Shulman, William Wilkins, and Carter Hull assert that the Court lacks personal jurisdiction against them.  Because the Court finds that a *Bivens* cause of action cannot be stated against IRS employees and officials for a violation of Plaintiff Groups' First and Fifth Amendment rights in these circumstances, the Court will not address the qualified immunity and the personal jurisdiction issues.[8]

---

[8] Plaintiff Groups concede that they did not assert a prima facie case of personal jurisdiction against Defendants Grant, Ingram, Miller, Shulman, or Wilkins and they have requested the right to take discovery to establish jurisdiction.  (Doc. 84 at PageID at 1426 n.36.)  The doctrine of qualified immunity is intended to shield defendants from the burden of discovery where no claim can be stated.  *See Everson v. Leis*, 556 F.3d 484, 490 (6th Cir. 2009). In this case, the finding that there is no *Bivens* cause of action available to Plaintiff Groups against Individual Defendants precludes the need to enquire further into the asserted defense of qualified immunity.  *Wilkie v. Robbins*, 551 U.S. 537, 567 (2007).  Plaintiff Groups are entitled to an immediate appeal of the *Bivens* finding.  *Id.* at 550 n.4 (stating that "the recognition of an entire cause of action" pursuant to *Bivens* is implicated by the defense of qualified immunity and subject to interlocutory appeal).

The Supreme Court in *Bivens* recognized that a damages cause of action against federal officials for violations of certain constitutional rights is implicit in the U.S. Constitution. *See Downie v. City of Middleburg Hghts.*, 301 F.3d 688, 693 (6th Cir. 2002). "*Bivens* actions do not cover every constitutional right and do not apply in every context." *Krafsur v. Davenport*, 736 F.3d 1032, 1035 (6th Cir. 2013). The Supreme Court has recognized a *Bivens* remedy in only three contexts: Fourth Amendment deprivation in *Bivens*; violation of the Due Process Clause of the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and Eighth Amendment violation against prison officials in *Carlson v. Green*, 446 U.S. 14, 16–17 (1980). The Supreme Court has declined multiple times since the *Carlson* decision in 1980 to recognize a *Bivens* remedy in a new context. *See Minneci v. Pollard*, 132 S. Ct. 617, 622–23 (2012). "[A] *Bivens* remedy will not be implied where: (1) there are special factors counseling hesitation in the absence of affirmative action by Congress; or (2) Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the constitution and viewed as equally effective." *Downie*, 301 F.3d at 694 (internal quotations and citations omitted).

The existence of a comprehensive statutory scheme can be a special factor counseling hesitation against expanding *Bivens*. *See Bush*, 462 U.S. 381–90; *see also Jones v. Tenn. Valley Auth.*, 948 F.2d 258, 263–64 (6th Cir. 1991) (denying a *Bivens* remedy for an alleged First Amendment violation where Congress provided a scheme of civil services remedies under the Civil Service Reform Act and the Energy Reorganization Act). Courts are reluctant to imply a remedy where Congress could have acted to provide a remedy in a statutory scheme, but did not. *See Schweiker v. Chilicky*, 487 U.S. 412, 414, 423 (1988). The special factors analysis should focus "on the comprehensive nature of the administrative system protecting the rights of the

plaintiff, as well as Congress' expertise and authority on the field in question." *Jones*, 948 F.2d at 264. Courts should ask "whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue." *Bush*, 462 U.S. at 388.

The Internal Revenue Code is a comprehensive statutory scheme. Applicants can seek tax-exempt status pursuant to 26 U.S.C. §§ 501(c)(3) or 501(c)(4). Statutory remedies are provided for § 501(c)(3) applicants pursuant to 26 U.S.C. § 7428 and § 7433. Section 7428 provides a declaratory judgment action for § 5103(c)(3) applicants who have received an adverse determination of their § 5103(c)(3) status or applicants for whom the Secretary failed to make a determination. 26 U.S.C. § 7428(a)(1) & (2). The applicants must first exhaust their administrative remedies by waiting for 270 days "after the date on which the request for such determination was made if the organization has taken, in a timely manner, all reasonable steps to secure such determination." 26 U.S.C. § 7428(b)(2).

