1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF OHIO

3                    WESTERN DIVISION
                        - - -

4
   NORCAL TEA PARTY PATRIOTS,      : CIVIL NO. 1:13-CV-341
5    et al.,                       :
              Plaintiffs,      : Preliminary Pretrial
6      -vs-                  : Conference by Telephone
                            :
7    INTERNAL REVENUE SERVICE,      : Friday, September 5, 2014
   et al.,                       : 9:38 a.m.
8              Defendants.      : Cincinnati, Ohio
                        - - -
9                TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE SUSAN J. DLOTT, CHIEF JUDGE
10                      - - -

11    For the Plaintiffs:   Edward D. Greim, Esq.
                     Todd P. Graves, Esq.
12                      Dane Martin, Esq.
                     Graves Garrett, LLC
13                      1100 Main Street, Suite 2700
                     Kansas City, Missouri  64105
14
                     David R. Langdon, Esq.
15                      Langdon Law, LLC
                     8913 Cincinnati-Dayton Road
16                      West Chester, Ohio  45069

17                      Christopher R. Finney, Esq.
                     Finney Law Firm, LLC
18                      4270 Ivy Pointe Boulevard, Suite 225
                     Cincinnati, Ohio  45245
19
                     Bill Randles, Esq.
20                      Bill & Bev Randles Law Group, LLP
                     5823 N. Cypress Avenue
21                      Kansas City, Missouri  64119

22    For the Defendants Internal Revenue Service and Department of
   the Treasury:
23                      Grover Hartt, III, Esq.
                     U.S. Department of Justice
24                      Tax Division
                     717 North Harwood, Suite 400
25                      Dallas, Texas  75201

               Proceedings recorded in stenotype.
       Transcript produced using computer-aided transcription.

```
 1                        Joseph A. Sergi, Esq.
                          Laura C. Beckerman, Esq.
 2                        Laura M. Conner, Esq.
                          U.S. Department of Justice
 3                        Tax Division
                          555 Fourth Street, NW
 4                        Washington, D.C. 20001

 5                        Matthew Joseph Horwitz, Esq.
                          Assistant United States Attorney
 6                        221 East Fourth Street, Suite 400
                          Cincinnati, Ohio  45202
 7

 8

 9

10   Courtroom Deputy:    William Miller

11
     Court Reporter:      Julie A. Wolfer, RDR, CRR
12
                                  - - -
13

14

15

16

17

18

19

20

21

22

23

24

25
```

Proceedings recorded in stenotype.
Transcript produced using computer-aided transcription.

<u>PROCEEDINGS</u>

1

2          (9:38 a.m.)

3          COURTROOM DEPUTY:  All right.  Counsel, we're here for

4     a conference call today in Case Number 1:13CV341, <u>NorCal Tea</u>

5     <u>Party versus the Internal Revenue Service</u>.

6          And on the phone representing the plaintiffs, I

7     believe I have David Langdon, Bill Randles, Chris Finney,

8     Edward Greim, Dane Martin, and Todd Graves.

9          Is there anybody else on the phone that I missed

10    representing the plaintiffs?

11         All right.  Thank you.

12         And on the phone representing the defendants, I

13    believe I have Grover Hartt, Joseph Sergi, Laura Beckerman,

14    Laura Conner, and Matthew Horwitz.

15         Is there anybody else on the call that I have missed?

16         Okay.  Thank you.

17         Here in chambers, we have Chief Judge Dlott.  Julie

18    Wolfer is the court reporter.

19         And if you could please identify yourselves before you

20    speak.  Thank you.

21         THE COURT:  Good morning, counsel.

22         Mr. Horwitz, we have to stop meeting like this.

23         MR. HORWITZ:  You're going to get tired of seeing me,

24    Your Honor.

25         THE COURT:  I just spent two-and-a-half hours with

1   Mr. Horwitz yesterday morning on the final pretrial for a

2   four-month qui tam trial.

3        All right.  So we have another fun case today.  And I

4   think we need to set a schedule.  Have counsel conferred on

5   this at all?

6        MR. GREIM:  Your Honor, this is Eddie Greim for the

7   plaintiffs, and we have conferred.  We've submitted a

8   relatively thick amended joint discovery plan, but we are not

9   in agreement on some points.

10       THE COURT:  All right.  I've got your plan here.  Why

11   don't we go through what -- where the disagreements are.

12       MR. GREIM:  Sure.  And, Your Honor, I think the

13   quickest way is just to march through just to -- just to march

14   through number by number.

