IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| NorCal Tea Party Patriots, et al., | : | |
| | : | Case No. 1:13-cv-341 |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **REDACTED** |
| Internal Revenue Service, et al, | : | Order Granting Plaintiffs' Motion for |
| | : | Class Certification |
| Defendants. | : | |

This matter is before the Court on Plaintiffs' Motion for Class Certification (Docs. 193/194).[1]  For the reasons that follow, the Court will **GRANT** Plaintiffs' Motion and certify both a Principal Class and an Unnecessary Requests Subclass as set forth below.

## I.      BACKGROUND

### A.      Factual Background

This lawsuit has been filed by Plaintiffs NorCal Tea Party Patriots ("NorCal"), South Dakota Citizens for Liberty, Inc. ("SD Citizens"), Texas Patriots Tea Party ("Texas Patriots TP"), Americans against Oppressive Laws, Inc. ("AAOL"), San Angelo Tea Party ("San Angelo TP"), and the Texas Public Policy Foundation ("TPPF").[2]  Plaintiffs are organizations "comprised of individual citizens who have joined together to exercise their rights to freedom of speech and expression" and who share a philosophy of "dissent from the policies or ideology of the Executive Branch of the United States Government under its current Administration."  (Doc.

---

[1] The Motion for Class Certification is filed in redacted form at Doc. 193.  It is unredacted, but sealed, at Doc. 194.

[2] Simi Valley Moorpark Tea Party, Prescott Tea Party, Tampa 912 Project, and Faith and Freedom Coalition of Ohio also were named Plaintiffs when this litigation began.  However, on July 7, 2015, the parties filed a Stipulation agreeing to dismiss those four groups as named Plaintiffs in this action.  (Doc. 184.)

71 at PageID 981.)  Plaintiffs refer to themselves, and the members of the class which they seek to represent, as "dissenting groups."

Beginning in 2010, Plaintiffs applied to the IRS for exemption from federal taxation pursuant to the Internal Revenue Code, 26 U.S.C. §§ 501(c)(3) and/or 501(c)(4).  Plaintiffs allege that the IRS targeted them and other dissenting groups by segregating their tax-exemption applications because their names included terms such as "Tea Party," "Patriots," or "9/12 Project" or because their focus included issues such as government spending.  Plaintiffs allege that the IRS subjected the applications from these dissenting groups to delays and increased scrutiny.  They further allege, with respect to a certain subset of dissenting groups, that the IRS requested and then inspected information not relevant to the tax-exemption application process.

The allegations that underlie this federal case also were the subject of investigations by the Treasury Inspector General for Tax Administration ("TIGTA"), the Senate Finance Committee, and the Senate Permanent Subcommittee on Investigations for the Committee on Homeland Security and Governmental Affairs ("Senate PSI").  TIGTA issued its initial report on May 14, 2013 and a supplemental report on March 27, 2015.  (Docs. 71-1, 197-6.)  The Senate Finance Committee issued its report on August 5, 2015.  (Doc. 197-5.)  The Senate PSI issued its report on September 5, 2014.  (Doc. 197-3.)

**B.     Procedural Posture**

Plaintiffs initiated this suit on May 20, 2013 and filed their Second Amended Class Action Complaint on January 23, 2014.  (Docs. 1, 71.)  Plaintiffs sued four sets of defendants: the Government, consisting of the United States of America, the Internal Revenue Service ("IRS"), and IRS employees sued in their official capacities; Management Defendants of the IRS sued in their individual capacity; Line-Level Employees of the IRS sued in their individual

capacities; and Carter Hull, an IRS attorney sued in his individual capacity.  The Management Defendants, the Line-Level Employee Defendants, and Hull are collectively referred to as the Individual Defendants.  Plaintiffs asserted three causes of action in the Second Amended Complaint:

> (Count 1) Violation of the Privacy Act, 5 U.S.C. § 552;
>
> (Count 2) Violations of the First and Fifth Amendments to the United States Constitution; and
>
> (Count 3) Violation of 26 U.S.C. § 6103, a statute which protects the confidentiality of tax return information.

(Doc. 71 at PageID 1032–46.)

Defendants moved to dismiss all three claims.  (Docs. 73, 77, 78, and 79.)  In its July 17, 2014 Order, the Court dismissed all claims against the Individual Defendants and dismissed Count 1 against the Government.  (Doc. 102 at PageID 1678.)  Counts 2 and 3 against the Government remain.

The parties then proceeded with discovery on class certification, which was bifurcated from merits discovery.  Background facts and evidence developed during the course of discovery are discussed in the Analysis section below where relevant.

