**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

| | | |
|---|---|---|
| NORCAL TEA PARTY PATRIOTS, et al.,<br>ON BEHALF OF THEMSELVES,<br>THEIR MEMBERS, and THE CLASS<br>THEY REPRESENT, | )<br>)<br>)<br>) | |
| | ) | Case No. 1:13-cv-00341 |
| Plaintiffs, | ) | |
| | ) | Judge Susan J. Dlott |
| v. | ) | |
| | ) | |
| THE INTERNAL REVENUE SERVICE, et al., | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | **UNDER SEAL** |

**PLAINTIFF TEXAS PATRIOTS TEA PARTY'S REPLY**
**IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Texas Patriots Tea Party ("TPTP") hereby submits its Reply in support of its

Motion for Preliminary Injunction (Doc. #237-1) (the "Motion").

## Table of Contents

Introduction ........................................................................................................................ 1

Arguments and Authorities ............................................................................................... 2

I.     The Court Has Broad Discretion to Enjoin Unconstitutional Conduct ...................... 2

II.    A Preliminary Injunction Should Issue to Prevent Ongoing Viewpoint Discrimination, Unconstitutional Conditions, and Retaliation .......................................... 5

     A.    The IRS Cannot Avoid Injunctive Relief by Denying its Conduct and Narrowly Construing TPTP's Claim under Count II ............................................. 5

     B.    The IRS Cannot Negate the Propriety Injunctive Relief by Re-Casting the Relief Requested by TPTP ................................................................................. 10

     C.    The IRS's Litigation Hold Policy Is Retaliatory and Cannot be Maintained against TPTP ........................................................................................................ 14

III.   The Remaining Factors Support Issuance of A Preliminary Injunction ................... 17

Conclusion ....................................................................................................................... 18

**Introduction**

In its Opposition, the IRS continues its efforts to entrap TPTP in a shifting labyrinth of policies and procedures that do not apply to other applicants. The IRS seeks to justify this outcome through a combination of denial, obfuscation, and—after more than three years of litigation—a newly disclosed policy that would mandate continued harm for TPTP. The Court should see through this façade.

First, the IRS denies the wrongfulness of its conduct, casting aside the record evidence in this case to assert that the "available evidence" shows that it never even targeted TPTP. This position, however, is flatly contradicted by IRS internal records, sworn testimony and binding admissions by IRS agents, and past findings by the Court. The IRS next turns to obfuscation, re-casting TPTP's claim for a constitutional process into a claim for a declaration of its tax-exempt status under 26 U.S.C. § 7428. TPTP's claim must be brought in another forum, it says, despite the fact that § 7428 was only recently enacted and cannot remedy the unconstitutional misconduct at issue in Count II. Lastly, the IRS backstops its narrative with a new explanation for its conduct: a litigation hold policy. It claims that it "no longer has jurisdiction" over TPTP's application because of TPTP's decision to sue—thus blaming TPTP for its ongoing harm—despite only months ago telling the D.C. Circuit that the policy is actually "discretionary with the IRS."

These arguments, like the unprecedented multi-tier processes the IRS used to target Tea Party groups for more than three years, serve only to mask the IRS's discrimination and retaliation against TPTP. From the time the IRS first segregated TPTP's application as a "Tea Party," it has been unwilling to alter its conduct and treat TPTP like any other applicant. The IRS has even ignored Senior United States Circuit Judge David B. Sentelle of the D.C. Circuit, who advised the IRS to halt its adverse treatment of Z Street based on a purported litigation hold,

1

stating at oral argument that, "you might go back and discuss that policy with people at the IRS. That's not the way government usually acts." A preliminary injunction is necessary to halt continued mistreatment by the IRS, and should be issued.

<u>**Arguments and Authorities**</u>

Under Rule 65 of the Federal Rules of Civil Procedure, the Court has broad equitable authority to issue a preliminary injunction to protect litigants from ongoing harm. The Court should exercise that authority here: the IRS continually refuses to treat TPTP like any other applicant, and this continuing harm originates from the IRS's targeting of TPTP for its viewpoint and, more recently, TPTP's decision to protect its constitutional rights through this lawsuit. *See, e.g.*, *Katter v. Ohio Employment Relations Bd.*, 492 F.Supp.2d 851, 858, 865 (S.D. Ohio 2007) (rejecting mootness argument because "the effects of the alleged violation" had not "been completely eradicated" and issuing an injunction to ensure "that Defendant may no longer attempt to discriminate against her based on her religion.").

