**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| NORCAL TEA PARTY PATRIOTS, *et al.*, | Case No. 1:13-cv-000341 |
| Plaintiffs, | Judge Michael R. Barrett |
| v. | Oral Argument Requested |
| INTERNAL REVENUE SERVICE, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW (1) IN SUPPORT OF CERTAIN FORMER INDIVIDUAL MANAGEMENT DEFENDANTS' MOTION TO SEAL AND (2) IN OPPOSITION TO THE CINCINNATI ENQUIRER'S MOTION TO UNSEAL**

The United States and Plaintiffs have reached a settlement, and as such, the Court will not consider the deposition testimony of Lois Lerner and Holly Paz or summary judgment materials quoting from them to adjudicate any party's substantive legal rights.  This means that the depositions and summary judgment materials are not judicial documents giving rise to a presumption of public access.  Releasing them now would serve no legitimate function – but their public dissemination would threaten the physical safety of Mss. Lerner and Paz and of their loved ones.  As courts nationwide have recognized, such concerns override any public interest and meet not only the lower "good cause" standard that applies here to the sealing of Mss. Lerner's and Paz's deposition transcripts and briefing citations thereto, but also the heightened "compelling reasons" standard on which the Cincinnati Enquirer mistakenly bases its Motion to Unseal (*see* ECF 386).

Accordingly, Mss. Lerner and Paz respectfully request that the Court (1) seal their deposition transcripts (filed at ECF 355-17, 355-18, 375-2, 375-3, 375-4) and the related filings referencing the transcripts (*i.e.*, the unredacted version of the United States' Statement of Proposed Undisputed Material Facts in Support of its Motion for Summary Judgment on Class Action Claim (ECF No. 357), the unredacted version of Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment (ECF No. 375); and the unredacted version of  Plaintiffs' Statement of Material Facts and Response to IRS's Statement of Proposed Undisputed Facts (ECF No. 375-1)); and (2) deny the Cincinnati Enquirer's Motion to Unseal.

<u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

Lois Lerner and Holly Paz were among 18 individuals sued by Plaintiffs in this case in 2013.  *See* ECF 1, Compl., ECF 71, Second Am. Compl.  Since the inception of this case, and the controversy that led to its filing, Mss. Lerner and Paz have been subjected to public harassment and death threats that have caused them to take measures to protect themselves and their families.  ECF 331, at Page ID# 11009–11012, Mem. of Law in Supp. of Mot. for Protective Order; *see also* ECF 332, Decl. of Lois Lerner; ECF 333—333-10, Decl. of Michael Miles and accompanying exhibits; ECF 334—334-3, Decl. of Holly Paz and accompanying exhibits.  Both Mss. Lerner and Paz were compelled to contact the authorities about the threats. *Id.*  The Treasury Inspector General for Tax Administration even placed Ms. Lerner's entire premises under video surveillance and assigned her a security detail; it removed the cameras just last year.  ECF 331, at Page ID# 11010; ECF 332, at Page ID# 11022–23.

Plaintiffs and other similarly situated groups have fueled the fire leading to these issues. Indeed, Mark Meckler, the head of the organization funding this very litigation has referred to

IRS employees as "thugs" and exulted that "[w]e're going to have a lot of fun abusing these government employees!"[1]

At the very end of discovery, in June 2017, after having deposed at least 21 individuals, all of whom were former or current IRS employees, Plaintiffs deposed Ms. Lerner and deposed Ms. Paz for a second time.[2] Mss. Lerner and Paz were willing to cooperate and have their depositions taken, but were understandably concerned that the public dissemination of their deposition testimony would expose them and their families to harassment and threats of physical harm. Thus, Mss. Lerner and Paz moved on April 12, 2017 for a protective order requiring that their depositions be kept confidential and restricting access and dissemination of their transcripts to only the attorneys of record in this action. ECF 330-334. In their motion, Mss. Lerner and Paz extensively documented the harassment and death threats they have faced since the litigation began in May 2013. ECF 331, at Page ID# 11009–11012; *see also* ECF 332-334. The United States did not oppose that motion.