Section 7433 creates a damages remedy for the wrongful collection of federal tax. "If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States." 26 U.S.C. § 7433(a).

Applicants seeking § 501(c)(4) status can proceed in a different manner. Section 501(c)(4) applicants are not required to submit applications and can hold themselves out as exempt. *See* 26 U.S.C. § 508(a) and Treas. Reg. 1.6033-1. Organizations can challenge a determination that they do not qualify for § 501(c)(4) status when a tax deficiency notice is

issued pursuant to 26 U.S.C. §§ 6212, 6213.  *See People's Edu. Camp. Soc'y Inc. v. C.I.R.*, 331 F.2d 923 (2d Cir. 1964); *see also In re Vision Service Plan Tax Litigation*, No. 2:07-md-1829, 2010 WL 2572076 (S.D. Ohio June 22, 2010) (involving related entities seeking to recover taxes because they should have been considered tax exempt).  Other statutorily-created remedies for taxpayers included in Title 26 of the United States Code are § 7422 (civil action for refund); § 7425 (discharge of liens); § 7431 (disclosure of returns and return information); and § 7432 (civil damages for failure to release lien).

Additionally, oversight of the IRS is conducted by the Treasury Inspector General for Tax Administration ("TIGTA") and the Office of the Taxpayer Advocate.  The Office of the Taxpayer Advocate was created, in part, "to assist taxpayers in resolving problems with the [IRS.]"  26 U.S.C. § 7803(c)(2)(A)(i).  The TIGTA was created pursuant 26 U.S.C. § 7803(d). The TIGTA and the Officer of the Taxpayer Advocate both issued reports on the subject of the wrongdoing alleged in the SACAC.  (Docs. 71-1, 71-2.)

The parties agree that the Internal Revenue Code provisions cited herein do not provide a direct remedy for the wrong alleged here—viewpoint discrimination against § 501(c)(4) applicants effectuated by unnecessary delays and improper requests for information.  However, recognition of a *Bivens* remedy "does not turn on whether Congress has provided complete relief, considerable relief, or little relief."  *Krafsur*, 736 F.3d at 1036.  A *Bivens* remedy "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest."  *Wilkie v. Robbins*, 551 U.S. 537, 549 (2007).  Stated differently, a *Bivens* remedy should not be implied "simply for want of any other means for challenging a constitutional deprivation in federal court."  *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001).

Plaintiff Groups state that a *Bivens* cause of action should be permitted against IRS agents to remedy the constitutional violations alleged here because the Sixth Circuit has allowed *Bivens* claims to remedy violations of First Amendment rights in some circumstances.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (Rule 12(b)(6) motion denied as to prisoner's First Amendment retaliation claim against prison officials); *Downie*, 301 F.3d at 696 n.7 (6th Cir. 2002) (First Amendment claims generally).  However, the Supreme Court stated in 2012 that it had not determined whether *Bivens* extends to First Amendment claims.  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012).  Also, the First Amendment claims in *Hill* and *Downie* were not brought against IRS agents.

Courts in the Sixth Circuit have not recognized a *Bivens* cause of action in the context of federal taxation.  *See, e.g.*, *Sachs v. U.S. ex rel. I.R.S.*, 59 F. App'x 116, 120 (6th Cir. 2003); *Fishburn v. Brown*, 125 F.3d 979, 982 (6th Cir. 1997); *McIntosh v. U.S.*, 82 Am. Fed. Tax Report 2d 98-6501, 1998 WL 762344 (S.D. Ohio Aug. 17, 1998).[9]  In *Fishburn*, the Sixth Circuit stated that the plaintiffs had no *Bivens* remedy against IRS officials for constitutional violations arising from tax collections because Congress provided a scheme of statutory remedies.  125 F.3d at 982–83.  The "carefully crafted legislative remedies [in the Internal Revenue Code] confirm that, in the politically sensitive realm of taxation, Congress's refusal to permit unrestricted damage actions by taxpayers has not been inadvertent."  *Id.* at 983 (citation omitted).  "Federal statutory remedies, including the right to sue the government for a refund of taxes improperly collected, preclude a damages action under *Bivens* for the alleged unconstitutional collection of taxes and satisfy the dictates of due process."  *McIntosh*, 1998 WL 762344.