15       THE COURT:  Okay.  That's fine.

16       MR. GREIM:  So, number one, we didn't agree to

17   magistrate.

18       THE COURT:  Are you sure?  Would you like to

19   reconsider that?

20       MR. GREIM:  I didn't say that.  I didn't want to open

21   the door.

22       THE COURT:  All right.

23       MR. GREIM:  Number two, we have already exchanged

24   initial disclosures, so that is done.

25       Number three is where it kind of gets interesting.

 1          The main issue here, Your Honor, is, you know, I don't

 2   think we -- we somewhat dispute possibly the scope that -- the

 3   what of discovery, but the main issue right now is whether

 4   there should be bifurcated discovery.  And in this case, the

 5   bifurcation would relate to, you know, class certification

 6   discovery versus merits discovery.  And so that's kind of

 7   that -- frankly, that's the main issue on number three.

 8          The parties have basically agreed on things like

 9   whenever the expert report is due, how much time somebody else

10   has and things like that.  But the issue of class certification

11   is the big issue.  And so the plaintiffs, you know, we want to

12   do -- we want to move for certification as soon as we can.  The

13   problem is that, you know, there's some tricky issues that

14   we'll have to resolve.  There's going to be, just based on how

15   things have gone over the last year, we expect it may be hard

16   getting some discovery and so, you know, and also the

17   government has said that it's got to redact things and there

18   are issues with producing documents.

19          So the government would like to have us file -- or to

20   have bifurcated discovery and class discovery close by December

21   12th of this year which is just three months or so from today.

22   What we would like to do is not have bifurcation.  We think

23   that the distinction between class and merits discovery in this

24   case, given the claims that are still here, that that

25   distinction just doesn't make sense.  We would instead have the

1    Court fix a deadline for us to file our motion by and sort of

2    put the burden on the plaintiffs, frankly, of being smart about

3    the discovery that they seek and, you know, sort of make us

4    pick the things that we know we can get and that we know will

5    support that motion rather than, you know, sort of creating

6    this secondary issue so that every time we ask for something,

7    there is a debate about whether it is properly class or

8    properly merits discovery.

9           So I know the government will want to have its own

10   comments on that, but that's the big issue is when is the

11   deadline.  So we proposed a back-end deadline of August of 2015

12   by which we have to file our motion.  Our plan and our hope is

13   not to wait that long, but we also don't want to set an early

14   date, get tied up with discovery fights, and then have to come

15   back to you and present motion practice on this to the Court.

16   So that's our proposal.

17           THE COURT:  Okay.

18           MR. GREIM:  Based on that, Your Honor, we would then

19   just build an overall discovery cut-off.  Discovery will change

20   a little bit depending on whether the class is certified or not

21   but -- we think inasmuch as the government says, but that

22   basically is part three.

23           Point four, limitations on discovery.  We have a

24   little change from our very initial discovery report from a

25   year ago that the -- we had asked for extra -- we had asked for

1    instead of 10 depositions, 40 depositions, and we had asked for

2    35 interrogatories instead of 25.  The government was in

3    agreement before, but now the government wants to limit us to

4    the rules; and the basis for that, the government says, is that

5    much, you know, that the <u>Bivens</u> part of Count Two is gone and

6    the associational standing is not there for the Privacy Act, so

7    therefore, we're back down to the regular numbers.  And we can

8    talk more about that, but that's the basic issue.

9         THE COURT:  And tell me, say that again.  You wanted

10   40 depos and how many interrogatories?

11        MR. GREIM:  35 instead of 25.

12        THE COURT:  Okay.

13        MR. GREIM:  And then finally, I think we agree that

14   there will be a protective order submitted to the Court.  I

15   mean, we -- I'm sure we agree.  We haven't negotiated one yet,

16   but in a case like this, it seems to make -- it seems necessary

17   to have that because there will be some issues we'll talk about

18   in a little bit about Section 6103, which is actually the basis

19   of one of our claims, but it's also something to be aware of in

20   discovery.  And so a protective order doesn't just make 6103 go

21   away, but it does a lot in a case like this to make sure that

22   we don't have unwilling participants or folks who maybe don't

23   realize they're part of a class suddenly having stories about

24   them appearing somewhere because information was exchanged in

25   this case and, you know, was accessible on the docket or

1    something like that.  So we think a protective order makes a

2    lot of sense, and we just need to submit one to the Court.  And

3    maybe one result of our call would be a deadline for doing

4    that.

5              THE COURT:  Okay.

6              MR. GREIM:  And, Your Honor, that's basically it.

7    That is kind of a high-level review and I tried not to argue

8    anything too much, but that's where we are.