Plaintiffs NorCal, SD Citizens, AAOL, Texas Patriots TP, and San Angelo TP now seek to certify a Principal Class and an Unnecessary Requests Subclass as defined below as to Count 3 only.  (Doc. 193-1 at PageID 4681.)  Plaintiff TPPF will not be a class representative or a member of a class if class certification is granted.  (*Id.*; Doc. 198 at PageID 7457.)  The parties have briefed this matter and it is ripe for adjudication, but some discovery possibly relevant to class certification is outstanding.[3]  The Court has given the parties leave to file supplemental

---

[3]  On July 22, 2015, the Government filed a Petition for Writ of Mandamus in the Sixth Circuit Court of Appeals asking the appellate court to vacate this Court's discovery orders dated April 1, 2015 and June 16, 2015.  (Doc. 189 at PageID 4595–4625.)  That Petition remains pending.

briefs, if warranted, after obtaining the discovery and will reconsider its class certification

decision if necessary.

## II.    PROPOSED CLASSES DEFINED

### A.    Principal Class

Plaintiffs define the proposed Principal Class as follows:

All entities that, at any time from February 1, 2010 to June 30, 2013, filed an Application for Recognition of Tax Exemption with the IRS under 26 U.S.C. §§ 501(c)(3) or 501(c)(4) and had their application flagged by the IRS as an "Advocacy" case using the criteria:

> (a)    A reference in the case file to "Tea Party," "Patriots," or "9/12 Project";
> (b)    A reference in the case file to government spending, government debt, or taxes;
> (c)    A reference in the case file to education of the public by advocacy or lobbying to "make America a better place to live"; or
> (d)    A statement in the case file criticizing how the country is being run.

Excluded from the Principal Class are any entities that properly execute and file a request for exclusion from the Principal Class.

(Doc. 193 at PageID 4668–69; Doc. 200 at PageID 7668 n.7.)  The four criteria used to define

the Principal Class will be referred to in this Order as the "Targeting Criteria."

### B.    Unnecessary Requests Subclass[4]

Plaintiffs define the proposed Unnecessary Requests Subclass as follows:

All entities included in the Principal Class that, at any time from January 1, 2010 to June 31, 2013, provided information in response to one or more of the following requests for information by the IRS:

> (a)    The names of any donors;
> (b)    A list of all issues that are important to the entity and an indication of its position regarding such issues;

---

[4]  Plaintiffs call this subclass the Unnecessary Questions Subclass, but the Court will refer to it as the Unnecessary Requests Subclass.

    (c)    Information about the roles of non-member participants in activities by the entity and the types of conversations and discussions had by members and participants during the activity;

    (d)    Whether any officer, director, or member of the entity has run or will run for public office;

    (e)    The political affiliation of any officer, director, member, speaker, or candidates supported or other questions regarding any relationship with identified political parties;

    (f)    Information regarding the employment of any officer, director, or members other than by the entity, including but not limited to the number of hours worked; or

    (g)    Information regarding the activities of other entities beyond solely the relationship between the applicant and such other entities.

Excluded from the Unnecessary Requests Subclass are any entities that properly execute and file a request for exclusion from the Unnecessary Requests Subclass.

(Doc. 193 at PageID 4669.)  Plaintiff NorCal is the only named class representative for the proposed Unnecessary Requests Subclass.  The so-called "Unnecessary Requests" listed above were identified by the IRS as having been unnecessary for a determination of the applicants' tax exemption status.  (Doc. 71-1 at PageID 1080; Doc. 193-51 at PageID 5347–48; Doc. 193-4 at PageID 4859.)

## III.   CAUSE OF ACTION EXPLAINED

Plaintiffs seek to certify a class and subclass for the claim asserting a violation of 26 U.S.C. § 6103.  Section 6013 requires that tax "returns and return information shall be confidential."  26 U.S.C. § 6103(a).  Taxpayers can assert a private cause of action against the Government for violations of § 6103 pursuant to 26 U.S.C. § 7431.  "If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States."  26 U.S.C. § 7431(a)(1).  The documents the IRS "receives or creates during the initial investigation of an

organization seeking tax-exempt status constitute[s] 'return information' within the meaning of § 6103." *Lehrfeld v. Richardson*, 132 F.3d 1463, 1467 (D.C. Cir. 1998).  To prevail on a § 7431 claim, a plaintiff must prove that "(1) the disclosure [or inspection] was unauthorized, (2) the disclosure [or inspection] was made 'knowingly or by reason of negligence', and (3) the disclosure [or inspection] was a violation of section 6103."  *McIntosh v. U.S.*, 82 Am. Fed. Tax Report 2d 98-6501, 1998 WL 762344 (S.D. Ohio Aug. 17, 1998).