I.      **The Court Has Broad Discretion to Enjoin Unconstitutional Conduct**

In its opposition, the IRS disputes the availability of preliminary injunctive relief to address unconstitutional conduct. Specifically, it asserts that TPTP's Motion is procedurally improper because a preliminary injunction generally only preserves the positions of the parties until trial. Opp. at PageID #9132. It cautions that, if the Court were to issue the requested injunction, TPTP would no longer have a claim and "Count II would become moot for lack of a plaintiff." *Id.* This argument is striking because it directly contradicts and seemingly invalidates

the IRS's past mootness arguments in its Motion for Partial Summary Judgment.[1] It also misstates the Court's equitable authority to issue injunctive relief.

A district court has wide discretion to issue preliminary injunctive relief. *See N.A.A.C.P. v. City of Mansfield*, 866 F.2d 162, 169 (6th Cir. 1989) (A "district judge's weighing and balancing of the equities should be disturbed on appeal only in the rarest of cases." (quotations omitted)). "As a matter of traditional equity principles, a preliminary injunction is proper where there is an 'ongoing violation' of a claimant's rights." *Coleman v. Ann Arbor Transp. Auth.*, 947 F. Supp. 2d 777, 783 (E.D. Mich. 2013) (citing *Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003)). The injunction can be either "prohibitory" to halt certain conduct or "mandatory" to require certain conduct. 11A Charles Wright, et al., Federal Practice & Procedure § 2988.2 (3d ed.).

The Sixth Circuit has rejected the IRS's argument that a preliminary injunction can only preserve the status quo, or even that a heightened standard exists for mandatory injunctions. In *United Food & Commercial Workers Union, Local 1099 v. SW Ohio Reg. Transit Auth.*, 163 F.3d 341 (6th Cir. 1998), the Sixth Circuit considered whether "the moving party bears a heightened evidentiary burden when seeking mandatory preliminary relief that requires the non-moving party to undertake affirmative action, as distinguished from prohibitory injunctive relief that simply preserves the status quo." *Id.* at 348. It answered in the negative, holding that there is "little consequential importance to the concept of the status quo[.]" *Id.* The Sixth Circuit reasoned that "'[t]he focus must always be in prevention of injury by a proper order, not merely

---

[1]     The IRS seeks dismissal of TPTP's claim on mootness grounds, but also seeks to delay any adjudication of TPTP's claim, preventing the very relief that might well make its claim moot if the IRS issues a determination. Both positions cannot be correct.

on preservation of the status quo . . . [i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation as to prevent the injury.'" *Id.* (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)).

In this case, the Court is well within its discretion to put an end to the IRS's unconstitutional policies and procedures that now plague TPTP. Whether the injunction is crafted to be prohibitory (i.e., prohibiting the IRS from considering TPTP's viewpoint or the existence of this lawsuit in processing its application) or mandatory (i.e., requiring the IRS to process TPTP's application under the ordinary procedures of its Determination Letter Program), the result will be to prevent ongoing constitutional harm to TPTP. *See* Wright, *supra*, at § 2948.2 (recognizing that "practically any mandatory injunction may be phrased in prohibitory form . . . no arbitrary rule should be allowed to restrict the court's discretion to issue a preliminary injunction."); *see also Sayler Park Village Council v. U.S. Army Corps of Engineers*, No. C-1-02-832, 2003 WL 22423202, at *2 ("It is well established that a federal district court has wide discretion to fashion appropriate injunctive relief in a particular case." (quotations and ellipsis omitted)).

The status quo created by the IRS is of no consequence to this determination, nor is the fact that a preliminary injunction may lead to TPTP's claim becoming moot, as the IRS asserts, once a determination is made in the ordinary course. *See id.*; *see also* Wright, *supra*, at § 2948.2 (courts may consider whether a preliminary injunction will "give plaintiff all or most of the relief to which plaintiff would be entitled if successful at trial," but stating that "if after taking account of the burden on defendant, the balance still favors plaintiff, and the other criteria for preliminary relief are satisfied, then a preliminary injunction should be granted regardless of the fact that it temporarily allows plaintiff" to prevail on the merits). As further described below, a preliminary injunction should issue under the circumstances.