The Court issued a Protective Order on May 17, 2017, which allowed Mss. Lerner and Paz to designate their depositions as "Confidential—Attorneys Eyes Only." ECF 345, at Page ID# 11255. Per that Order, such a designation would serve to "restrict access, dissemination, and use" of the designated materials to counsel for Plaintiffs, Defendants, and Mss. Lerner and Paz in this action.[3] ECF 345, at Page ID# 11255. The Court's Order also provided that Mss.

---

[1] June 30, 2013, Speech of Mark Meckler, President of CSG, to Nevada County Tea Party, https://www.youtube.com/watch?v=VoSfgZRgXGE, at 45:05, 48:55; *see also* ECF No. 344, at Page ID# 11237, Reply Br. in Supp. of Certain Former Individual Management Defs.' Mot. for a Protective Order.

[2] Plaintiffs previously deposed Ms. Paz on March 17, 2017 during class certification discovery, subject to an Agreed Protective Order (ECF 138).

[3] The Court subsequently modified its prior Order of May 18, 2017, by Order dated July 21, 2017. *See* ECF 353. That Order, *inter alia*, expanded access to Ms. Lerner's and Paz's deposition transcripts, including the references to those transcripts in the summary judgment filings, to include certain

Lerner and Paz could later seek to seal their deposition testimony if any litigant subsequently sought to reference their testimony in subsequent filings. *Id.* Plaintiffs deposed Mss. Lerner and Paz, and Mss. Lerner and Paz designated their deposition transcripts and testimony as "Confidential—Attorneys Eyes Only," pursuant to the Court's May 18, 2017 Order.

Between July 21, 2017 and August 2, 2017, the United States filed a Motion for Summary Judgment on Class Action Claim (ECF 364), a brief in support of its Motion (ECF 364-1), and all supporting materials publicly, except that the United States (1) filed a sealed version and corresponding public, redacted version of its Statement of Proposed Undisputed Facts, which redacted references to Mss. Lerner's and Paz's depositions (ECF 357, 364-2), and (2) filed two exhibits (out of 76 total), comprised of Mss. Lerner's and Paz's deposition transcripts, under seal (ECF 355-17, 355-18). Thus, virtually all of the United States' papers were publicly filed. *See* ECF 354-357, 364.

On September 8, 2017, Plaintiffs filed both sealed and redacted public versions of their (1) Opposition to the United States' Motion for Summary Judgment and (2) Statement of Material Facts and Response to the IRS's Statement of Proposed Undisputed Facts. ECF 372, 373, 375, 375-1.[4] Only a line-and-a-half of the public version of Plaintiffs' 42-page opposition brief is redacted, ECF No. 372, Page ID# 13816, and the public version of the Statement of Facts is only moderately redacted, ECF 373. Plaintiffs also filed *157 exhibits* in support of their Opposition, and *only three* of those exhibits – Ms. Lerner's deposition transcript and Ms. Paz's

---

representatives of the named Plaintiffs and certain representatives of the Internal Revenue Service, but only for the limited purposes outlined in the Order.

[4] Plaintiffs subsequently filed an Unopposed Motion to File Amended Copy of Additional Statement of Facts and Response to the IRS's Statement of Facts Under Seal, seeking leave to file an amended copy of their redacted and sealed Additional Statement of Facts and Response to the IRS's Statement of Facts. ECF 381. That motion remains pending.

two deposition transcripts (ECF 375-2, 375-3, 375-4) need to be sealed. Thus, as with the United States' summary judgment materials, the vast majority of Plaintiffs' opposition materials are publicly available.

The United States never filed a reply brief in connection with its Summary Judgment Motion, as the parties reached a settlement in October 2017, resolving all remaining claims, both individually and on behalf of all class members. ECF 388.