---

[9]  The Westlaw publication of the *McIntosh* case does not provide page numbers so no pinpoint citation can be given.

The trend in other Circuits also has been to not recognize *Bivens* actions against IRS agents.  *See*, *e.g.*, *Kim v. U.S.*, 632 F.3d 713, 714, 718 (D.C. Cir. 2011) (dismissing tax protesters' due process claims based on alleged failure to maintain required information and perform duties required by law); *Hudson Valley Black Press v. IRS*, 409 F.3d 106, 112–13 (2d Cir. 2005) ("*Bivens* relief is not available to taxpayers who allege First Amendment violations based on retaliatory tax audits."); *Adams v. Johnson*, 355 F.3d 1179, 1184–86 (9th Cir. 2004) (finding no *Bivens* remedy for constitutional violations in the assessment and collection of taxes); *Judicial Watch v. Rossotti*, 317 F.3d 401, 412–13 (4th Cir. 2003) (finding no *Bivens* remedy for damages arising from a retaliatory audit); *Vennes v. An Unknown Number of Unidentified Agents of U.S.*, 26 F.3d 1448, 1453–54 (5th Cir. 1994) (finding no *Bivens* remedy for tax assessment and collection activities); *McMillen v. U.S. Dep't of Treasury*, 960 F.2d 187, 190–91 (1st Cir. 1991) (stating that statutory remedies "may not be perfectly comprehensive," but that "Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the administration of the tax laws") (internal quotations and citations omitted); *Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir. 1985) ("Congress has given taxpayers all sorts of rights against an overzealous officialdom . . . and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees.").  The Tenth Circuit Court of Appeals, to the contrary, allowed First and Fourth Amendment claims against IRS agents for alleged harassment through a *Bivens* action.  *Nat'l Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521, 1527, 1532 (10th Cir. 1994); *but see Dahn v. U.S.*, 127 F.3d 1249, 1254 (10th Cir. 1997) ("[I]n light of the comprehensive administrative scheme created by Congress to resolve tax-related disputes, individual agents of the IRS are also not subject to *Bivens* actions.").

This Court will follow the majority position. Congress has authored a complex, comprehensive remedial scheme in the Internal Revenue Code. Plaintiff Groups' constitutional claim here is most factually analogous to the claims in *Judicial Watch* and *Hudson Valley Black Press*. A retaliatory delay of tax-exemption status, like a retaliatory tax audit, has no direct, complete remedy in the Code. However, the Court agrees with the Second and Fourth Circuit Courts of Appeal that it would be inappropriate to recognize a *Bivens* cause of action to remedy these alleged wrongs. *Hudson Valley Black Press*, 409 F.3d at 112–13; *Judicial Watch*, 317 F.3d at 412–13. It is for Congress, not the Courts, to create any new causes of action relative to the administration of the federal taxation laws. For these reasons, the Court will dismiss Count Two insofar as it is asserted against Individual Defendants.[10]

## 2. Subclaim against Federal Defendants

Plaintiff Groups Texas Tea Party Patriots and Americans against Oppressive Laws, Inc. assert a claim for declaratory and injunctive relief against Federal Defendants asking the Court to "declar[e] that the Defendants' discriminatory conduct is unlawful" and to "enjoin[ Defendants] from using tax exemption applicants' political viewpoints to target them and subject them to unnecessary requests for information." (Doc. 71 at PageID 1045.)[11] Federal Defendants move to dismiss on the grounds that the relief which Plaintiff Groups seek is barred by the Declaratory

---

[10] By dismissing the claims against Individual Defendants, the Court does not intend to express an opinion on the propriety of their alleged conduct in processing of the Plaintiff Groups' applications for tax-exempt status.