9              THE COURT:  Okay.  That was a great summary,

10   Mr. Greim.  Thank you very much.

11             Who wants to speak on behalf of the United States?

12             MR. HARTT:  Your Honor, this is Grover Hartt.  I have

13   been kind of carrying the ball in this case, but as the Court

14   may recall from our last conference, because I have a trial

15   coming up in two weeks now, my colleague Mr. Sergi has been

16   taking the laboring oar in working out things of discovery, and

17   so I would defer to him in just a second.

18             I will say again I think there will be an enormous

19   dispute on the scope of discovery that permeates a lot of what

20   we have to talk about today.  And as the Court can see and may

21   recall from our oral argument back on June the 30th, from our

22   perspective, discovery is what this case has always been about,

23   and the desire of the plaintiffs to go what we think is far

24   beyond what's appropriate for this case, particularly now in

25   its reduced state, is an issue that I'm afraid the Court's only

1   going to have to resolve because I think we're at loggerheads.

2   And with that, I'll turn it over to Mr. Sergi.

3          THE COURT:  All right.  Mr. Sergi.

4          MR. SERGI:  Good morning, Your Honor.  This is Joe

5   Sergi.

6          THE COURT:  Good morning.

7          MR. SERGI:  The only disagreement I have with

8   Mr. Hartt is that there actually were straws involved, and I

9   received the short one.

10          So obviously the government, as we say in our papers,

11   disagree with the class the way discovery should go.  We

12   believe class discovery should be bifurcated from fact

13   discovery, and the reason for that is because this is a very

14   different kind of animal because it's a tax case.  And I

15   actually rooted around our division here and I checked, you

16   know, my records, and I'm actually unaware of other tax class

17   actions.  And the big problem with a tax class action is

18   Section 6103 of the Internal Revenue Code which prevents the

19   Service and subjects them to criminal liability for disclosing

20   tax return information of third parties.

21          Now, there are exceptions to 6103, like, for example,

22   (h)(2) allows the Service to give things to the Department of

23   Justice and (h)(4) allows us to give stuff to the Court if it's

24   pertinent to the case under various exceptions.  There are also

25   exceptions, for example, final determinations, once it can be

1    released, if taxpayer information is stripped out under Section

2    6110, and then full applications completely unredacted can be

3    released under Section 6104.  So I believe Mr. Greim mentioned

4    that in his part.  In our part, we point out that given that

5    Count Two is limited only to pending actions, neither 6110 nor

6    6104 exceptions would apply.

7          So our concern, and we've already received discovery

8    from opposing counsel on this, is that without a determination

9    of a class or in our mind a determination that there can't be a

10   class, but I know I'm putting the cart before the horse, it's

11   very -- it would be next to impossible for us to properly

12   answer discovery because of the limitation of 6104; and due to

13   the nature of that, the discovery ends up being incredibly

14   complicated and overbroad.

15         As you can see, what we put in there is the chart that

16   they sent us with all these things, and that's, I think, their

17   attempt to get around 6103 when in fact, if we were to go

18   through class discovery for three months, motions for

19   certification a short time after that, then that could

20   alleviate the entire problem with class certification and the

21   6103 issues.

22         We also think, and I'm also way ahead, that if a class

23   is eventually certified, it can be an open-ended class.  We

24   think people would have to actually opt into the class because

25   they would need to obtain 6103 waivers.

1      Mr. Greim alluded to the fact that a protective order

2  provides some protection for 6103.  We will be willing to enter

3  a protective order, but we were going to do that for his

4  benefit because that really -- a protective order provides

5  absolutely no protection under 6103 because you can't find your

6  way around it.  Just like, for example, we have this issue in a

7  lot of our cases, the clawback under 501 also doesn't apply to

8  6103.  So we're often in positions in large document cases

9  where Courts are not happy with us because we won't agree to a

10 clawback for our documents because we just can't because it's

11 on me if I miss a document under 6103.  Then I'm subject to the

12 sanctions of the criminal liability.  So the Service has it and

13 then I have an added duty to make sure that nothing goes out.