Sections 6103 and 7431 contain statutory exceptions.  Relevant to this case, § 6103 permits "inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes."  26 U.S.C. § 6103(h)(1).  Tax administration is broadly defined to mean "the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party" and includes "assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions."  26 U.C.S. § 6103(b)(4).  Additionally, no liability for a violation of § 6103 arises under § 7431 for any inspection or disclosure which results from "a good faith, but erroneous, interpretation of section 6103," or is "requested by the taxpayer."  26 U.S.C. § 7431(b).

## IV.    CLASS CERTIFICATION STANDARDS

A class action permits one or more members of a class to sue as representative parties on behalf of all class members.  Fed. R. Civ. P. 23.  It operates as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, — U.S. —, 133 S. Ct. 1426, 1432 (2013) (internal quotation and citation omitted).  As a preliminary matter, "the class definition must be sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)).

Additionally, a district court may certify a class only if all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are satisfied.

Rule 23(a) provides that putative class plaintiffs must prove each of the following:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Pursuant to Rule 23(b), the putative class plaintiffs must establish either that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole" or that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(2)&(3).

A district court must undertake a "rigorous analysis" to determine if the prerequisites of Rule 23 have been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). The plaintiffs have the burden of proving that the class certification prerequisites are met. *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 851 (6th Cir. 2013); *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). They must "affirmatively demonstrate [their] compliance with the Rule—that is, [they] must be

prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551 (emphasis in the original).  The plaintiffs also are required to establish that they possess the same interests and have suffered the same injury as the class members they seek to represent.  *Id.* at 2550; *Jungkunz v. Schaeffer's Inv. Research, Inc.*, No. 1:11-CV-00691, 2014 WL 1302553, at *13 (S.D. Ohio Mar. 31, 2014).

A district court may delve into the merits of the plaintiffs' claims during the class certification stage only to a limited extent:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*In re Whirlpool*, 722 F.3d at 851 (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, — U.S. —, 133 S. Ct. 1184, 1194–95 (2013)).  A district court is not to treat class certification proceedings as a "dress rehearsal for the trial on the merits."  *Id.* at 851–52.

## V.    ANALYSIS

### A.    Class Definition/Ascertainability

The first issue is whether the proposed class and subclass are ascertainable such that the Court and the parties readily can determine whether organizations qualify as class members.  A class cannot be defined in a way that it is ascertainable only after the claim is resolved on the merits.  *Young*, 693 F.3d at 538.  "[T]he court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."  *Id.* (quoting *Moore's Fed. Pract.* § 23.21[3]).  The need to manually review individual files to determine class membership is not a reason to reject class certification.  *Id.* at 539–40.

Plaintiffs assert that the Principal Class and the Unnecessary Requests Subclass are ascertainable.  Membership in the Principal Class can be determined for some organizations

simply by reference to the applicants' IRS case files.  The screening checksheets for NorCal, Simi Valley Moorpark Tea Party, and Texas Patriots TP state on their faces that the applications were flagged as "Tea Party" or "TP" cases.  (Doc. 194-28 at PageID 6452, 6453, 6454.)  A reference in the applicants' case files to "Tea Party" was one of the Targeting Criteria, and therefore, their class membership could be determined by reference to objective evidence.

The Government disputes that the classes can be ascertained solely by reference to objective criteria.  For example, the screening checklists for some organizations such as Faith and Freedom Coalition of Ohio and AAOL did not specifically state "Tea Party" or "TP," but rather were marked more generally as "Political Activities —Sensitive Issues" cases.  (Doc. 194-28 at PageID 6450, 6451.)  The Government suggests that an individualized factual inquiry would be needed vis-a-vis each of the IRS screening agent to determine if he or she used the Targeting Criteria to segregate or flag the applications of the Faith and Freedom Coalition, AAOL, and other organizations whose case files lacked an explicit reference to the Targeting Criteria.  The Government also contends that criteria by which IRS agents identified cases involving potentially excessive political activity was not uniform among the agents or within the agency.  (Senate PSI Report, Doc. 197-3 at PageID 7013–14; TIGTA Report, Doc. 71-1 at PageID 1066–67.)