4

## II.     A Preliminary Injunction Should Issue to Prevent Ongoing Viewpoint Discrimination, Unconstitutional Conditions, and Retaliation

In its Motion, TPTP describes how the IRS has handled its application for tax-exemption using different standards and under different timelines than entities with different viewpoints. *See Z Street v. Koskinen*, 791 F.3d 24, 32 (D.C. Cir. 2015) ("[T]o process exemption applications pursuant to different standards and at different rates depending upon the viewpoint of the applicants [is] a blatant violation of the First Amendment."). As the IRS processed thousands of other groups in the ordinary course under the Determination Letter Program, TPTP received only heightened scrutiny and perpetual delay. *See* Mot. Prelim. Inj. at PageID #8708-10; *see also* Mot. Class Cert. at PageID #4683-85 (Doc. #193-1) (detailing how the IRS targeted Tea Party groups). TPTP also describes how the IRS's decision to halt work on its application because of this lawsuit—an act that is itself protected activity—violates the First Amendment. Mot. Prelim. Inj. at #8717-19. The circumstances warrant issuance of a preliminary injunction.

### A.     The IRS Cannot Avoid Injunctive Relief by Denying its Conduct and Narrowly Construing TPTP's Claim under Count II

The evidentiary showing made in the Motion supports a finding that TPTP is likely to succeed on the merits of its claim under Count II. Nonetheless, the IRS challenges this request for injunctive relief by denying its conduct and seeking to limit TPTP's claim under Count II to certain findings by TIGTA. The IRS relies on the 2013 TIGTA Report to assert that TPTP is unlikely to prevail on its claim (and further, that its claim is moot), because "use of improper criteria by the IRS ceased in May 2012, before TPTP filed its application." Opp. at #9125-26. According to the IRS, TPTP was never even targeted. *Id.*

This assertion is directly negated by the record evidence obtained in this case, including authenticated documents, sworn testimony, and admissions obtained from the IRS. This evidence

reveals that the IRS segregated TPTP as a Tea Party group and thereafter subjected it to increased scrutiny and perpetual delay solely because of its name. TPTP's Screening Checksheet indicates that, on September 14, 2012, IRS agent Cara D. Franczak screened TPTP's application and flagged it for additional development because it was a "TEA PARTY," an issue she discussed with her manager. *See* EOD Checksheets at PageID #6453-54 (Doc. #194-28); *see also* Mot. Prelim. Inj. at PageID #8708 (providing an image of TPTP's checksheet). Indeed, the IRS admitted in its Rule 30(b)(6) deposition that TPTP was screened and segregated because the IRS classified it as a Tea Party group. *See* IRS Dep. at 207:4-16 (June 24, 2015) (Doc. #194-4).

The IRS now asserts post-hoc rationalizations for why additional scrutiny may have been warranted for TPTP, Opp. at PageID #9116-17, but the fact remains that the IRS did not target TPTP on those grounds. As previously described in Plaintiffs' Reply in Support of Class Certification (Doc. #199), the "Targeting Criteria"[2] were used to segregate Tea Party groups based on their viewpoints and names, not their actual activities. *See* IRS Dep. at 190:9-191:18; ███████████████████████████████████████████ EOD Screeners were required to segregate any group that met the Targeting Criteria regardless of the activities of the organization, even when those activities immediately warranted recognition of tax-exempt status. *See* Class Cert. Reply, at #7675; ██████████████████████████████ TPTP was flagged and segregated based on its name, not some other consideration as the IRS now asserts.

---

[2]      The term "Targeting Criteria" refers to the four criteria used within the Class Definition. *See* Order, at PageID #8417 ("The four criteria used to define the Principal Class will be referred to in this Order as the 'Targeting Criteria.'").

Ultimately, the IRS is misplaced in relying on the TIGTA Report to displace the record evidence in this case and narrowly construe TPTP's claim. The IRS relies on a finding by TIGTA, including Congressional reports that later repeat that finding, to assert that the "use of any inappropriate criteria ended in May 2012." Opp. at #9128. Yet, as previously detailed, TPTP's application alone disproves this assertion because TPTP filed its application on June 14, 2012, and was screened as a "TEA PARTY" case on September 14, 2012. *See* EOD Checksheets, at #6454. In addition, the designated Tea Party Coordinator, ████████ specifically confirmed the continued use of the Targeting Criteria beyond May 2012, testifying that the Targeting Criteria were used "███████████████████████████████." ████████████████████ ████████████████████ The IRS's assertion that it stopped using the Targeting Criteria in May 2012 is simply incorrect.[3]

This discrepancy can be traced back to the IRS. In its report, TIGTA predominately focused on the IRS's "Be On The Lookout" ("BOLO") lists, which initially listed the "Tea Party Movement" as an Emerging Issue. *See* BOLO Iteration History, at PageID #6745-46 (Doc. #194-49). The IRS later modified that entry to be more generic (i.e., "Advocacy Orgs" and "Current Political Issues"), leading TIGTA and congressional committees to conclude that the "[c]riteria changed" at that time. *See* TIGTA Report, at #6491 (Doc. #194-29) (listing changes to the BOLO and stating that the "criteria changed" based on those changes); *see also* Opp. at #9127 (relying on congressional reports that focus on changes to the BOLO). However, in formal discovery, Plaintiffs have revealed that the changes to the BOLO were only superficial and did not change