On October 25, 2017, the Cincinnati Enquirer filed a motion seeking to unseal (1) the unredacted version of Plaintiffs' Opposition brief, and (2) the unredacted version of Plaintiffs' Statement of Material Facts and Response to the IRS's Statement of Proposed Undisputed Facts. ECF 386. Plaintiffs support the Enquirer's motion and, despite having settled the case, Plaintiffs' counsel has been publicly vocal about his desire to have the depositions unsealed. In a recent interview with the Cincinnati Enquirer—the same organization now seeking to unseal Plaintiffs' summary judgment materials—Mr. Edward Greim is cited as saying that Plaintiffs also want the depositions unsealed."[5]

Although the Government did not oppose Mss. Lerner's and Paz's earlier Motion for Protective Order, on November 9, 2017, Travis Greaves, a Deputy Assistant Attorney-General in the Tax Division who has not appeared in this case but apparently led the United States' settlement negotiations with Plaintiffs, informed the parties by email that the United States does not oppose the Cincinnati Enquirer's Motion to Unseal and supports disclosure of Mss. Lerner's and Paz's depositions.

---

[5] James Pilcher, *IRS settles tea party cases for millions and an apology*, Cincinnati Enquirer, Oct. 26, 2017, https://www.cincinnati.com/story/news/politics/2017/10/26/irs-settles-tea-party-cases-millions-and-apology/802368001/; *see also* Dan Horn, *IRS execs: Our lives at risk in tea party case*, Cincinnati Enquirer, May 12, 2017, https://www.cincinnati.com/story/news/politics/2017/05/12/irs-execs-lives-risk-tea-party-case/101591538/ ("that this is a matter of great public interest and there is no legal basis for sealing the depositions or the arguments about whether the depositions should be sealed").

On October 26, 2017, this Court stayed all current case deadlines pending review of the parties' proposed settlement.  ECF 390.  On November 13, 2017, the parties submitted a joint motion to establish a briefing scheduling regarding the sealing issues.  ECF 391.

## ARGUMENT

Mss. Lerner and Paz respectfully request that (1) the Court seal their deposition transcripts, as well as the unredacted versions of the Plaintiffs' summary judgment opposition brief and the parties' respective statements of fact quoting the deposition transcripts, and (2) deny the Cincinnati Enquirer's Motion to Unseal.  As discussed more fully below, in the context of this case—where the deposition transcripts and materials citing the transcripts were filed with the Court only in connection with a motion that will never be adjudicated—there is no public right of access to the deposition materials.  Good cause for the requested sealing exists because the public dissemination of their deposition testimony would threaten the physical safety of Ms. Lerner, Ms. Paz, and their families.  Moreover, even if there is a presumptive right of access (and there is not), the voluminous record of harassment and physical threats to Mss. Lerner and Paz and their families during the pendency of this litigation provides a compelling reason to seal the materials.

**I.    The Deposition Transcripts and Summary Judgment Materials Are Not Judicial Documents and Good Cause Exists for Sealing**

The Court will not use the deposition transcripts or summary judgment materials to determine any party's legal rights given that the case has settled.  This important fact means that they are not judicial documents which would trigger heightened scrutiny under *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016), before sealing.  Instead, the Court can seal them upon a showing of good cause—a standard easily met here.

## A. The Court Will Not Use the Deposition Transcripts or Summary Judgment Materials to Adjudicate Substantive Rights

The Cincinnati Enquirer argues in its Motion to Unseal that Plaintiffs' summary judgment opposition brief and statement of facts do not merit sealing because the standard for sealing court records discussed in *Shane Group*, 825 F.3d at 305–06, has not been met. ECF 386, Page ID# 18884. This argument mistakenly assumes that these materials are "judicial documents" giving rise to the presumption of public access. They are not. Only those documents used to adjudicate substantive legal rights are judicial documents. *See In re Providence Journal Co.*, 293 F.3d 1, 9–10 (1st Cir. 2002) ("It follows, then, that the common-law right of access extends to 'materials on which a court relies in determining the litigants' substantive rights.'") (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986)); *Washington Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897, 905 (D.C. Cir. 1996) (finding that a document was not a judicial document if it "for one reason or another, do[es] not eventuate in any official action or decision being taken.").