[11] The claim for declaratory and injunctive relief cannot be brought by the other Plaintiff Groups who have either had their applications for tax exempt status ruled upon or have withdrawn their applications. NorCal Tea Party Patriots received their exemption in August 2012. (Doc. 71 at PageID 1017.) Faith and Freedom Coalition of Ohio was recognized as exempt in September 2012. (*Id.* at PageID 1020.) Simi Valley Moorpark Tea Party was recognized as exempt in November 2012. (*Id.* at PageID 1024.) Tampa 912 Project, Inc. was recognized as exempt in January 2011. (*Id.* at PageID 1025.) South Dakota Citizens for Liberty was recognized as exempt in June 2012. (*Id.* at PageID 1025.) San Angelo Tea Party and Prescott Tea Party withdrew their applications. (*Id.* at PageID 1031.) Plaintiff Groups did not provide information about the application of Texas Public Policy Foundation. (*Id.* at PageID 1031–32.)

Judgment Act ("DJA"), 28 U.S.C. § 2201, and the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421.

The DJA provides that a district court "[i]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The AIA provides that, with the exception of specified statutory provisions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421. Courts apply the same analysis to both the DJA and the AIA, and if relief is barred under the AIA, then it also is barred under the DJA. *See Ecclesiastical Order of the ISM of AM, Inc. v. I.R.S.*, 725 F.2d 398, 402 (6th Cir. 1984); *Dickens v. U.S.*, 671 F.2d 969, 972 (6th Cir. 1982).

The AIA has an "almost literal effect." *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737 (1974). The "principal purpose" of the AIA is to "protect[ ]the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, and to require that the legal right to the disputed sums be determined in a suit for refund." *Id.* at 736 (citation omitted). The AIA reflects "a policy preference that those aggrieved by taxation pay the tax first, and then sue for a refund." *RYO Mach., LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 470 (6th Cir. 2012). The AIA is "is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes." *Dickens*, 671 F.2d at 971 (citation omitted) (dismissing suit that sought to prohibit the IRS from using particular information to calculate a tax assessment). The Court must apply a two-step

process to determine if an injunction can be issued despite the AIA. *See RYO Mach.*, 696 F.3d at 471. First, the Court must determine if the claim is within the purview of the AIA as a "suit for the purpose of restraining the assessment or collection of any tax." *Id.* (quoting 26 U.S.C. § 7421). Second, the Court must ask whether an exception to the AIA applies. *See id.*[12]

Regarding the first step of the analysis, the Sixth Circuit has interpreted the AIA "broadly" stating that it "encompass[es] almost all premature interference with the assessment or collection of any federal tax." *Id.* Federal Defendants rely on *RYO Machine, Inc.* and *Bob Jones University* to support their argument that the AIA precludes Plaintiff Groups' First and Fifth Amendment claim in this suit. In *RYO Machine, Inc.*, the plaintiff had moved to enjoin the Government from enforcing a ruling which had the effect of subjecting retailers of roll-your-own cigarette machines to an excise tax applied to manufactures of tobacco products. *Id.* at 468–69. The Sixth Circuit concluded that the complaint for injunctive relief was directed at the assessment and collection of taxes, and therefore, was barred by the AIA. *Id.* at 471. In *Bob Jones University*, the university sought to enjoin the Government from continuing administrative proceedings which likely would have led to the revocation of the university's § 501(c)(3) status. 416 U.S. at 735–36. The Supreme Court concluded that the lawsuit fell within "the literal scope and purposes of the Act" because the purpose of the university in bringing the suit was to ensure that its donors not have to pay taxes on their donations. *Id.* at 739.

The factual scenarios presented in *RYO Machine, Inc.* and *Bob Jones University* fell squarely into the parameters of a claim interfering with the "assessment or collection" of taxes.

---

[12] Courts have recognized two exceptions to the AIA. First, the AIA has a judicially-created exception whereby it will not prohibit the exercise of jurisdiction when "(i) the government's position has no chance of success on the merits, and (ii) equity jurisdiction otherwise exists." *Boggs v. U.S.*, 109 F. Supp. 2d 834, 836 (S.D. Ohio 2000) (citing *Enochs v. Williams Packing and Nav. Co.*, 370 U.S. 1 (1962)). "[D]eclaratory or injunctive relief is available if the plaintiff establishes irreparable harm and certainty of success on the merits." *Dominion Nat'l Bank v. Olsen*, 771 F.2d 108, 116 (6th Cir. 1985). Second, "a suit for declaratory and injunctive relief may proceed where Congress has provided no alternative method of challenging the constitutionality of a federal tax." *Dominion Nat'l Bank*, 771 F.2d at 116 (citing *S.C. v. Regan*, 465 U.S. 367 (1984)).