14      Related to that is another discovery request issue

15 from opposing counsel where they've asked for all documents

16 produced to Congress redacted.  So right now at last check

17 there is over 800,000 pages of those documents, which would

18 mean that I would have to review every one of them to make sure

19 those redactions are correct.  So if we had narrowed the class,

20 then perhaps, you know, as we were made a determination, if

21 there is the determination that there is no class, then we're

22 limited to the ten plaintiffs for the 6103 count, inspection

23 and disclosure count, and we're limited to one plaintiff for

24 Count Two which would greatly limit the case.

25      Where we ended up on this is we believe that there's

1    enough -- we hope, we don't believe.  We hope there is enough

2    information in what we filed because this is actually the

3    longest 26(f) report I've ever filed.  But if the Court needs

4    more information, what we found in researching the issue of

5    bifurcation is it's usually done by motion, and we would be

6    happy to brief it.

7            THE COURT:  Okay.

8            MR. SERGI:  Thank you, Your Honor.

9            THE COURT:  Which I think will be necessary.  Thank

10   you for suggesting that.

11           Mr. Greim?

12           MR. GREIM:  Your Honor, we -- you know, I'm afraid

13   we're getting lost in the tangle of 6103 here because, you

14   know, first of all, this issue of bifurcation, that somehow

15   pre-bifurcation or pre-class certification we're going to have

16   this massive amount of documents and then after the class

17   certification, you know, whether it's yes or no.  If it's no,

18   we're going to only have a few people waiting around here and

19   who are still waiting or who are subject to 6103 information

20   disclosure that we'll be able to do, like, a word search for

21   their names in the documents and then just produce a few

22   hundred documents where they're mentioned and then that's

23   discovery.

24           The problem, Your Honor, is that discovery in this

25   case is going to have to be about the sort of process that the

1    IRS used here.  It's going to have to be about, you know, how

2    they hatched the plan, who carried it out, and who looked at

3    documents as a result of that.  And so there is a big chunk of

4    documents like the documents that the IRS is producing to

5    Congress that have been redacted already for 6103, like the

6    documents that they're producing in the Judicial Watch case

7    which have been redacted for 6103, that aren't specific to any

8    one plaintiff.  And so what we're concerned about is that

9    discovery turns into this procedural quagmire where we go

10   motion by motion by motion over a period of years and only

11   slowly get the documents, you know, out of the government.  And

12   that's what I'm afraid we're headed to.

13        Now, let me move beyond this question of bifurcation

14   because I think there's something wrong here also with 6103 and

15   the way this has been presented.  First of all, groups that

16   consent to disclosure, Your Honor, the Service can disclose

17   documents with their return information to us.  And so there

18   will be groups who do that, number one.

19        THE COURT:  Okay.

20        MR. GREIM:  Number two, there ought to be a way for us

21   to have a Court-ordered contact with the class and obtain that

22   or obtain some sort of an opt-out for people who don't want to

23   see the documents.  I mean, that's one other idea.  That's

24   another way to avoid this very slow, staggered discovery.

25        A third point, Your Honor, is that, you know, there's

1   a lot of documents that are not subject to 6103.  Mr. Sergi

2   mentioned two of the statutes that are essentially carve-outs,

3   6104, 6110.

4          And finally, there's the question of redaction.  We

5   think that can be done.  But we believe actually that the

6   redactions should be done in such a way that we can then go

7   back and say, okay, this clump of documents was about some

8   discernible, you know, call them person Y that, you know, group

9   Y, that looks like they fall into the class.

10         And so let me kind of try to paint a picture, Your

11  Honor, of how this would all fit together.  I found it very

12  interesting to hear the government point to this chart in our

13  discovery like it's some sort of confusing logic puzzle or

14  something that can't be figured out.  They say, well, that's

15  just the kind of merits discovery we want to avoid.  But I

16  think, Your Honor, just by making that argument, what they're

17  doing is they're showing how they're going to continue to raise

18  this fight about class or merits all the way through and

19  prolong things.

20         And here's what I mean by that:  That chart simply

21  takes four logical categories of plaintiffs, ones who you know

22  were granted, ones who were denied, people that gave up and

23  went through, and people who are still waiting.  Everyone fits

24  into one of those four categories.  And then for each category,

25  we're just asking for a number that meets one of the criteria

1    that's pled in our pleadings.  And so we've got about five

2    criteria, and then at the bottom we have some cross-references

3    so we can see how many different boxes each person fit into.

4          Now, that is exactly the kind of discovery you do, as

5    you might know, Your Honor, when you are trying to figure out

6    the outlines of a class.  Yet the government seized upon the

7    fact that there is a chart with numbers in it and says, oh,

8    it's merits discovery.  What I'm worried about is if we

9    bifurcate, Your Honor, we're going to do this over and over and

10   over again and, unfortunately, we're going to have to keep

11   having calls and keep coming back to you, and pretty soon we're

12   going to be way past whatever initial upfront deadline has been

13   set.