The Government's arguments are not sufficient to defeat a finding that the proposed class and subclass are ascertainable.  The Targeting Criteria are a compilation of the various approaches that IRS agents used to identify and segregate Tea Party-type cases.  (Senate PSI Report, Doc. 197-3 at PageID 7013–14; TIGTA Report, Doc. 71-1 at PageID 1066 n.17; Doc. 193-13 at PageID 4947–48.)  The fact that multiple approaches, as opposed to a single approach, were used to segregate applications does not change the result that a discrete number of

applicants ultimately were selected for increased scrutiny. The Government's discovery responses strongly suggest that objective determinations about class membership can be and have been made. The Government has admitted in its Response to Request for Admission 43 that "as of June 4, 2012, at least 200 groups who filed an Application for Tax Exemption had their Application for Tax Exemption flagged by the IRS for increased scrutiny" based on the Targeting Criteria. (Doc. 193-10 at PageID 4192, 4917–18; TIGTA Report, Doc. 71-1 at PageID 1066.) The Government also stated in Response to Interrogatory No. 15 that 37 groups provided information in response to one or more of the seven requests identified as unnecessary for purposes of the Unnecessary Requests Subclass. (Doc. 193-13 at PageID 4957.) The Court concludes that the class is readily ascertainable such that class certification is appropriate if the Rule 23 elements are satisfied.

**B.     Rule 23(a) Requirements**

**1.     Numerosity**

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While the numerosity requirement is not tied to any fixed numerical threshold, "substantial" numbers usually satisfy this requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Further, there is a "relaxed numerosity approach" for subclasses. Rubenstein, *Newberg on Class Actions* (5th ed.), § 3:16. The Government's discovery responses indicate that the Principal Class includes at least 200 groups and the Unnecessary Requests Subclass at least 37 groups. The Government does not make a numerosity-based objection to class certification. (Doc. 197 at PageID 6939–40, 6944.) The Court concludes that the numerosity element is satisfied.

### 2. Commonality

Rule 23(a) also requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The plaintiff should be able to demonstrate that the members of the class "have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (citation omitted). Class claims "must depend upon a common contention" and that contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool*, 722 F.3d at 852 (citing *Dukes*, 131 S. Ct. at 2551). The Government argues that Plaintiffs have not satisfied the commonality requirement.

### a. The Parties' Arguments

Plaintiffs make the following argument in favor of commonality:

> The overarching issue to be resolved is whether the IRS's multi-tier scrutiny of the Targeted Groups was unauthorized (*i.e.*, unnecessary for tax administration purposes) such that the inspections were unlawful under § 6103. Common questions include: (a) whether the Targeted Groups were chosen for heightened scrutiny and delay using a four-criterion test; (b) whether that test was based on factors not germane to tax administration, such as the groups' names, their perceived identity with the Tea Party Movement, or their viewpoint; and (c) whether the fact that they were scrutinized unnecessarily based on these factors rendered the repeated inspections of their Applications unlawful under § 6103. . . .

> Similarly, with respect to the Unnecessary [Requests] Subclass, a common legal issue is whether the seven demands for information were unnecessary and resulted in unlawful inspections. Any one of these common questions will produce one-stroke answers that are central to the validity of the § 6103 claims and, therefore, satisfies the commonality requirement under Rule 23(a).

(Doc. 193-1 at PageID 4703–04.)

11

The Government's argument against commonality is intertwined with its merits argument. The Government argues that the common questions suggested by Plaintiffs will not yield common answers that are likely to resolve core issues in this case. Instead, the Government contends that only "what, who, and whether" questions are relevant to resolve a § 6103 violation claim and those questions are not susceptible to common proof:

> To prevail on an improper inspection claim under § 7431, a plaintiff must demonstrate that an inspection occurred and that it was unauthorized. Inspection by an IRS employee is only unauthorized if it does not fall within the exception for Treasury employees under § 6103(h)(1).
>
> Thus, the only issues that are relevant to liability under § 7431 are:
>
> (1) *What* information was inspected?
> (2) *Who* in the IRS inspected the information and what were their job duties?
> (3) *Whether* the inspection of information was performed as part of the employee's official duties?
>
> [A]nswering "what, who, and whether" requires the Court to engage in an inquiry into the facts and circumstances surrounding each purported class member, and with respect to each IRS employee. . . . The elemental questions presented by a § 7431 claim do not yield common answers.

(Doc. 197 at PageID 6946–47.)