---

[3]     During briefing on class certification, the IRS not only asserted that the criteria "changed repeatedly," but also that the criteria were "never actually in effect." Opp. Class Cert. at PageID ##6939 n.9, 6944 n.14 (Doc. #197). The Court certified a class period that ranges from February 1, 2010 to June 30, 2013, recognizing the evidentiary support that the Targeting Criteria (and the secondary screening performed to confirm those criteria) occurred during that time period. *Id.* at #8422-23.

the underlying Targeting Criteria or the actions taken against the Class Members. *Id.*; *see also* IRS Dep. at 209:1-22; ███████████████ The IRS admitted that the BOLO entry only identified the "issue" to watch for, but never incorporated the actual criteria used by the EOD Screeners. *See* IRS Dep. at 202:21-206:4. Because TIGTA and Congress focused on changes to the BOLO, not the underlying criteria, their findings on this issue do not reveal when the IRS halted its targeting.

Beyond the duration of the IRS's targeting, there are additional reasons why the TIGTA and Congressional Reports, although instructive, are not a definitive record of the IRS's conduct. First, the IRS had a direct hand in influencing the timelines in the TIGTA report to reflect its preferred narrative. When the IRS provided a summary of the BOLO changes to TIGTA, for instance, it identified that the Targeting Criteria were implicit within the "Tea Party movement" issue description, but specifically omitted that disclosure for the modified entries (i.e., Advocacy Orgs and Current Political Issues) despite the fact that the Targeting Criteria were still being applied. *See* Email from Paz to Flax, et al. (May 13, 2013) (purporting to describe "advocacy cases over time (including phrases and issues treated as falling within the BOLO description)."), attached as **Exhibit A**. Similarly, when TIGTA sent the IRS its draft timeline, Lois Lerner, the Director of IRS Exempt Organizations, sent back a revised copy, stating "[w]e have made changes where we thought your folks didn't get it exactly right." *See* Email from Lerner to TIGTA (Nov. 2, 2012), attached as **Exhibit B**.

The IRS's efforts to shape the TIGTA report went beyond the timelines. When TIGTA interviewed IRS agents regarding the targeting, EOT Manager Holly Paz insisted on being present during the interviews, despite being personally involved in the targeting and having supervisory authority over the agents being interviewed. On at least one occasion, Paz interjected

8



during the questioning—stating, ████████████████████ — prompting ████

████████████████████████ to modify her answer from "██████████████████

████████████████" to an equivocal, "███████████████████████████████████

████████████████████████████████████████████████." *See* ████████████

██████████████ (discussing why Cincinnati stopped developing cases). The record reveals

that Lerner and Paz, located in Washington, D.C., did in fact order Cincinnati to stop developing

cases, contrary to Paz's suggestion. *See* Email from Paz to Lerner, at PageID #6753 (Doc. #194-

51) ("They have been told not to issue determs [sic] until we work through the test cases we have

here[.]").

In the end, Plaintiffs will prove their claims using the record evidence developed in this

case. The discrepancies in the 2013 TIGTA Report and Congressional Reports reveal nothing

more than the IRS's past successes in promoting its preferred, albeit misleading, narrative. The

IRS cannot now rely on the very findings it erroneously procured. It is also for this reason that

the IRS is misplaced in relying on the 2015 TIGTA Report to argue that TPTP's claim in Count II

is moot.[4] *See* IRS Mot. Part. Summ. J., at PageID #7844 (Doc. #212-2). It cannot be said that

TPTP's claim is moot because TPTP continues to suffer from the ill effects of viewpoint

discrimination by the IRS. *See Katter v. Ohio Employment Relations Bd.*, 492 F. Supp. 2d 851,

857 (S.D. Ohio 2007) (claim is not moot until it is "absolutely clear that the effects of the alleged

---

[4]     TIGTA explicitly limited its 2015 Report to prior recommendations associated with its 2013 Report and, as
a result, carries with it the same discrepancies that affected the 2013 TIGTA Report. *See* TIGTA Report, at PageID
#8173 (Mar. 27, 2015) (Doc. #212-14) ("This audit focused only on actions taken that were relevant to our prior
nine recommendations."). For instance, TIGTA once again relied on the fact "the IRS eliminated the use of Be On
the Look Out (BOLO) listings, which TIGTA determined had contained inappropriate criteria regarding political
advocacy cases."). *Id.* at #8169. The fact that the IRS continued its targeting while under scrutiny by TIGTA is
inexplicable, but regardless, TIGTA's audit did not, and still has not, addressed those actions.