Here, the Court did not use the summary judgment materials or deposition testimony quoted therein to determine the parties' legal rights because the United States and Plaintiffs reached a settlement. They are, therefore, not judicial documents. That means that *Shane Group*, which covers "adjudicative" material by its terms, does not govern here. 825 F.3d 299, 305 (6th Cir. 2016). Instead, when analyzing whether Mss. Lerner's and Paz's deposition testimony should be sealed (*i.e.*, the references in the Plaintiffs' summary judgment opposition and the parties' statement of facts, and the transcripts submitted as exhibits to the parties' briefs), the Court should apply the same good cause standard it used when adjudicating Mss. Lerner's and Paz's prior motion for a protective order during the discovery phase of this case. *Flagg v. City of Detroit*, 268 F.R.D. 279, 310 n.9 (E.D. Mich. June 24, 2010) (rejecting the argument that

7

a deposition was a judicial document and defending a prior decision applying the good cause standard to seal it); *Bd. of Trs. of Ken Lusby Clerks & Lumber Handlers Pension v. Piedmont Lumber & Mill Co.*, No. 13-cv-03898-HSG, 2015 U.S. Dist. LEXIS 43895, at *8 (N.D. Cal. April 2, 2015); *Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 519 (E.D.N.Y. 2011) (considering whether a report it decided was not a judicial document should be sealed for good cause).

In fact, treating the deposition transcripts and summary judgment filings quoting those transcripts as judicial documents would constitute reversible error. *United States v. El-Sayegh*, 131 F.3d 158, 162 (D.C. Cir. 1997).[6] In *El-Sayegh*, a defendant accepted a plea agreement—which was filed under seal—before withdrawing the guilty plea. *Id.* at 160. The government then moved to dismiss the indictment. *Id.* When media intervenors sought to unseal the agreement, the district court found that the agreement implicated the public's right to access court documents. *Id.* Consequently, it intended to make the agreement public. *Id.* The D.C. Circuit reversed. *Id.* Because the district court never used the plea agreement in an adjudicatory capacity, the D.C. Circuit found no public right to access implicated. *See id.* at 163. Just as the plea agreement could not lead to a decision on the merits because the defendant withdrew it in *El-Sayegh*, the summary judgment materials and deposition transcripts cannot lead to a decision on the merits here because the parties have settled. And, just as no right of public access attached to a plea agreement that was not used to adjudicate substantive legal rights in *El-Sayegh*, no right of public access attaches to the summary judgment materials and deposition transcripts here, which will not be used to adjudicate substantive legal rights.

---

[6] *El-Sayegh* should carry particular weight with the Court given that the Sixth Circuit has cited it with approval. *United States v. Miami Univ.*, 294 F.3d 797, 822–23 (6th Cir. 2002) (citing *El-Sayegh* to support its holding that the First Amendment did not attach to student disciplinary proceedings).

**B.**     **Sealing the Deposition Transcripts and Summary Judgment Materials Referencing Them Meets the Standard for Good Cause**

Because the deposition transcripts and summary judgment materials quoting from them are not judicial documents, the Court may seal them upon a showing of good cause. *Flagg*, 268 F.R.D. at 310 n.9; *Bd. of Trs. of Ken Lusby Clerks & Lumber Handlers Pension*, 2015 U.S. Dist. LEXIS 43895, at \*8; *Dorsett*, 762 F. Supp. 2d at 519. Good cause exists, *inter alia*, where, as here, a party credibly demonstrates that publicly disseminating information will lead to threats of physical harm. *E.g., Fears v. Kasich (In re Ohio Execution Protocol Litig.)*, 845 F.3d 231, 237 (6th Cir. 2016) (good cause existed to prevent the release of information that would identify the supplier or manufacturer of lethal injection drugs in a lawsuit challenging Ohio's execution protocols, as threats had been made against similar manufacturers in Oklahoma).