The cases, therefore, provide little guidance on how "broadly" the AIA should be interpreted.  In another Sixth Circuit case, an income tax preparer sought the court to enjoin an IRS criminal investigation into his tax preparation services.  *Daulton v. U.S.*, 76 F. App'x 652, 653 (6th Cir. 2003).  The Court found that suit was barred by the AIA because "[t]he IRS's investigation may lead to the assessment and collection of taxes."  *Id.*  The earlier district court opinion had explained that the criminal investigation could have led to the assessment of taxes against other taxpayers.  *Daulton v. U.S.*, No. C-1-02-590, 2003 WL 352621, at *1 (S.D. Ohio Jan. 6, 2003).  The *Daulton* decision might be viewed as a broader application of the AIA to the extent that neither the district court nor the appellate court stated whether the "purpose" of the suit had been to enjoin the assessment of taxes, as opposed to that being an incidental result of the suit.

Plaintiff Groups, on the other hand, analogize this case to *Cohen v. U.S.*, 650 F.3d 717 (D.C. Cir. 2011), and *Z Street v. Koskinen*, No. 12-cv-0401, --- F. Supp. 2d ---, 2014 WL 2195492 (D.D.C. May 27, 2014).  In *Cohen*, taxpayers objected to the refund process created to allow them to recoup an illegally-collected excise tax.  *Id.* at 719.  The D.C. Circuit Court of Appeals stated that the AIA "prohibits only those suits seeking to restrain the assessment or collection of taxes."  *Id.* at 724 (citation omitted).  It further stated that the AIA does not "reach all disputes tangentially related to taxes."  *Id.* at 727.  To apply the AIA, the court required "a careful inquiry into the remedy sought, the statutory basis for that remedy, and any implication the remedy may have on assessment and collection."  *Id.* at 727.  The court concluded that the AIA did not bar a refund process suit because the tax had been previously assessed and collected and the legality of the tax already had been determined.  *Id.* at 725, 727.

Similarly, in *Z Street*, the court allowed a suit to proceed where a non-profit group sought declaratory and injunctive relief against the IRS for subjecting it to a rigorous review of its

§ 501(c)(3) application because the group had the purpose of educating the public about Israel and Zionism.  2014 WL 2195492 at *1–2.  The court determined that the suit was not a "tax collection claim couched in constitutional terms" because Z Street did not allege that the "IRS unlawfully denied it a preferred tax status." *Id.* at *7 (citation omitted).  The court found that because Z Street alleged "only that the IRS subjected it to unconstitutional viewpoint discrimination in considering its application for that [preferred tax] status[,]" a successful claim would not result in a determination of Z Street's tax status and would not directly affect the assessment or collection of taxes.  *Id.*; *see also Church of Scientology of Celebrity Centre, Los Angeles v. Egger*, 539 F. Supp. 491, 494 (D.D.C. 1982) (finding that the AIA did not bar mandamus suit requesting that the court order the defendants to rule on the ministers' applications for exemption from the self-employment tax).

This case is factually analogous to *Z Street*.  Plaintiff Groups Texas Tea Party Patriots and Americans against Oppressive Laws, Inc. do not seek a determination that they are entitled to § 501(c)(4) status.  They are not suing to directly enjoin the assessment or collection of any tax.  Instead, they seek only to enjoin Federal Defendants from subjecting them to viewpoint discrimination during the application process for tax-exempt status with unnecessary delays and intrusive requests for information.  The purpose of the AIA as stated in *RYO Machines, Inc.*—to ensure that "those aggrieved by taxation pay the tax first, and then sue for a refund" —is not implicated by Plaintiff Groups' constitutional claim.  696 F.3d at 470.  As in *Z Street*, a successful claim by the Texas Tea Party Patriots and Americans against Oppressive Laws, Inc. will not result in a determination in their respective tax statuses nor of their liability for taxes.

The Court concludes that the AIA and DJA do not preclude Plaintiff Groups' constitutional claims against Federal Defendants because the "purpose" of the suit is not to

"restrain[ ] the assessment or collection" of any tax.  26 U.S.C. § 7421.  The Court will not

dismiss Count Two of the SACAC insofar as it is stated against Federal Defendants.