14         And I don't -- look, I don't mean to -- and I don't

15   want to do this, I don't want to accuse the government of

16   anything, but that is, you know, having defended class actions,

17   that is sort of one of the things you do is you put in

18   deadlines and then you make it so that it's easy to run into

19   those and that discovery comes out very slowly, and I really

20   think the 6103 issue is being used to do that.  There's

21   workarounds.  There's things we can do here, and, you know, I

22   think we can have briefing on that.  I think that might be

23   helpful, Your Honor.  But I think the bifurcation issue is just

24   something we shouldn't get tangled up with because then it's

25   going to be another month or two months or whatever before we

1    really get going with discovery.

2            THE COURT:  Okay.  Mr. Sergi, anything else?

3            MR. SERGI:  Your Honor, the only thing I will say is

4    actually a lot of what Mr. Greim said I thought actually

5    supported our position why we need bifurcated discovery is

6    we're going to have lots and lots of fights over 6103.  And he

7    pointed out the fact that there is the ability to obtain

8    waivers.  Well, if you have a class of an unidentified amount

9    of people and you don't know who they are, then it's impossible

10   for you to get the waivers.  We can't tell him who is in the

11   class.

12           And he suggested, you know, the Court ordering, I

13   forgot, a closed order or having, you know, group A or taxpayer

14   B.  There's actually Supreme Court law on that that says you

15   actually can't do that.  Also, you can't redact out -- if a

16   document is in a taxpayer's file, it doesn't -- it can't come

17   out of that file.  The classic example we do when we train our

18   new attorneys here is we tell them an agent is reading The Wall

19   Street Journal and they see their audit person in The Wall

20   Street Journal and they put The Wall Street Journal in the

21   file, well, that entire page of The Wall Street Journal is

22   subject to 6103 protection for that taxpayer even though it's a

23   public document.  But if the Department of Justice were to find

24   that article without looking at the file, then we could produce

25   it.

1              So the quagmire is 6103.  And that's what we're trying

2       to avoid because it is such a restrictive and complicated

3       provision, and it's probably why there are few, if none, tax

4       class action lawsuits.

5              In addition, the <u>Judicial Watch</u> case is a FOIA case,

6       Your Honor.  They're seeking documents that were produced to

7       Congress.  Now, they've gotten a waiver for the production fee,

8       but normally when you make a FOIA request of that breadth,

9       you're paying a per page rate for all the documents.  And I

10      think if anyone sees anything in the media, we can all agree

11      that the hearings going on on the Hill are way beyond the

12      report or any of the issues in this case.  I mean, the last I

13      heard, they were talking about Lois Lerner's personal e-mail

14      which would have absolutely no part in this case.  So that's

15      our concern, Your Honor.

16             So with that, I'll yield.

17             MR. GREIM:  Your Honor, this is Mr. Greim.  If I could

18      respond just to one thing.

19             THE COURT:  Sure.  Go ahead.

20             MR. GREIM:  We just very strongly disagree with I

21      guess Mr. Sergi's view of the law on this about the Supreme

22      Court case and -- okay, I said one thing.

23             The second thing, I guess, is, you know, we believe

24      things like Miss Lerner's personal e-mail, there's no reason

25      why that is not a part of this case.  I mean, that is directly

1  relevant to 6103.  And so I guess sometimes we're just a little

2  confused about the government's view of the case and what this

3  really is.  But, you know, if the personal e-mail is being used

4  to forward things around, and I thought there was one

5  indication of that, that's very relevant and that's why we've

6  been discussing, the parties at least, her BlackBerry and

7  what's been done to preserve those materials.

8          I mean, look, there are just some issues here and

9  they're not going to go away by bifurcating the case or by just

10 running the 6103 and just trying to avoid big chunks of

11 discovery.

12         THE COURT:  Okay.  Mr. Sergi, anything else?

13         MR. SERGI:  I was not referring to Miss Lerner's

14 e-mails being used for official purposes.  I was referring to

15 the e-mails sent to her husband and the fact that they had

16 asked for every e-mail that she had ever sent during the time

17 period from her personal account.

18         I will also just once again say we are not hiding

19 behind 6103 here.  6103 is driving this entire case, as it does

20 every one of our cases.  This isn't us for the first time.

21         I almost found it amusing because in the initial

22 Judicial Watch case, there was a reporter that said a very

23 rarely used section called 6103 is used to prevent handing over

24 these documents, and everyone in our office laughed at that

25 because 61 -- we wake up in the morning, and 6103 is the first

1    thing we think about when we come to work, and it is the last

2    thing we think about when we leave to make sure we didn't leave

3    anything out.  It is foremost on our minds.  It is an

4    incredible complication.