**b. Analysis**

To begin, Plaintiffs identify significant evidence demonstrating commonality. In its written response to the draft TIGTA Report, the IRS described its process for reviewing advocacy cases as "centralized" and "uniform" by using "specific employees who [had] been trained on the relevant issues" with a goal of "promot[ing] consistency and quality." (TIGTA Report, Doc. 71-1 at PageID 1103–04.) The IRS informed TIGTA that the cases "were worked in the same fashion." (*Id.* at PageID 1105.) ██████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ (███████████████

███████.)  Every advocacy case flagged for coordination was inspected, depending on the time period, by Elizabeth Hofacre, Stephen Seok, or Ronald Bell, whom Plaintiffs refer to as the "Tea Party Coordinators."  (Doc. 194-20 at 6387; PageID Doc. 194-21 at PageID 6397.)  All advocacy cases flagged for coordination received this type of secondary screening.  (IRS Dep., Doc. 194-4 at PageID 5631.)  Approximately 160 of the advocacy cases received a third screening by Hilary Goehausen, a technical unit specialist, in September and November 2011. (TIGTA Report, Doc. 71-1 at PageID 1096–97; IRS Dep., Doc. 194-4 at PageID 5668; Doc. 197-18 at PageID 7424–36.)

Also, the Court does not accept the Government's premise that the "what, who, and whether" questions always are dispositive of a § 7134 claim for a § 6103 violation.[5]  The Government does not provide any caselaw or other legal authority as the basis for its "what, who, and whether" questions.  Additionally, the questions appear to leave out a central element of § 6103(h), an element that can be characterized as the "why" element.  The Government suggests that the Plaintiffs only can prove a § 6103 violation if an employee inspected the tax return information of an organization when it was outside the scope of the employee's official duties to inspect such information.  However, the exception in § 6103(h)(1) states that tax return information is open to inspection by employees whose official duties require such inspection "*for tax administration purposes*."  26 U.S.C. § 2106(h)(1) (emphasis added).  The "why" question is significant to the commonality analysis.

Plaintiffs intend to argue on the merits, in part, that the secondary inspections performed by the IRS Tea Party Coordinators on applications segregated pursuant to the Targeting Criteria were not necessary to determine the tax exempt status of the applicants, and therefore, that the

---

[5]  The Court does not purport in this Order to delineate with precision the contours of a § 7314 claim for a violation of § 6103.  That issue has not been fully briefed and is not before the Court.

inspections were not required for tax administration purposes.  They further intend to argue that the unnecessary requests submitted to the proposed subclass led to unlawful inspections that were not required for tax administration.  The Court finds that these arguments raise questions that are subject to common proof and will yield common answers likely to drive resolution of this case.  For all these reasons, the Court concludes that Plaintiffs have satisfied the commonality element for class certification.

### 3.      Typicality

The third requirement of Rule 23(a) is typicality.  Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members."  *In re Whirlpool*, 722 F.3d at 852–53.  Commonality and typicality can "tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551 n.5 (citation omitted).  The existence of defenses against certain class members does not necessarily defeat typicality.  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007); *Hendricks v. Total Quality Logistics, LLC*, 292 F.R.D. 529, 541–42 (S.D. Ohio 2013).  "Typical does not mean identical, and the typicality requirement is liberally construed." *Hendricks*, 292 F.R.D. at 542 (citation omitted).

The Government makes only a limited argument concerning typicality, one directed only towards the proposed Unnecessary Requests Subclass.  The Government argues that typicality

cannot be proven because each of the purported 37 subclass members responded to different requests or sets of requests. That is, no purported subclass members responded to all seven of the so-called unnecessary requests. (Doc. 197-20 at PageID 7442–46.) The Government does not explain the relevance of this fact. The IRS stated that each of the seven requests were unnecessary to a determination of the applicants' tax-exemption status. (TIGTA Report, Doc. 71-1 at PageID 1080; Doc. 194-58 at PageID 6785–86; Doc. 194-4 at PageID 5684.) Plaintiffs' theory is that the applicant groups' responses to the unnecessary requests generated inspections of tax return information by employees whose official duties did not require inspection of such information for tax administration purposes. Whether Plaintiffs can establish liability is susceptible to the common proof no matter to which unnecessary request the subclass members responded. The Court finds that Plaintiffs have satisfied the typicality element.

### 4.    Adequacy

Rule 23(a) lastly requires Plaintiffs to demonstrate that they will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Courts examine two criteria to determine adequacy: "1) the representative[s] must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083. Rule 23(a)(4) also tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977); *see also Hendricks*, 292 F.R.D. at 542 (quoting *Cross*).