9

violation have been completely eradicated . . . .").[5] TPTP's Motion demonstrates that these ongoing consequences, including the IRS's recent adverse decision to stay TPTP's application because it exercised its right to bring this action, demonstrate constitutional violations that must be ceased. As described further below, a preliminary injunction is appropriate to halt those ongoing harms.

**B.  The IRS Cannot Negate the Propriety of Injunctive Relief by Re-Casting the Relief Requested by TPTP**

In the Second Amended Class Action Complaint ("SACAC") (Doc. #114), TPTP seeks "declaratory and injunctive relief against the IRS" in the form of a judgment "declaring that the Defendants' discriminatory conduct is unlawful and enjoining them from using tax exemption applicant's political viewpoints to target them and subject them to delay . . . ." SACAC, at ¶ 241. Through its Motion, TPTP takes the first step toward that relief, seeking a preliminary injunction to halt further unconstitutional harms by requiring the IRS to apply the same standard to TPTP as it would any other group. *See* Mot. Prelim. Inj. at #8701 (seeking to have the IRS "perform its basic duties" and treat "TPTP's application like any other group."). TPTP seeks, and should be entitled to, a non-discriminatory process. As detailed in the Motion, the IRS's Determination Letter Program is generally applicable to organizations of all ideological, religious, and cultural backgrounds, and is what should apply to TPTP's application. *See id.* at #8702.

---

[5]  Even where the IRS has halted portions of is discriminatory conduct, such as its ongoing use of the Targeting Criteria, the Court still has jurisdiction to consider the legality of that practice. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant form renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power."). The only question is whether it should specifically enjoin any future use of the Targeting Criteria, as opposed to more specifically enjoining the specific conduct and its aftereffects that continue to cause ongoing harm here.

In opposing the Motion, the IRS casts TPTP's claim as falling within a narrowly defined cause of action only recently implemented by Congress. *See* Opp. at #9129. The cause of action is 26 U.S.C. § 7428, which permits an entity to file a lawsuit to seek a judicial declaration of its tax-exempt status if its application has been denied or, as pertinent to the argument here, pending more than 270 days without a determination. *See* §7428(a)-(b)(2). According to the IRS, TPTP threatens to "subvert the statute by seeking such relief in the present forum" because § 7428 actions may only be brought in three courts, "none of which are this Court." Opp. at #9115, 9129.[6]

This argument is misplaced. The remedy TPTP seeks cannot be afforded under § 7428 because TPTP seeks to halt unconstitutional conduct, not to obtain an actual declaration of its tax-exempt status by the Court. *See* SACAC, at ¶ 241. A lawsuit under § 7428 cannot provide redress for unconstitutional conduct. *See, e.g.*, *Z Street, Inc. v. Koskinen*, 44 F. Supp. 3d 48 (D.D.C. 2014) (finding that § 7428 only authorizes declaratory relief concerning an entity's qualification for tax-exempt status, not "a declaration that the alleged 'Israel Special Policy' is unconstitutional and an injunction against its further use[.]"). TPTP's injury does not flow from a generic failure to decide its application within 270 days, but instead from the IRS's conduct in refusing to execute its statutory duties and handle TPTP's application like any other group— whether within 27 days, 270 days, or 1,000 days.

---

[6]     In other portions of its Opposition, the IRS abandons this characterization to state that, if TPTP were to prevail on Count II, "the Court would issue a declaration and injunction regarding the process used by the IRS." Opp. at #9125 n.8. Based on this recognition, the IRS contends that TPTP's Motion requests relief not sought in the SACAC because it did not specifically request for its application to be processed. This argument is largely semantics, as the probable outcome of a valid process will be a determination of its tax-exempt status, as has occurred for thousands of groups each year TPTP has been pending. Nonetheless, Count II specifically concerns the unconstitutionality of the IRS deciding *not* to process TPTP's application because of its viewpoint, and TPTP has requested that the IRS "process its application like any other group" and "in the ordinary course"—in other words, in a non-discriminatory or non-retaliatory fashion. Mot. at #8701.