As noted above, Mss. Lerner and Paz previously provided extensive documentation of the harassment and death threats they faced when the events giving rise to this lawsuit received considerable media attention. They also demonstrated that the public dissemination of their deposition testimony would expose them and their families to harassment and a credible risk of violence and physical harm. For efficiency, Mss. Lerner and Paz incorporate all arguments made and evidence submitted in support of their prior Motion for Protective Order, which the Court granted in relevant part on May 18, 2017. *See* Mot. for a Protective Order and supporting materials, ECF 330, 331, 332, 333, 334; Reply Br. in Supp. of Mot. for Protective Order, ECF 344. In short, good cause exists for sealing Mss. Lerner's and Paz's deposition testimony and references thereto in summary judgment filings to preserve the safety of Mss. Lerner and Paz and their families and, hopefully, prevent an avoidable tragedy.

9

II.     **Even Assuming the Summary Judgment Materials and Transcripts Are Judicial Documents, Credible Threats of Physical Harm Provide Compelling Reasons to Override the Public's Access**

Even assuming the deposition transcripts and summary judgment materials quoting them are judicial documents (and they are not for the reasons stated above), the extensive record of harassment and death threats provides a compelling reason for the requested sealing, which would overcome the public's common law right to access under the heightened standard discussed in *Shane Group.* 825 F.3d at 305 (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)).  Moreover, such a seal is narrowly tailored and would not prejudice Plaintiffs in any way.

A.     **Settled Law Provides That the Need to Preserve Physical Safety Outweighs the Public's Right to Access Judicial Documents**

Individuals have a fundamental right to personal security.  *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062–63 (6th Cir. 1998) (collecting cases).  It is little wonder, then, that the public's presumptive right to access judicial documents yields to credible safety concerns.  *E.g.*, *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (reversing a district court's decision not to allow plaintiffs alleging an Establishment Clause violation to proceed anonymously where they might face "violent reprisals" that outweighed the usual presumption in favor of public access to court records and documents); *United States Tobacco Coop., Inc. v. Big S. Wholesale of Va.*, No. 5:13-cv-00527-F, 2016 U.S. Dist. LEXIS 97450, at *6–*7 (E.D. N.C. July 26, 2016) (granting a motion to seal court documents where the court found the potential for physical harm and harassment if the documents were publicly disclosed, and that safety concerns outweighed the public's presumptive right to access the information); *United States v. McCraney*, 99 F. Supp. 3d 651, 659 (E.D. Tex. 2015) (finding that disclosing the identities of individuals who cooperated with the government put them at risk of "extortion, injury, and death," and that this risk

outweighed the public's right to access the information); *Dish Network, L.L.C. v. Sonicview USA, Inc.*, No. 9-cv-1553-L, 2009 U.S. Dist. LEXIS 73857, at \*2–\*4 (S.D. Cal. Aug. 20, 2009) (finding that concerns about confidential informants' safety provided compelling reasons to redact their names and overcame a "strong presumption of access to judicial records") (internal quotation marks and citation omitted).

An individual's right to safety is so important that it outweighs the public's presumptive right of access even where indisputably important information is at issue. *See United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272, 1274 (2d Cir. 1975) (reversing a district court's decision that closing a criminal trial during the testimony of two undercover officers was inappropriate after finding that physical safety concerns outweighed the right to a public trial even though they were the two key government witnesses and would, therefore, have allowed the public to assess the defendant's guilt); *see also Ctr. for Nat'l Sec. Studies v. United States DOJ*, 215 F. Supp. 2d 94, 106 (D.D.C. 2002) (finding that concerns that releasing detainee names would cause them a risk of physical harm outweighed an essential public interest in learning whether the government was carrying out its power to arrest and detain legally).

### B. Mss. Lerner and Paz Have Demonstrated That Publicizing Their Participation in This Litigation Poses a Credible Safety Risk

The case for sealing the deposition transcripts and summary judgment materials is even stronger here than it was in the cases cited above. Those courts sealed judicial records to prevent public exposure from endangering individuals' lives based entirely on predictions about what might happen in the future. In *Stegall*, there was no record of harassment or violence against the plaintiffs, but the court allowed them to proceed anonymously after predicting that publicity *could* put them at risk. *See Stegall*, 653 F.2d at 186. The court in *Center for National Security Studies* allowed the government to withhold the identities of detainees based on the

11

government's assertion that revealing the identities "*could* subject them to physical danger both in the United States and in their home countries." 215 F. Supp. 2d at 106 (emphasis added). *See also McCraney*, 99 F. Supp. 3d at 659 (same); *Big S. Wholesale of Va.*, No. 5:13-cv-00527-F, 2016 U.S. Dist. LEXIS 97450, at *6-*7 (same); *Dish Network L.L.C.*, 2009 U.S. Dist. LEXIS 73857, at *2–*4 (same).