**C.**     **Count Three:  Inspection of Return Information Claim**

Plaintiff Groups allege in Count Three that Federal Defendants violated 26 U.S.C.

§ 6103.  (Doc. 71 at PageID 1045–47.)  Section 6013 requires that tax "returns and return

information shall be confidential."  26 U.S.C. § 6103(a).  Federal Defendants had a duty to keep

confidential the information provided by Plaintiff Groups in furtherance of their application for

tax-exempt status.  Return information is defined to include the following:

> a taxpayer's identity, the nature, source, or amount of his income, payments,
> receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability,
> tax withheld, deficiencies, overassessments, or tax payments, whether the
> taxpayer's return was, is being, or will be examined or subject to other
> investigation or processing, or any other data, received by, recorded by, prepared
> by, furnished to, or collected by the Secretary with respect to a return or with
> respect to the determination of the existence, or possible existence, of liability (or
> the amount thereof) of any person under this title for any tax, penalty, interest,
> fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).  The documents the IRS "receives or creates during the initial

investigation of an organization seeking tax-exempt status constitute[s] 'return information'

within the meaning of § 6103."  *Lehrfeld v. Richardson*, 132 F.3d 1463, 1467 (D.C. Cir. 1998).

Accordingly, Plaintiff Groups' tax-exempt status application materials had to be kept

confidential.

Taxpayers can assert a private cause of action against the Government for violations of

§ 6103 pursuant to 26 U.S.C. § 7431.  "If any officer or employee of the United States

knowingly, or by reason of negligence, inspects or discloses any return or return information

with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring

a civil action for damages against the United States."  26 U.S.C. § 7431(a)(1).  To prevail on a

§ 7431 claim, the plaintiff "must prove that (1) the disclosure was unauthorized, (2) the disclosure was made 'knowingly or by reason of negligence', and (3) the disclosure was a violation of section 6103." *McIntosh*, 1998 WL 762344.

Sections 6103 and 7431 contain statutory exceptions which might be relevant in this case. Section 6103 permits "inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes." 26 U.S.C. § 6103(h). Tax administration is broadly defined to mean "the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party" and includes "assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions." 26 U.C.S. § 6103(b)(4). Additionally, no liability for a violation of § 6103 arises under § 7431 for any inspection or disclosure which (1) results from "a good faith, but erroneous, interpretation of section 6103," or (2) which is "requested by the taxpayer." 26 U.S.C. § 7431(b).

Plaintiff Groups allege that § 6103 was violated in two respects. First, all Plaintiff Groups, except the Texas Public Policy Foundation, assert that "Defendants inspected Plaintiffs' information and shared it amongst themselves even though they knew it was unnecessary for making a decision on Plaintiffs' tax-exempt status, and even though they knew it had been sought based on Plaintiffs' political viewpoint." (Doc. 71 at PageID 1046.) Federal Defendants respond that Plaintiff Groups cannot impose liability upon them under §§ 6103 and 7431 based solely on allegations that the IRS made improper requests for information during the § 5103(c)(4) application process.

21

Federal Defendants analogize the allegations here to § 7431 claims arising from the allegedly improper collection of tax levies. A sister court in the Southern District of Ohio stated that "[t]he majority of federal courts have held that the authority to disclose return information during the collection process is not premised on the procedural propriety of the underlying collection action." *McIntosh*, 1998 WL 762344 (listing cases in support). Applying that majority standard, the court held that "procedural defects in the underlying collection action, standing alone, do not give rise to liability under section 7431 for disclosures made in connection with the levy, seizure or sale of assets." *Id.* The court further stated that § 7431 liability should be based on "the improper handling and disclosure of information," not on "improper collection procedures." *Id.*[13] Federal Defendants argue that, likewise, here liability cannot be based on improper requests for information.

The *McIntosh* case does not compel dismissal of the Plaintiff Groups' claim. *McIntosh* was a summary judgment case. The court granted summary judgment to the Government because the plaintiff premised liability solely upon the defects in the underlying collection action. *Id.* The court cited the § 7431(b)(1) exception to liability and stated that the plaintiff did not "come forward with additional *evidence*" that the IRS agents had not acted in good faith in *disclosing* the tax return information. *Id.* (emphasis added). This case is only at the Rule 12(b)(6) stage. Moreover, Plaintiff Groups deny that their claim is based solely upon the improper requests for information.