5         We believe by either identifying the specific people

6    who are the plaintiffs here or if there is a class, that

7    specific people who would be people that would be in that class

8    is the easiest way around that, and the only way to do that is

9    through certification.

10        MR. HARTT:  And, Your Honor, this is Grover Hartt.

11   I'll just point out Count Three, which is the big count that's

12   left standing after the Court's ruling, is they're suing us

13   under 6103.  I mean, that's it.  Sorry.

14        THE COURT:  Okay.  That's fine.

15        All right.  I'm going to take this under submission.

16   I'm going to have to think through this now that I've heard

17   your arguments.  And we will set up another call with the

18   parties very soon.  If there's anything further, I think I need

19   to make a decision.  I'll let you know or I'll give you my

20   decision.

21        In fact, Bill, let's come up with a date now --

22        COURTROOM DEPUTY:  Okay.

23        THE COURT:  -- so that we don't let this go too far.

24   And we got everyone on the phone right now, so we can make sure

25   it works with their schedules.

```
 1              MR. GREIM:  Your Honor, while we're doing that -- this

 2     is Mr. Greim -- I just wanted to raise one other issue not

 3     really on discovery but it might be relevant to the way the

 4     case goes.

 5              THE COURT:  Okay.

 6              MR. GREIM:  I can do it now or I can just -- or I can

 7     wait.

 8              THE COURT:  No, you go ahead.  That's fine.

 9              MR. GREIM:  There was some discussion in our last call

10     about the government filing sort of a defensive notice of

11     appeal in another case and may be doing so here.  And I know by

12     my calculation, they're using the 60-day period, I think that's

13     next week.  However, we noticed that in this other Z Street

14     case, they have tried to voluntarily dismiss their notice of

15     appeal as potentially being prematurely filed.  And I

16     wondered -- I have not heard from the defendants.  I wonder if

17     they would be able to say whether they are going to try to file

18     a notice of appeal in this case.

19              THE COURT:  That's a good question.

20              MR. SERGI:  Yes, Your Honor.  I actually had that.  I

21     have two issues to discuss at the end, and that was one of

22     them.

23              The other case is Z Street, as Your Honor knows, and

24     that's one of the cases that this Court relied on --

25              THE COURT:  Right.
```

1          MR. SERGI:  -- in -- "relied" is strongly used -- is

2     cited in its decision.

3          THE COURT:  No, I think you can say I relied on it.

4     That's fair.

5          MR. SERGI:  I use relied upon.  What happened was the

6     way our process works here is we can't appeal unless the

7     Solicitor General authorizes it.  And so when we were all

8     together the last time, the Solicitor General had not made its

9     determination on Z Street as to whether it would authorize

10    either a permissive appeal or an appeal as of right.  And --

11         THE COURT:  And the deadline is next week?

12         MR. SERGI:  Right.

13         In our case, what -- we were in a holding pattern

14    because if it was an appeal as of right, then we would have had

15    an appeal as of right as well.  And we, for consistency

16    purposes, we would have taken -- we would have had to take our

17    appeal.

18         What happened was the Solicitor General did not

19    authorize an appeal as of right but it did authorize them to

20    file a motion for interlocutory appeal which they cannot --

21    which cannot be -- go forward until it's dismissed the actual

22    appeal of right that was filed.  So they're waiting for that

23    dismissal before they move for interlocutory appeal.

24         I don't know if the Court's going to grant that

25    interlocutory appeal.  But on our side, we have now asked the

1    Service -- it's the same thing here for us.  We have to get the

2    views of the Service.  We have to write a memo.  The Solicitor

3    General has to approve it.  We have asked for and received

4    informal views from the Service.  We're waiting for their

5    formal views.  But it's going towards an interlocutory appeal,

6    and I believe the rule for interlocutory appeal is just timely,

7    right, yeah, reasonable time.

8            And really, the deciding factor for us, Your Honor, is

9    whether or not Z Street goes up because then we would have the

10   issue of, well, one is up and one's going forward, and so we

11   really haven't made that determination yet.  So basically my

12   answer is we're looking at it.  We have not made a

13   determination either way.

14           THE COURT:  Okay.  Anything else from you on that

15   issue, Mr. Greim?

16           MR. GREIM:  Well, Your Honor, I guess I just say we,

17   you know, we don't think that an interlocutory appeal can stand

18   here and we hope it does not delay this case moving forward,

19   but I'll say nothing more until we hear more.