Plaintiffs have put forward a prima facie case of adequacy. Plaintiffs have established that they are members of the prospective Principal Class and that NorCal is a member of the

Unnecessary Requests Subclass.  They intend to prosecute this suit on behalf of the class. (NorCal Dep., Doc. 193-6 at PageID 4891; AAOL Dep., Doc. 193-5 at PageID 4887–88; SD Citizens Dep., Doc. 193-8 at PageID 4906–07; San Angelo TP, Doc. 193-7 at PageID 4903; Texas Patriots TP, Doc. 193-9 at PageID 4910.)  Plaintiffs' legal counsel are experienced in complex litigation and matters of constitutional law.  (Doc. 193-62 at PageID 5477–78.) Plaintiffs, through their legal counsel, already have demonstrated to the Court their intention to be zealous advocates through their arguments and briefing on dismissal, discovery, and class certification motions.

In rebuttal, the Government initially questioned whether the third-party funder of this litigation, an entity known as Citizens for Self-Governance ("CSG"), was directing Plaintiffs' counsel and thus usurping the duty of the named Plaintiffs to serve as the adequate class representatives.  The Court gave the Government leave to depose CSG and to file a supplemental brief on adequacy if appropriate.  After conducting a Rule 30(b)(6) deposition of CSG, the Government determined that "despite numerous public statements to the contrary, [CSG] is not overseeing this lawsuit or directing counsel."  (Doc. 216 at PageID 8243.)[6]  Thus, CSG's role as a third-party funder does not impugn the adequacy of the named Plaintiffs to serve as class representatives.

The Government now argues that Plaintiffs are overly reliant upon their legal counsel. They cite to portions of various deposition transcripts to argue that the named Plaintiffs lack knowledge about the claims asserted and do not understand their duties as class representatives. (Doc. 197-2 at PageID 6964–67.)  The Court has read the deposition testimony and disagrees

---

[6]  The Government proceeded to file a supplemental brief arguing that Plaintiffs were not adequate class representatives despite the fact that they abandoned their CSG argument.  This was inappropriate.  The Court did not give the Government leave to file a supplemental brief on adequacy merely to re-argue issues it already had addressed in the appendix to its initial Memorandum in Opposition (Docs. 197/198) to the Motion for Class Certification.  (Tr., Doc. 222 at PageID 8408–11.)

with the Government's characterization of the testimony.  The Court is satisfied that there is no apparent antagonism between the named Plaintiffs and the putative class members, that the named Plaintiffs have taken steps to stay informed about the litigation, and that the named Plaintiffs intend to represent the interests of the class members.  (*See*, *e.g.*, NorCal Dep., Doc. 197-11 at PageID 7252–53; San Angelo Dep., Doc. 197-12 at 7285; AAOL Dep., Doc. 197-13 at PageID 7322–25, 7327; S.D. Citizens Dep., Doc. 197-14 at PageID 7369–70; Texas Patriots TP Dep., Doc. 197-15 at PageID 7384, 7386.)

The Government also challenges the adequacy of NorCal to be the sole class representative for the proposed Unnecessary Requests Subclass.  The Government argues that NorCal is not an adequate subclass representative because it did not respond to the IRS requests and therefore is not a member of the putative subclass.  The first request and NorCal's response to it were as follows:

> [Request:]  If you have a board member or officer who has run or will run for public office, please describe fully.  If none, please confirm by answering "None" to this question.
>
> [Response:]  none

(Doc. 194-68 at PageID 6891.)  The Court cannot agree to the Government's argument that NorCal did not respond to this request.  The answer "none" to the first request was a substantive response.  It informed any IRS employee who inspected the response that no NorCal officer or board member intended to run for public office.  The second request was for the "names of donors, contributors, and grantors" to NorCal along with the "amounts each of the donations, contributions, and grants."  (*Id.*)  There is a factual dispute in the record whether NorCal provided its donors' names in response to the request, or whether it provided only the dates and amounts of donations.  (*Compare* NorCal Dep., Doc. 197-11 at PageID 7216, 7230–31 *with* Doc.

194-68 at PageID 6894, 6903–04.)[7]  Nonetheless, NorCal's succinct response to the first

question is sufficient to qualify it as an adequate class representative for the proposed

Unnecessary Requests Subclass.  The Court concludes that the adequacy element is satisfied for

the Principal Class and the Unnecessary Requests Subclass.

## C.  Rule 23(b) Requirements

Under Rule 23(b), a court may certify a class if Rule 23(a) is satisfied and if "the court

finds that the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The

predominance and superiority requirements were added to the Federal Rules "to cover cases 'in

which a class action would achieve economies of time, effort, and expense, and

promote . . . uniformity of decision as to persons similarly situated, without sacrificing

procedural fairness or bringing about other undesirable results.'"  *Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3), Adv. Comm. Notes to

1966 Amendment).

---

[7]  Virginia Rapini, NorCal's Rule 30(b)(6) deponent, gave an ambiguous response initially when asked if NorCal provided the names of its donors:

> Q.  * * * NorCal didn't provide that information, correct?
>
> A.  No.  What I did do because I was afraid that if I didn't provide something, I would be denied. I went to our PayPal account and printed that out, but did give dates and amounts, but didn't give names.  I did find out later that I had given the name of our -- when we applied for a grant that I didn't need to do.