The Court has previously rejected a similar argument in its Order on the Motions to Dismiss. In its Motion to Dismiss, the IRS argued that the Court lacks equity jurisdiction "because Plaintiffs have adequate legal remedies available to pursue their claims." IRS Mot. Dismiss, at PageID #1226 (Doc. #73). The IRS cited to § 7428, which at the time only applied to § 501(c)(3) applicants. *Id.* The Court did not accept that argument, finding that TPTP (and at the time, AAOL) "do not seek a determination that they are entitled to § 501(c)(4) status." Order, at PageID #1673 (Doc. #102). "Instead, they seek only to enjoin Federal Defendants from subjecting them to viewpoint discrimination during the application process for tax-exempt status with unnecessary delays and intrusive requests for information." *Id.* The Court found that "[t]his case is factually analogous to *Z Street*," particularly with respect to *Z Street*'s holding that Z Street's claim that "the IRS subjected it to unconstitutional viewpoint discrimination in considering its application[,]" would not result in an actual determination of its tax status—even if an ordinary, constitutional process should inherently result in an eventual determination. *Id.* Like this Court, the D.C. District Court found § 7428 inadequate. Furthermore, it expressed disdain for the IRS's efforts to "transform a lawsuit that clearly challenges the constitutionality of the process" into a different dispute "as a means of attempting to thwart this action's advancement." *Z Street*, 44 F. Supp. 3d at 68.

On appeal of the D.C. District Court's decision in *Z Street*, the D.C. Circuit expressed a similar sentiment. The Court openly rejected the IRS's argument that § 7428 forecloses an action to stop unconstitutional conduct, including the suggestion that § 7428 provides a 270-day safe harbor for its conduct. At oral argument, the D.C. Circuit panel highlighted its concerns:

> **The IRS:** One of the things they are asking for is to bar application of the Israel Special Policy to its application.

**Judge:**     That's part of the constitutionally fair process they want. They want a court order that says they want to the IRS to judge our tax-exempt status free of unconstitutional standards.

. . .

**Judge:**     I still haven't heard from the government, in its brief or from you today, a response to my concern about—they allege unconstitutional delay, and I don't see how either in a refund action or in a 7428 action, [how] that could be remedied.

. . .

**Judge:**     I think if I were you I would go back and ask your superiors whether they want us to represent that the government's position in this case is that the government is free to unconstitutionally discriminate against its citizens for 270 days. I would be stunned if the current attorney general would agree with that decision. Stunned. And the last attorney general. And the one before that. Or the one before that. Or anyone. That can't be the position. Now, do you want to think about that again whether that's really your position?

Rec. Oral Arg., *Z Street v. Koskinen*, No. 14-1004, at 6:30-6:50; 10:55-11:20; 13:00-13:30, & 52:30-54:30 (May 4, 2015), at http://www.cadc.uscourts.gov/recordings/recordings2015.nsf/ 670B4A8A010CE84B85257E3B0056D039/$file/15-5010.mp3.  The eventual opinion echoed these concerns. *See Z Street v. Koskinen*, 791 F.3d 24, 31-32 (D.C. Cir. 2015) (rejecting argument because "[w]ere it otherwise, the IRS would be free for at least 270 days . . . to process exemption applications pursuant to different standards . . . depending upon the viewpoint of the applicants—a blatant violation of the First Amendment.").

As also pertinent here, the D.C. Circuit rejected any notion that the availability of § 7428 can foreclose a claim for declaratory or injunctive relief to stop unconstitutional conduct. The court recognized that, even with § 7428 as an available remedy, an entity may seek redress from unconstitutional conduct if it elects to pursue injunctive relief instead of a claim under § 7428. *See id.* ("[I]n situations where a taxpayer elects not to sue under 7428, the IRS would have even longer since the taxpayer would be unable to invoke either 6213 or 7422 until the agency actually denies an exemption and assesses liability."). In *Z Street*, for instance, the D.C. Circuit

13

issued its opinion more than 270 days after Z Street's application remained pending, and Z Street's case is proceeding through discovery to this day despite its ability to bring an action under § 7428. *See id.* Any contrary conclusion would only support the IRS's conduct here, imposing on Tea Party applicants the burden of pursuing relief under § 7428 because they were targeted for their viewpoint, when other applicants receive approval in the ordinary course.

The mere existence of § 7428, which itself cannot remedy the harms at issue in this lawsuit, does not offer an adequate remedy and does not deprive TPTP of standing to seek redress against the IRS's ongoing conduct. TPTP's claim under Count II is properly before this Court and should be decided by this Court. As TPTP has shown, the IRS continues to subject TPTP to the consequences of the IRS's viewpoint discrimination, as well as the IRS's retaliatory actions for bringing this lawsuit. An action under § 7428 is inadequate to resolve those claims and should not serve as a basis to require TPTP to abandon its claim under Count II. Were it otherwise, the IRS could rely on § 7428 any time it violates an entity's rights during the tax-exempt process to prevent any litigation regarding its conduct. Such a result is intolerable, and should be rejected. The same is true for the IRS's supposed litigation hold.