Here, by contrast, the Court need not make a prediction to determine that public exposure will present a safety risk in the future. It need only look at the factual record in this case. Whenever Mss. Lerner and Paz have been in the media spotlight, they have faced death threats and harassment. Mem. of Law in Supp. of Mot. for Protective Order, ECF 331, Page ID# 11009-11012; *see also* ECF 332-334. This lawsuit has directly led to much of the coverage they received. Reply Br. in Supp. of Mot. for Protective Order, ECF 344, Page ID# 11229. Indeed, Plaintiffs themselves have aggressively promoted the very caricatures of Mss. Lerner and Paz in the public consciousness that have inspired many of the threats they received. When describing this litigation on a talk radio show, Mr. Meckler, president of the organization funding this lawsuit, bragged that he had hired an attorney "who will go at the IRS like a bulldog prosecutor after a gang of criminal thugs…."[7] In a speech just over a month later, Mr. Meckler explicitly claimed that the lawsuit is an effort "to treat the IRS like the criminal thugs they are."[8] These words matter. They have created a fertile environment where threats and harassment against Mss. Lerner and Paz have flourished.

Moreover, public exposure will put innocent bystanders, namely Mss. Lerner's and Paz's family members (including young children), at risk, too. That fact alone provides an important

---

[7] The Hugh Hewitt Show, *From Mark Meckler re: SueTheIRS.com* (May 26, 2013), http://www.hughhewitt.com/from-mark-meckler-re-suetheirs-com/.

[8] *See* June 30, 2013, Speech of Mark Meckler, President of CSG, to Nevada County Tea Party, https://www.youtube.com/watch?v=VoSfgZRgXGE.

reason to seal the depositions and summary judgment pleadings quoting them.  *See McCraney*, 99 F. Supp. 3d at 659 (refusing to disclose identities of individuals who had cooperated with the government because "such disclosures are very likely to endanger prison staff, and deputy marshals involved in transporting prisoners, as these officials have a duty to intervene when an inmate assaults a suspected cooperator").  Because publicity will renew the threats and harassment—and create a risk that someone will succeed in following through—Mss. Lerner and Paz have presented compelling reasons to override any presumptive right (and there is none) of the public to access their deposition transcripts and the summary judgment materials quoting them.

### C. Sealing the Deposition Transcripts and Summary Judgment Materials is Narrowly Tailored

When there is only one realistic option to prevent public exposure from endangering individuals, that option is by definition narrowly tailored.  *See United States v. Raffoul*, 826 F.2d 218, 226 (3d Cir. 1987) (declining to vacate the sealing of testimony transcripts on the grounds that the seal was not narrowly tailored after observing that providing cautionary instructions or redacting names would not suffice to prevent the risk of physical harm); *McCraney*, 99 F. Supp. 3d at 659–60 (finding that withholding disclosure of information that would publicly identify individuals who had cooperated with the government was narrowly tailored).

Here, returning Mss. Lerner and Paz to the media spotlight places them at risk, regardless of what they actually said in those depositions.  The only way to keep this litigation from putting them in the media spotlight is to completely seal the depositions and summary judgment materials quoting them.  *See United States v. Hernandez*, 608 F.2d 741, 748 (9th Cir. 1979) (affirming a trial court's decision to exclude all spectators from the testimony of the government's lead witness in a criminal trial when there was evidence suggesting that witness or

13

his family could be in physical danger if his testimony were public without knowing the substance of that testimony).  Therefore, sealing the deposition transcripts and summary judgment materials quoting them is narrowly tailored.