Plaintiff Groups allege that Defendants inspected and shared information which they knew was irrelevant to the determination of each group's tax-exempt status. (Doc. 71 at PageID

---

[13] Courts are not unanimous in this analysis. Some courts have held that the disclosure of return information in pursuit of the improper collection of a levy is a violation of § 6103. *See e.g.*, *Rorex v. Traynor*, 771 F.2d 383, 386 (8th Cir. 1985); *Schipper v. U.S.*, No. CV-94-4049, 1998 WL 786451, at *9 (E.D. N.Y. Sept. 15, 1998); *Husby v. U.S.*, 672 F. Supp. 442, 444–45 (N.D. Cal. 1987) .

1046.)  Plaintiff Groups will have to establish that the IRS officials who inspected or disclosed the return information did so knowing that the information was not necessary for tax administration purposes, regardless of whether the IRS officials who requested the information knew or believed it was necessary for the § 501(c)(4) application.  Plaintiff Groups will be given the opportunity to establish with evidence that IRS officials inspected or disclosed the Plaintiff Groups' return information for improper purposes.  The Court anticipates that this will be a difficult burden for Plaintiff Groups to meet.  Additionally, Federal Defendants, likewise, will have the opportunity to establish with evidence that a statutory exception precludes liability under § 7431.  Federal Defendants can submit evidence that the inspections or disclosures were allowed for tax administration purposes pursuant to § 6103(h), that they acted on a good faith interpretation of § 6103 such that the § 7431(b)(1) exception applied, or that the inspections were requested by the Plaintiff Groups such that the § 7431(b)(2) exception applied.  Any determination on the merits of the claim or on the defenses is more appropriate at the summary judgment stage than at the pleadings stage.

Turning to the second subclaim, Plaintiff Texas Public Policy Foundation asserts that "[i]n or around the spring of 2012, the IRS illegally released TPPF's 990 form with the donor information un-redacted [and s]ubsequently, this highly confidential information was widely circulated in the media."  (Doc. 71 at 1031, 1046.)  Federal Defendants argue that Texas Public Policy Foundation has not alleged sufficient facts to state a claim that is plausible on its face.  *See Twombly*, 550 U.S. at 570 (explaining dismissal standard).  The Court disagrees.  Plaintiff did not need to plead detailed facts and its allegations are sufficient to meet the Rule 8(a) standard.

For these reasons, the Court will not dismiss Count Three of the Second Amended Class Action Complaint against Federal Defendants.

## IV.   Plaintiffs' Motion for Leave to Conduct Limited Discovery

Plaintiffs moved to conduct limited discovery on the issue of the Court's personal jurisdiction over Defendants Joseph Grant, Sarah Hall Ingram, Lois Lerner, Steven Miller, Holly Paz, Douglas Shulman, Carter Hull, and William Wilkins.  (Doc. 83 at PageID 1347.)  That discovery is unnecessary because the Court will dismiss Count Two insofar as it is stated against Individual Defendants.  Accordingly, the Court will deny the discovery motion as moot.

## V.   CONCLUSION

For the foregoing reasons, the Management Defendants' Motion to Dismiss the Second Amended Class Action Complaint (Doc. 77) is **GRANTED**, the Line-Level Employee Defendants' Motion to Dismiss Count 2 of the Second Amended Class Action Complaint (Doc. 78) is **GRANTED**, and the Motion to Dismiss Individual Defendant Carter Hull (Doc. 79) is **GRANTED**.  The Motion to Dismiss Claims against the Federal Defendants (Doc. 73) is **GRANTED IN PART AND DENIED IN PART**.  Count One against Federal Defendants is dismissed, but Counts Two and Three against the Federal Defendants are not dismissed.  Finally, Plaintiffs' Motion for Leave to Conduct Limited Discovery Related to Personal Jurisdiction (Doc. 83) is **DENIED AS MOOT**.

IT IS SO ORDERED.

S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court