20           THE COURT:  Okay.  All right.

21           Mr. Sergi, you said you had one other point you wanted

22   to bring up.

23           MR. SERGI:  Yes, Your Honor.

24           Your Honor, Mr. Greim alluded to it in the beginning,

25   and that is it could fall into this conference as maybe a need

1    to amend the complaint, and that is it was the government's

2    understanding and from all the arguments and from the complaint

3    and from the papers filed in this case that essentially the

4    6103 claim they filed, the disclosure claim, was -- and I'm

5    going to oversimplify it just for my purposes and I'm not meant

6    to cast it in a negative light or anything, I'm just going to

7    simplify it -- and that is the plaintiff was asked for

8    information that they did not believe was appropriate.  They

9    produced that information to the government who then looked at

10   it and then which was a wrongful inspection and then forwarded

11   it to their supervisors which was then a wrongful disclosure.

12   And then so what we did was we argued in essence that that

13   under the law is not wrongful inspection or wrongful

14   disclosure.  We filed our motion for summary judgment.  The

15   Court ruled and said it's a summary judgment issue the

16   government -- they're able to prove, hey, they didn't have to

17   produce this stuff, and we said -- or we did produce this

18   stuff, and we say, no, we had a right to look at it.

19        Now, in our conversations with Mr. Greim and

20   plaintiffs is we've discovered that they're -- I'm going to

21   call it a new position because it's a new position for us, is

22   any document whatsoever that was filed with the Service could

23   be subject to this inspection or wrongful disclosure, and the

24   example that we use when we were discussing this is Mr. Greim

25   mentioned, well, say they filed their form, which obviously

1    there's nothing wrong with the form.  They initiated that.  The

2    Service didn't ask for that.  And then that form is forwarded

3    to someone who shouldn't have seen it.  Well, our position on

4    that, Your Honor, is there are no allegations whatsoever that

5    that occurred, and all they are doing is fishing for the hopes

6    that that occurred.

7              So, for example, taking it out of this case, it would

8    be me filing a 1040 and then suing the Service for wrongful

9    disclosure to say that I think somebody looked at it that

10   shouldn't have.  Give me everybody that looked at it.  And then

11   that's also what we attached, another interrogatory from them,

12   to identify anyone at the Service who looked at anything

13   related to any of the applications of any possible person in

14   the class.  And we think that that's overbroad.  And we thought

15   it would be helpful to discuss what they're pointing to for

16   their support for that is the sentence in your opinion, and

17   they quote it, that says, well, it's -- you know, we have the

18   right to prove that whoever received the disclosure has the

19   right to see it.  And I thought it would be helpful for us to

20   discuss it in front of you since we do, even though we haven't

21   decided the class action issue, we actually have discovery

22   that's due in one -- I believe it's due two weeks -- a week

23   from Monday, and that's one of the things we have to worry

24   about.  And so rather than merely object and then bring it on

25   motions, I thought it might be good to discuss that up front.

1          THE COURT:  Okay.  Mr. Greim.

2          MR. GREIM:  Your Honor, unfortunately, I think we

3  disagree with pretty much the -- from the beginning to the end

4  of what Mr. Sergi said.  And I understand -- at some level I

5  understand where the government is coming from because of the

6  view they formed of this based on really their own argument on

7  the motion to dismiss.

8          The complaint controls here.  The amended complaint

9  controls, and, you know, the amended complaint is clear.  We

10  say this is paragraph 246 and 247 is the key here.  And we say

11  defendants inspected plaintiffs' information and shared it

12  amongst themselves even though they knew it was unnecessary for

13  making a decision on plaintiffs' tax-exempt status.

14          And so, Your Honor, there's really two different

15  things that can go wrong here.  One is that unnecessary

16  information is requested and then inspected, and that's what

17  all of our argument -- that's what the motion to dismiss

18  revolved around.  The reason that happened is that that was the

19  basis of the government's motion to dismiss.  So everybody was

20  arguing about that.

21          But the second part here is they can ask for stuff

22  that in the ordinary course is legitimate, that other (c)(4)

23  clients, people have sent in, and then, you know, three or four

24  months later they get their letter and off they go but it was

25  forwarded around and scrutinized and aggregated and used at the

1    IRS not for tax administration purposes, and that is detailed

2    elsewhere in our complaint.