(IRS Dep., Doc. 197-11 at PageID 7216.)  Plaintiffs contend that the term "donor" should be read into the last sentence so that it reads "I did find out later that I had given the name of our [donor]-- when we applied for a grant that I didn't need to do." (Doc. 199 at PageID 7646.)  Later in that deposition, Rapini stated more definitively that she provided the IRS with a NorCal report listing only the date and amounts of donations, but not donor names. (IRS Dep., Doc. 197-11 at PageID 7230–31.)  On the other hand, IRS records regarding NorCal's application indicate that NorCal provided donor information, including names, which the IRS later expunged from its files. (Doc. 194-68 at PageID 6894, 6903–04.)

### 1.     Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011). Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof. *Amgen*, 133 S. Ct. at 1196. However, the predominance requirement is more demanding than Rule 23(a)(2)'s commonality requirement. *Comcast*, 133 S. Ct. 1432; *Anchem Prods.*, 521 U.S. at 624.

The parties' predominance arguments largely track their arguments concerning commonality. The Court's analysis of those arguments is unchanged and need not be repeated here.

The Government additionally argues that it will raise three affirmative defenses which will require individualized determinations for each class member: (1) statute of limitations, (2) good faith interpretation of the law, and (3) inspections or disclosures conducted at a taxpayer's request. In the Sixth Circuit, "the fact that a defense may arise and may affect different class members differently does not [necessarily] compel a finding that individual issues predominate over common ones." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (quoting *Beattie*, 511 F.3d at 564). An examination of the potential affirmative defenses in this case establishes that they are not grounds to deny class certification.

First, claims asserted pursuant to § 7431 must be brought within two years after the plaintiff discovers the unauthorized inspection or disclosure. 26 U.S.C. § 7431(d).

However, the Government has not put forward any evidence establishing that the Plaintiffs' claims are untimely or that the class members' claims would be untimely. The Court will not deny certification on the basis that individual issues predominate when the Government offers only speculation that any § 7431 claims might be barred by the statute of limitations.

Second, § 7431 provides an affirmative defense for inspections or disclosures that result from a good faith interpretation of § 6103. 26 U.S.C. § 7431(b)(1). The parties agree that the good faith defense requires an objective inquiry into whether a reasonable IRS employee would understand that his or her inspection violated § 6103. *See*, *e.g.*, *Snider v. U.S.*, 468 F.3d 500, 507–08 (8th Cir. 2006) (applying a "reasonable officer" test); *Ingham v. U.S.*, 167 F.3d 1240, 1245 (9th Cir. 1999) (applying an objective "reasonable person" test). The Government argues that this would require an individualized inquiry about the facts of each inspection of an application by an IRS employee. The Court disagrees. As the Court understands the facts, a small group of IRS employees inspected the applications in batches after the applications had been segregated pursuant to the Targeting Criteria. The Court objectively can determine whether a reasonable IRS employee could believe that the inspections or sets of inspections were conducted for tax administration purposes consistent with § 6103. Plaintiffs intend to argue that no reasonable IRS employee would have believed he or she could inspect return information on an application when the inspection was conducted only because of the perceived viewpoint of the applicant. The Court can establish additional subclasses if necessary to examine the reasonableness of particular sets of inspections.

Third, § 7431 provides an affirmative defense for inspections or disclosures conducted pursuant to a taxpayer request. 26 U.S.C. § 7431(b)(2). The Government argues that this defense also will require an application-by-application analysis to determine what information

the applicant group submitted and why.  The Government contends that "[w]here, for example, a purported class member submitted no material besides an application for tax-exempt status, the analysis of whether any inspection was requested will be different than for taxpayers who submitted copious information in response to IRS requests."  (Doc. 197 at PageID 6593.)  Again, the Court is not convinced that the individualized determinations will be needed.  To the extent that the Targeted Groups' applications were segregated and subjected to inspections based on the Targeting Criteria, it appears that the Targeted Groups were treated in a uniform manner regardless of the amount of materials they provided the IRS.  Defendants have not provided any concrete examples where amount or nature of the information the Targeted Groups provided would impact the analysis of whether the § 7431(b)(2) defense is applicable.