## C. The IRS's Litigation Hold Policy Is Retaliatory and Cannot be Maintained against TPTP

The IRS has found a new justification for its ongoing delay of TPTP's application: a litigation hold policy. According to the IRS, when an entity avails itself of the judicial branch to prevent outright targeting and discriminatory delay by the IRS, the IRS may continue those delays as a result of the lawsuit. Opp. at #9120. Furthermore, the logic of this decision would be immune from scrutiny, because allegedly, the "IRS no longer has jurisdiction" to execute its statutory duties once litigation arises. *Id.* These assertions do not withstand scrutiny.

14

First, the IRS has specifically admitted, contrary to its assertions here, that its litigation hold policy is applied on a case-by-case basis depending on the preferences of the IRS. During the oral argument before the D.C. Circuit, Judge David B. Sentelle inquired about the IRS's ongoing treatment of Z Street:

**Judge:**     I'm going to ask you an unfair question that I will also ask the other side. What is the status of this application now?

**The IRS:**   There is a litigation hold on this application.

**Judge:**     Why couldn't the application process have continued during the litigation?

**The IRS**:   Well, that's discretionary with the IRS.

**Judge**:     Ah ha. So you've all decided that you're going to hold their application up during this litigation.

Oral Arg. Rec. at 17:15-18:38. The IRS attempted to clarify its discretionary litigation hold policy, but Judge Sentelle cut to the core of the issue:

**The IRS**:   Well, it is a general rule that once somebody brings a suit challenging the exemption determination process that work on the case stops. I think that the IRS—

**Judge**:      —So, you'll burden them rather than go ahead and perhaps moot the case . . . [indecipherable]?

**The IRS:**   Well, I think the IRS has to look at, is expending any more time on a case that is already in litigation, an appropriate use of resources? They have to look at does it promote effective tax administration.

**Judge**:     That is an unfair question. You're not here to defend that policy. But, you might go back and discuss that policy with people at the IRS. That's not the way government usually acts.

*Id.* Despite this exchange, the IRS continues, in its discretion, to refuse to perform its statutory duty to handle applications filed by TPTP and nine other Tea Party groups still awaiting a determination of their status. And because the IRS now represents its policy as generally

15

applicable and jurisdiction-depriving, the true basis for the IRS's decision has never been disclosed.[7]

Second, it is not even clear that the litigation hold policy, taken to be true as represented by the IRS, applies to the facts and circumstances of this case. The IRS asserts that "[o]nce an issue involving an organization's tax exempt status becomes the subject of litigation, the IRS no longer has jurisdiction over the subject matter being litigated." Lothamer Decl. at ¶ 3, Mot. Part. Sum. J. at #8146-47 (Doc. #212-12). However, as detailed in Section II.B., this lawsuit involves the constitutionality of the processes the IRS applied to TPTP. *See* SACAC, at ¶ 241. TPTP's tax-exempt status is not the subject of this litigation, and will not be determined by the Court. The IRS's attempts to apply this policy to this case, which seeks to halt ongoing harm associated with unconstitutional delays, should not be permitted, particularly when the Court has previously found that TPTP "do[es] not seek a determination that [it is] entitled to § 501(c)(4) status." Order, at PageID #1673 (Doc. #102).[8]

In the end, the IRS's decision to categorically halt any further consideration of TPTP's application because of its decision to bring this lawsuit, which itself is protected activity, amounts to unconstitutional retaliation. *See* Mot. Prelim. Inj. at #8717-19. The Court need not find ill will or malice to reach this conclusion, although the circumstances may well support such

---

[7]    Although not providing its actual rationale for applying the litigation hold, the IRS does express concern that work on TPTP's application by IRS employees "might subject them to potential personal liability." Opp. at #9120. However, this statement could be said about any government duty performed by any government employee. In any context, the possibility of liability depends solely on the actual actions taken by that employee. TPTP has confidence that IRS employees can perform their duties without engaging in viewpoint discrimination against TPTP or retaliating against TPTP because of its viewpoint or decision to bring this lawsuit.

[8]    The IRS also repeats its assertion that the September 12, 2013 letter from Plaintiffs' counsel instructed it to "cease working on TPTP's application." Opp. at #9121-22. As detailed in the Motion, that is an unreasonable interpretation of the letter—reflecting, perhaps, the IRS's preferred outcome—and still cannot justify continued delay after TPTP's deposition on April 15, 2015, or after the Court's hearing on September 24, 2015. *See* Mot. Prelim. Inj. at #8709-10 (also addressing the IRS's assertion that it cannot communicate through counsel).