>  D.  **The Parties Will Suffer No Prejudice From Sealing the Depositions or Summary Judgment Materials**

Because the parties have settled their dispute, publicizing Mss. Lerner's and Paz's depositions and the materials quoting them will necessarily have *no* effect on the parties' litigation positions or the now-settled issues in any way.  The publicity that Plaintiffs seek is self-serving and purportedly would be used for further fundraising or other objectives.

Similarly, the requested sealing will in no way prejudice the United States.  Although Mr. Greaves, a recent political appointee, has indicated that the United States now believes the public interest supports disclosure of the depositions, there are myriad other ways the public can learn about the incidents giving rise to this litigation, and in any event, the personal safety concerns discussed above clearly override any interests supporting disclosure.  Moreover, there is a profound unfairness for the Government taking a politically-motivated stance against its former and current employees at this stage of the proceedings.

> III.  **At Minimum, the Court Should Seal Portions of the Transcripts Not Cited in the Summary Judgment Materials**

Even if the Court declines to seal the excerpts from Mss. Lerner's and Paz's depositions that are referenced in Plaintiffs' summary judgment opposition brief and the parties' respective statements of facts, it should seal those portions of the deposition transcripts not referenced in these summary judgment filings.  While it is true that the United States and Plaintiffs filed the entire deposition transcripts as exhibits to their briefs pursuant to S.D. Ohio Rule 7.2(e) (rather than filing solely the excerpts cited in the Plaintiffs' opposition brief and/or the parties' respective statements of fact), those portions of the transcripts not cited in the summary

judgment briefs or statements of fact will necessarily have *no role* in the Court's adjudication of the legal issues, even if the Court finds that the portions quoted in the summary judgment pleadings *are* "judicial records."  Therefore, those portions of the deposition transcripts not cited in the summary judgment pleadings would not constitute a judicial document to which the public right of access attaches and should be sealed.  *See Bd. of Trs. of Ken Lusby Clerks & Lumber Handlers Pension*, 2015 U.S. Dist. LEXIS 43895, at *8–*9 (holding that certain sections of an expert financial report used as an exhibit in a summary judgment motion were unrelated to the issues the motion raised and therefore did not give rise to the presumption of public access to court documents); *Epstein v. Epstein*, No. 14 C 8431, 2017 U.S. Dist. LEXIS 116505, at *10 (N.D. Ill. July 26, 2017) (observing that the right of public access attaches "particularly [to] those documents upon which courts rely in reaching their rulings.").[9]

## **CONCLUSION**

For the foregoing reasons, Mss. Lerner and Paz ask the Court to (1) grant their Motion to Seal; (2) seal their deposition transcripts (as filed by the United States and Plaintiffs as exhibits to their summary judgment submissions), as well as the unredacted version of the United States' Statement of Proposed Undisputed Material Facts in Support of its Motion for Summary Judgment on Class Action Claim, the unredacted version of Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, and the unredacted version of  Plaintiffs' Statement of Material Facts and Response to IRS's Statement of Proposed Undisputed Facts; and (3) deny the Cincinnati Enquirer's Motion to Unseal.

---

[9] Similarly, the videotape of Mss. Lerner's and Paz's depositions is not a judicial document.  Moreover, even if the Court considers the depositions to adjudicate substantive legal rights, it would consider the written portions cited in the pleadings, not the videotape.  Therefore, "the videotape itself [of the deposition] is not a *judicial record* to which the common law right of *public access* attaches." *United States v. McDougal*, 103 F.3d 651, 656 (8th Cir. 1996) (emphasis added).

Dated:  November 16, 2017

Respectfully Submitted,

/s/ Brigida Benitez
Mark Hayden, Trial Attorney (0066162)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
E-mail: mhayden@taftlaw.com

 -and –

Brigida Benitez (admitted *pro hac vice*)
Catherine Cockerham (admitted *pro hac vice*)
Marcus A. Gadson (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
E-mail: bbenitez@steptoe.com
E-mail: ccockerham@steptoe.com
Email:  mgadson@steptoe.com

*Counsel for Former Individual Management*
*Defendants Lois G. Lerner and Holly Paz*