3         Now, the motion to dismiss, Your Honor, focused on the

4    first issue because the government's argument, if you remember,

5    is that they tried to recast our claim as an improper request

6    claim.  So to respond to that, we had to say, well, wait a

7    second, it's not an improper request claim.  The issue is what

8    then happens to that information down the road.  And so I fully

9    understand this.  I mean, I think the government then began to,

10   starting with its own argument and our response, hone in on

11   that, and so we had this dispute going through in our Rule 26

12   conference.

13        But, look, we've struck -- we've been arguing about

14   this for, you know, over a year now.  We've had motions to

15   dismiss.  The Court has spoken in the pleading here.  It's time

16   to move on with discovery.  And we object to anything about

17   going back and amending the complaint again, adding in another

18   layer of motions or objections based on the government, you

19   know, not kind of seeing the second part of the 6103 theory.

20        THE COURT:  Okay.  Anything else on that issue,

21   Mr. Sergi?

22        MR. SERGI:  Only that I will tell Your Honor if that

23   was indeed the double meaning behind that paragraph because

24   we've used the word that was not necessary to be in context

25   with the remaining paragraphs that said information requested

1    that was not necessary, then there are no facts pled

2    specifically in the complaint to support that allegation and

3    which is why we didn't address it in our motion because we

4    assumed we did a plain reading, and we would ask the right to

5    file a motion to dismiss for that specific claim because right

6    now where we are is in a fishing expedition, Your Honor, and

7    that's not what these cases are for.  This case is big enough

8    without that.

9           MR. GREIM:  Your Honor, this is Mr. Greim.  And there

10    are plenty of facts pled about that, about Carter Hull reading

11    it, about Judith Kindell viewing the information, about it

12    having to be approved by Mr. Wilkins' office at chief counsel's

13    office.  There are plenty of facts about that.  And we strongly

14    object to another round of motion to dismiss briefing.

15           We just -- we understand the government focused on the

16    first part of it and they chose that argument for whatever

17    reason on their motion to dismiss.  We think it's wholly

18    inappropriate to go back and now find different issues with it

19    and bring another motion to dismiss.  We think it is time for

20    discovery.

21           THE COURT:  I would agree with that.  I'm certainly

22    not going to go through another round of motions to dismiss.

23           All right.  Is there anything else that counsel want

24    to bring to the Court's attention right now?

25           All right.  Let's schedule, then, another conference.

1            COURTROOM DEPUTY:  How far out?

2            THE COURT:  Let's see, a couple weeks maybe because

3  I'm going out of town next week.

4            COURTROOM DEPUTY:  End of September maybe, last week?

5            THE COURT:  I think it could be -- let's see.  Today

6  is the 5th.  The week of the 22nd?

7            COURTROOM DEPUTY:  Okay.

8            THE COURT:  Except I'm out one day there.  I'm out on

9  Thursday.

10           COURTROOM DEPUTY:  What about how about the afternoon

11  of September 23rd around 3:30?

12           MR. GREIM:  Your Honor, that works for the plaintiffs.

13           THE COURT:  Okay.

14           MR. SERGI:  Your Honor, that works for me and the

15  government.

16           THE COURT:  Great.

17           MR. HARTT:  To be clear, Your Honor, this is Grover

18  Hartt.  My trial begins on the 22nd and so I will not be able

19  to attend the hearing, but Mr. Sergi can certainly carry the

20  ball for us.

21           THE COURT:  Oh, I appreciate the fact you're in trial.

22  Where are you in trial?

23           MR. HARTT:  I'm in Dallas.  I can sleep in my own bed.

24           THE COURT:  Oh, good.  How long is it supposed to

25  last?

1          MR. HARTT:  We're hoping two weeks, you know.

2          THE COURT:  Oh, boy.  After the one Mr. Horwitz and I

3   sat through yesterday, that's nothing.

4          MR. HARTT:  The Court we have here wanted two weeks of

5   it.

6          THE COURT:  Okay.  I will get back with you all on the

7   23rd.  Thank you very much for all the preparation you did for

8   this.  I appreciate it.

9          Anything else?

10         MR. GREIM:  Thank you, Your Honor.

11         MR. SERGI:  Thank you, Your Honor.

12         MR. HARTT:  Thank you, Your Honor.

13      (Proceedings concluded at 10:18 a.m.)

14                        - - -

15

16                  C E R T I F I C A T E

17      I, Julie A. Wolfer, the undersigned, do hereby

18   certify that the foregoing is a correct transcript from the

19   record of the proceedings in the above-entitled matter.

20                          s/Julie A. Wolfer
                            Julie A. Wolfer, RDR, CRR
21                          Official Reporter

22

23

24

25