In sum, the potential impact of the purported affirmative defenses is too speculative to provide a basis to deny class certification.  The Court finds that the common issues predominate over individual issues.

## 2.    Superiority

Rule 23(b)(3) details a non-exhaustive list of factors to be considered in determining the superiority of proceeding as a class compared to other methods of adjudication: (1) the interests of the class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties in managing of the class action.  Fed. R. Civ. P. 23(b)(3).  "Use of the class method is warranted [when] class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery."  *In re Whirlpool*, 722 F.3d at 861.

The Government argues that a class action is not necessary.  It argues that it has been proven that the costs of litigation will not deter individual suits from proceeding because 42 organizations already brought similar claims for alleged violations of § 6103 in two actions filed in the District of the District of Columbia.  *See Linchpins of Liberty v. U.S.*, 71 F. Supp. 3d 236 (D.D.C. 2014) (41 organizations); *True the Vote, Inc. v. I.R.S.*, 71 F. Supp. 3d 219 (D.D.C. 2014) (one organization).[8]  However, the fact that a class action is not strictly necessary does not mean that a class action is not the superior, more efficient method of adjudicating the claims of the estimated more-than-200 putative class members.  The Court finds that a class action is a superior method of adjudication for purposes of lowering the parties' litigation costs and conserving federal court resources.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Docs. 193/194) is hereby **GRANTED**.  The Court certifies a **Principal Class** defined as follows:

> All entities that, at any time from February 1, 2010 to June 30, 2013, filed an Application for Recognition of Tax Exemption with the IRS under 26 U.S.C. §§ 501(c)(3) or 501(c)(4) and had their application flagged by the IRS as an "Advocacy" case using the criteria:
>
> (a)   A reference in the case file to "Tea Party," "Patriots," or "9/12 Project";
>
> (b)   A reference in the case file to government spending, government debt, or taxes;
>
> (c)   A reference in the case file to education of the public by advocacy or lobbying to "make America a better place to live"; or

---

[8] Judge Reggie B. Walton dismissed the § 6103 claims of the plaintiffs in both suits for failure to state a claim upon which relief can be granted.  The plaintiffs challenged the IRS's practice of demanding information that was not necessary to the tax-exempt status determination and then inspecting, handling, and disclosing it.  However, he opined that it was "actually the defendants' alleged unconstitutional conduct in *acquiring* that information that form[ed] the basis" for their claims.  *Linchpins of Liberty*, 71 F. Supp. 3d at 249; *True the Vote*, 71 F. Supp. 3d at 233.  Judge Walton stated that § 6103 "does not compel a finding" that improperly-acquired information "was improperly inspected."  *Linchpins of Liberty*, 71 F. Supp. 3d at 249; *True the Vote*, 71 F. Supp. 3d at 233.  The plaintiff in the *True the Vote* case has filed an appeal of Judge Walton's decision.  *True the Vote, Inc. v. IRS*, No. 14-5316 (D.C. Cir.).

        (d)     A statement in the case file criticizing how the country is being run.

Excluded from the Principal Class are any entities that properly execute and file a request for exclusion from the Principal Class.

Additionally, the Court certifies an **Unnecessary Requests Subclass** as follows:

All entities included in the Principal Class that, at any time from January 1, 2010 to June 31, 2013, provided information in response to one or more of the following requests for information by the IRS:

        (a)     The names of any donors;

        (b)     A list of all issues that are important to the entity and an indication of its position regarding such issues;

        (c)     Information about the roles of non-member participants in activities by the entity and the types of conversations and discussions had by members and participants during the activity;

        (d)     Whether any officer, director, or member of the entity has run or will run for public office;

        (e)     The political affiliation of any officer, director, member, speaker, or candidates supported or other questions regarding any relationship with identified political parties;

        (f)     Information regarding the employment of any officer, director, or members other than by the entity, including but not limited to the number of hours worked; or

        (g)     Information regarding the activities of other entities beyond solely the relationship between the applicant and such other entities.

Excluded from the Unnecessary Requests Subclass are any entities that properly execute and file a request for exclusion from the Unnecessary Requests Subclass.

The Court is issuing this Order under seal because the parties filed multiple briefs and exhibits under seal.  The Court **ORDERS** the parties to confer and jointly submit to the Court within two weeks of the date of this Order a single, redacted version of the Order Granting Plaintiffs' Motion for Class Certification which can be filed publicly.  If the parties jointly agree that the Order Granting Plaintiffs' Motion for Class Certification does not need to be redacted, then the parties shall so inform the Court within two weeks of the date of this Order.

IT IS SO ORDERED.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court