16

a finding. Instead, it need only find that the IRS's adverse act "was motivated at least in part by the plaintiff's protected conduct," *i.e.*, that "there is a causal connection" between the adverse action and the protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The IRS itself has provided this causal connection, stating that it "halted work on the application" because TPTP brought this lawsuit. *See* Lothamer Decl. at ¶ 5, at #8148 ("[T]he IRS suspended processing TPTP's application pending further instructions from the Department of Justice or the conclusion of this litigation, whichever comes first.").

There is a reason that this is not how the government usually acts. The First Amendment protects TPTP's ability to petition this Court for redress of its grievances, and the government cannot take action that "threatens to inhibit the exercise of th[at] protected right." *Thaddeus-X*, 175 F.3d at 406 n.9. If the IRS were permitted to stay an entity's application if that entity sues the IRS for unconstitutional delay, the IRS would defeat the very grievance sought to be redressed by the judiciary, as no rational actor would expend resources in litigation only to seal its fate of perpetual delay. Litigants would be forced to abandon their claims (as the IRS now seeks here), or more likely, never petition a court for redress. The IRS's discretionary decision to stay TPTP's application violates the First Amendment because it punishes TPTP for exercising its constitutional rights.

## III.  The Remaining Factors Support Issuance of a Preliminary Injunction

The remaining factors—irreparable harm, the balance of harms to others, and the public interest—each support issuance of preliminary injunctive relief. TPTP continues to suffer from two forms of harm: (1) harm to its First Amendment rights due to the IRS's conduct; and (2) harm to its organizational efficacy. It is well settled that "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief," and the

IRS's denial of harms to its organizational efficacy do not negate TPTP's testimony to the contrary. *See* Mot. Prelim. Inj. at #8719-20; TPTP Dep., at 28:20-29:16 (Apr. 15, 2015) (Doc. #194-16). The IRS's non-discriminatory and non-retaliatory exercise of its statutory duties is in the public interest and would not cause harm to others.

## Conclusion

Plaintiffs respectfully request that the Court issue a preliminary injunction to halt the IRS's continuing conduct that causes it irreparable harm. TPTP is prepared to post bond in the amount found appropriate by the Court, but respectfully requests that a bond not be required or set in the amount of $1.00. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978) ("[W]e believe it was error for the judge, not necessarily to have failed to require a bond in any particular amount, but to have failed to exercise the discretion required [under] Rule 65(c) by expressly considering the question of requiring a bond.").

Dated: April 1, 2016                    Respectfully submitted,

                                        **GRAVES GARRETT, LLC**

                                        */s/ Edward D. Greim*
                                        Edward D. Greim (*pro hac vice*)
                                        Todd P. Graves (*pro hac vice*)
                                        Dane C. Martin (*pro hac vice*)
                                        1100 Main Street, Suite 2700
                                        Kansas City, MO 64105
                                        Telephone: (816) 256-3181
                                        Fax: (816) 256-5958
                                        edgreim@gravesgarrett.com
                                        tgraves@gravesgarrett.com
                                        dmartin@gravesgarrett.com

                                        Christopher P. Finney (OH Bar No. 0038998)
                                        FINNEY LAW FIRM LLC
                                        2623 Erie Avenue
                                        Cincinnati, OH 45208
                                        Telephone: (513) 533-2980
                                        Fax: (513) 533-2990
                                        Chris@finneylawfirm.com

                                        David R. Langdon (OH Bar No. 0067046)
                                        *Trial Attorney*
                                        Joshua B. Bolinger (OH Bar No. 0079594)
                                        LANGDON LAW, LLC
                                        8913 Cincinnati-Dayton Road
                                        West Chester, OH 45069
                                        Telephone: (513) 577-7380
                                        Fax: (513) 577-7383
                                        dlangdon@langdonlaw.com
                                        jbolinger@langdonlaw.com

                                        Bill Randles (*pro hac vice*)
                                        Bev Randles (*pro hac vice*)
                                        RANDLES & SPLITTGERBER, LLP
                                        N. Cypress Avenue
                                        Kansas City, MO 64119
                                        Telephone: (816) 820-1973
                                        bill@billrandles.com
                                        bev@billrandles.com

                                        *Counsel for Plaintiffs*

19

## <u>Certificate of Service</u>

     The undersigned attorney hereby certifies that, on April 1, 2016, the foregoing document was served the Court's CM/ECF electronic notification system to all counsel of record.

                          */s/ Edward D. Greim*
                          Attorney for Plaintiffs