**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

| | | |
|---|---|---|
| NORCAL TEA PARTY PATRIOTS, et al., | ) | |
| ON BEHALF OF THEMSELVES, | ) | |
| THEIR MEMBERS, and THE CLASS | ) | |
| THEY REPRESENT, | ) | |
| | ) | Case No. 1:13-cv-00341 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Michael R. Barrett |
| THE INTERNAL REVENUE SERVICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM
IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS
<u>AND EXPENSES, AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES</u>**

Plaintiffs NorCal Tea Party Patriots, South Dakota Citizens for Liberty, Inc., Americans Against Oppressive Laws, Inc., Texas Patriots Tea Party, and San Angelo Tea Party (collectively, "Plaintiffs") hereby submit their Memorandum in Support of their Motion for an Award of Attorneys' Fees, Costs and Expenses, and Incentive Awards to Class Representatives.

## Table of Contents

Introduction ..................................................................................................................1

**Factual and Procedural Background** .................................................................2

**Arguments and Authorities** ..............................................................................5

**I.  The Court Should Award Reasonable Attorneys' Fees Incurred to Prosecute this Action** ........................................................................................................5

    A.  The Settlement Confers Substantial Benefits on the Class .............................8

    B.  The Value to Society Supports an Award of Fees ........................................11

    C.  Any Reimbursement for Services Paid for by the Third Party Funder Is Made On a Contingent Basis .......................................................................13

    D.  The Value of Services Provided Far Exceeds the Requested Reimbursement .............13

    E.  This Case Involved Highly Complex Legal and Factual Issue**s** ....................14

    F.  This Case Involved Highly Experienced, Reputable, and Skilled Attorneys ................15

**II.  The Court Should Award Reimbursement for Out-of-Pocket Litigation Expenses** ......15

**III. Plaintiffs Should Receive Reasonable Incentive Awards** ..................................16

**Conclusion** ....................................................................................................19

i

## **Introduction**

After more than four years, the prosecution of this class action has resulted in substantial benefits for the Class. Because of this lawsuit, Class Members may claim a portion of the $3,500,000 settlement fund obtained to compensate them for the viewpoint discrimination inflicted upon them by the IRS. In addition, this lawsuit has achieved its core purpose of affording Class Members the ability to learn more fully about what happened to them—including critical facts and admissions not previously known or attained—as revealed through hundreds of thousands of documents obtained in discovery and more than thirty sworn depositions of IRS officials. Lastly, following the Settlement, U.S. Attorney General Jeff Sessions released a statement denouncing the IRS's conduct, detailing the reasons why that conduct was wrong, and assuring that "this abuse of power will not be tolerated" in the future. This outcome was made possible by the combined efforts of Plaintiffs, Class Counsel, and the Third Party Funder through years of vigorously contested litigation. To date, no other lawsuit pertaining to the IRS's targeting of Tea Party groups has achieved similar results.

Class Counsel now move for an award of attorneys' fees and litigation expenses to reimburse Citizens for Self-Governance ("CSG"), the third party funder, for a portion of the $3.59 million in fees and expenses it has paid on behalf of the Class. The requested amount of $1.75 million, or fifty percent of the Settlement Fund, represents reimbursement of 49 cents per dollar spent by CSG to achieve these results for the Class. In addition, Class Counsel requests incentive awards of $10,000 each to the named Plaintiffs to compensate them for the time and effort they expended pursuing this Action and fulfilling their respective obligations as Class Representatives. In light of the significant results obtained for the Class, the skill and efforts shown by Plaintiffs and Class Counsel to bring this class action to a successful resolution, and

1

the considerable burden placed on CSG to make this outcome possible, the requested fee and expense and incentive awards are reasonable and should be approved.

## **Factual and Procedural Background**

The outcome achieved for the Class is a direct byproduct of the continuous, hard-fought litigation conducted by Plaintiffs and Class Counsel for more than four years. Plaintiffs previously detailed the litigation history of this case, including the efforts and discussions leading to the Settlement, in their Motion for Preliminary Approval filed on March 13, 2018 (Doc. #313-14). This long history includes more than 400 docket entries reflecting work such as:

- Filing of the putative class action lawsuit on May 20, 2013 (Doc. #1);

- Filing amended class action complaints on August 5, 2013, and December 9, 2013 (Docs. ## 79 & 63);

- Opposing four motions to dismiss filed by the IRS and the Individual Defendants (Docs. ##73, 77, 78, & 79);

- Initial disclosures, case management plans, and discovery plans (Docs. ##30, 109, & 110);

- Briefing on the Motion for Class Certification, including responding to IRS supplemental authority (Docs. ##193, 199, & 220);

- Development and execution of a Notice Plan upon certification of the Class (Doc. #235)

- Motions to Seal and Requests for Protective Orders (Docs. ##137, 139, 191, 231, 279, 283, 304, & 330);

- Opposing two separate Motions for Summary Judgment and associated briefing (Docs. ##212, 233, 244, 364, 372, & 375);

- A Motion to Strike an impertinent filing by the IRS (Doc. #214);

- Briefing on the Motion for Preliminary Injunction, including subsequent litigation about the IRS's post-injunction development letter (Docs. ##237, 263, 301, & 358);

- Opposing Motions for Protective Order filed by IRS agents asserting qualified immunity (Docs. ##279, 283);

- Opposing efforts by Lois Lerner and Holly Paz to seal their transcripts from the public record (Docs. ##339, 395, & 398);

- ▪ Court-ordered Mediation and other efforts to resolve the matter (Docs. ##347, 348, & 351); and

- ▪ Seeking Court approval and related documentation of the Settlement. (Doc. #§313-14).

These filings serve as a repository of publicly available information about the IRS's conduct, reflecting continuous work by Plaintiffs and Class Counsel to summarize facts learned from discovery, apply those facts to the law, and demonstrate why Class Members are entitled to relief.

Through each phase of this litigation, Class Counsel have overcome vigorous litigation by IRS counsel seeking to foreclose the lawsuit or reduce its impact. Many of these efforts occurred during class and merits discovery, during which IRS counsel took every measure to avoid disclosing information about the IRS's treatment of Plaintiffs and the Class. This prompted the Honorable Susan J. Dlott to remark in a December 2014 conference that, "it looks like everything in this case seems to be turning into an argument on discovery. I think we've had more discovery conferences in this case than I've had in any other case this whole year." *In re United States*, 817 F.3d 953, 955 (6th Cir. 2016). More than a year later, Judge Dlott remarked as follows:

> My impression is the government probably did something wrong in this case. Whether there's liability or not is a legal question. However, I feel like the government is doing everything it possibly can to make this as complicated as it possibly can, to last as long as it possibly can, so that by the time there is a result, nobody is going to care except the plaintiffs . . . I question whether or not the Department of Justice is doing justice.

*Id.* The Sixth Circuit echoed this sentiment in March 2016, stating that this "lawsuit has progressed as slowly as the underlying applications themselves: at every turn the IRS has resisted the plaintiffs' requests for information regarding the IRS's treatment of the plaintiff class[.]" *See Id.* at 955. The Sixth Circuit denied a petition for writ of mandamus filed by the IRS seeking to prevent discovery of spreadsheets it had created to track and monitor Class Members. *Id.* at 965.

3

Overcoming the efforts by IRS counsel required substantial outlays of time and expense, increasing the costs and duration of this litigation. The full amount of these costs were absorbed and paid by CSG, and ultimately CSG itself became a target of IRS discovery due to its support of the Class. For instance, during class discovery, the IRS issued a third-party subpoena to CSG and sought to compel the deposition of its President and spokesperson, Mark Meckler. This forced CSG to expend additional resources to retain separate counsel to defend itself—costs that are not included in this application. Ultimately, the Court quashed the subpoena, recognizing that "it's somewhat unusual for the defendant in a case like this to go after this kind of discovery on [] class certification." Tr. at 4:18-5:6 (Sept. 24, 2015), attached as **Exhibit A**. Judge Susan J. Dlott expressed to the IRS that "[it]'s clear to me that your request is burdensome. There's just no way. I mean, you've asked for everything but their used toilet paper." *Id.* at 43:14-16. The IRS later abandoned its arguments after CSG produced Mark Meckler for deposition. *See* Order Granting Class Certification, PageID #8429 n.6 (Jan. 12, 2016) (Doc. #223). Throughout this time, CSG never wavered in its support for the Class, and it continued to fund and facilitate the pursuit of the class claims against the IRS.

In over four years litigating this matter, Class Counsel has incurred $3,589,915.20 in attorneys' fees. *See* Affidavit of E. Greim, at ¶ 11 (Apr. 9, 2018), attached as **Exhibit B**. The litigation expenses incurred in this matter total $231,802.63, reflecting necessary expenditures for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and deposition expenses. *Id.* CSG has paid these attorneys' fees on an hourly basis and has paid all litigation expenses incurred by Plaintiffs and Class Counsel. *Id.* at ¶¶ 10-12. To date, CSG has not received any

reimbursement for the substantial resources it has dedicated to the prosecution of this lawsuit. *Id.* at ¶ 12.

<u>**Arguments and Authorities**</u>

**I.     The Court Should Award Reasonable Attorneys' Fees Incurred to Prosecute this Action**

Courts consistently recognize that "someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as a whole.'" *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 104 (2013) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). This doctrine—referred to as the common fund doctrine—recognizes that "[t]hird-party recoveries do not often come free" and that, without cost sharing, it would amount to a "free ride" by which recipients of benefits "take the fruits while contributing nothing to the labor." *Id.*

Courts typically employ one of two methods for calculating attorneys' fees: the "percentage of the fund" approach or the "lodestar" approach. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993). Under the percentage of fund method, "the Court simply determines a percentage of the settlement to award[.]" *In re Telectronics Pacing Sys, Inc.*, 137 F.Supp.2d 1029, 1041 (S.D. Ohio 2001). In contrast, under the lodestar method, the Court "requires the class counsel to submit a listing of hours and their rates charged per hour," multiplies the hours worked by the attorneys' reasonable hourly rates, and considers whether to apply a "multiplier" based on the complexities of the litigation. *Id.* The Sixth Circuit has recognized that "[t]he lodestar method better accounts for the work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516.

"It is within the district court's discretion to determine the 'appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'" *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (quoting *Rawlings*, 9 F.3d at. 515-16). In general, percentage of the fund is the preferred method for common fund cases. *Rawlings*, 9 F.3d at 516; *see also Kimber Baldwin Designs, LLC v. Silv Comm'n., Inc.*, No. 1:16-cv-448, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) ("In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." (quotes omitted)). However, the Sixth Circuit "require[s] only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. Although the Court has wide discretion in granting an award of attorneys' fees, it must set forth its reasons for "adopting a particular methodology and the factors considered in arriving at the fee." *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings*, 9 F.3d at 516)).

In determining whether the amount of an award is reasonable, the Sixth Circuit instructs courts to consider: (1) the value of the benefit rendered for the class; (2) society's stake in rewarding attorneys who produce such benefits; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of the attorneys involved. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

In this case, Class Counsel seeks reimbursement for CSG under the percentage of fund approach, which is the preferred method for calculating fees from a common fund. *See Rawlings*, 9 F.3d at 516. The requested reimbursement of $1.75 million in fees, or fifty percent of the

settlement fund, represents less than half of the more than $3.59 million paid by CSG to make this outcome possible in the face of vigorous opposition. *See* Ex. A, Greim Aff. at ¶ 11-13. In addition, Class Counsel seeks reimbursement to CSG of $231,802.63 in expenses incurred on behalf of the Class. *Id.*.

The requested fee of $1.75 million, or fifty percent of the Settlement Fund, falls within the range of fees awarded in class actions by courts throughout the country. Courts recognize that fee awards of up to 50% of the gross settlement fund are reasonable. *See* 5 William B. Rubenstein, *Newberg on Class Actions* § 15:83 (5th ed.) ("Usually, 50% of the fund is the upper limit on a reasonable fee award from any common fund, in order to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented."); *see also Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991) (recognizing a fee of up to 50% of the fund as reasonable); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund."); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 910-11 (S.D. Ohio 2001) (same); *In re Telectronics Pacing Sys, Inc.*, 137 F.Supp.2d 1029 (S.D. Ohio 2001) ("[T]he range of reasonableness . . . has been designated as between twenty to fifty percent of the common fund in several cases."); *Miller v. CEVA Logistics USA, Inc.*, No. 13-cv-01321, 2015 WL 4730176, at *8 (E.D. Cal. Aug. 10, 2015) ("[C]ase law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small [at less than $10 million]."). As described in more detail below, each of the *Ramey* factors supports the requested reimbursement of fees and expenses in this case.

A.      **The Settlement Confers Substantial Benefits on the Class**

As previously detailed, the benefits conferred on the Class by the Settlement are substantial. These benefits include a $3,500,000.00 settlement fund which will be used to compensate Class Members for the injuries they suffered. Without this litigation, Class Members simply would not have received monetary compensation for the harms inflicted upon them by the IRS. *See, e.g.*, *Lonardo*, 706 F.Supp.2d at 795 ("But for this litigation, it is a virtual certainty that these consumers would not have received a rebate of any kind."). In addition, years of hard-fought discovery by Class Counsel has resulted in a public repository of information and admissions about the IRS's conduct that did not previously exist. This includes evidence that:

- The IRS primarily targeted "organizations operated by conservatives" and groups that were "[v]ery conservative right leaning, a lot of mention of Tea Party." *See* Pls.' SOF P58, PageID #13862 (Doc. #373);

- Beyond the Tea Party cases, the IRS did not screen and centralize other types of cases based on their viewpoint. *Id.* at SOF P70, at PageID #13864;

- A lawyer overseeing the Tea Party cases in Washington, D.C. alerted her superiors to the improper targeting. She informed them that Applications filed by Class Members were being held by primarily because of their perceived political ideology or political party affiliation rather than any actual political activities. This whistleblower was ignored. *Id.* at SOF P57, PageID #13862;

- Another lawyer in Washington, D.C. informed Holly Paz that the list of Tea Party groups being segregated "appeared to be of a particular political ideology." *Id.* at 125, PageID #13876. The lawyer asked whether there "[w]ere any other political ideology cases included," but never received a response after the recipient of the email was told by his superior to "hold off on this." *Id.* at SOF P125-26, PageID #13877;

- Lois Lerner encouraged the heightened scrutiny of Tea Party cases. After receiving briefing on the viewpoint-based criteria being applied, Lerner instructed her subordinates to increase their scrutiny of the Class rather than correct the illegal conduct. Lerner specifically instructed IRS agents to further research Class Members' activities, require them to make representations on certain issues "in order to pin them down in the future," and implement other forms of heightened scrutiny. *Id.* at SOF P131-134, PageID ##13878-79;

8

- ▪ Also after having been informed of the use of the viewpoint-based targeting criteria, Lois Lerner informed the head of EO Determinations in Cincinnati, Ohio, that "we are handling the cases as we should," which resulted in the IRS continuing to target the Class. *Id.* at SOF P138-39, PageID ##13880-81; and

- ▪ The IRS continued to scrutinize and harass Class Members based on their viewpoint during the pendency of a TIGTA audit and Congressional investigations, well after it claimed to have ceased its conduct. *Id.* at SOF P54, P242, PageID ## 1386, 13904.

Plaintiffs and Class Counsel have described this evidence, which they uncovered through years of hard-fought discovery, throughout their court filings, including their Motion for Class Certification and their Memorandum in Opposition to the IRS's Motion for Summary Judgment. *See* Memo. in Supp. Class Cert. (Aug. 3, 2015) (Doc. #193-1); Pls.' Memo. in Opp. Sum. J. (Doc. ##372-73).

An equally important benefit provided by this lawsuit is its deterrent effect on future governmental misconduct. Through this lawsuit, Plaintiffs and Class Counsel have helped create precedent that, under 26 U.S.C. § 6103, IRS agents may not inspect taxpayer information for improper reasons, such as viewpoint discrimination. *See* Order on Mot. Dismiss, at PageID #1677 (July 17, 2014) ("Plaintiff Groups will be given the opportunity to establish with evidence that IRS officials inspected . . . return information for improper purposes."). They have also helped establish that the IRS violated the First Amendment when it treated Plaintiffs and the Class differently from other applicants because of their viewpoints. *See, e.g.*, *Id.* at PageID 1673-74; *see also* Order Granting Preliminary Injunction against IRS, at PageID ##9912-13 (Nov. 4, 2016) (enjoining the IRS based on a strong showing under Count II that the IRS was discriminating against TPTP, a representative plaintiff, on the basis of its political viewpoint).

Beyond establishing important legal precedent, this case has solidified the boundaries of appropriate and lawful conduct by IRS officials. For instance, at early stages in the litigation, the

9

IRS affirmatively argued that its use of viewpoint-based criteria was relevant to making a determination of tax-exempt status. *See* IRS Resp. to Rog. No. 15, PageID ##16286-90 (Doc. #373-5) ("[T]he criteria are relevant to the question of whether an entity has engaged in political campaign intervention."). Despite a TIGTA audit and Congressional investigations on the subject, it remained the official, sworn position of the IRS that:

- Indicators of ideology or viewpoint, such as a "statement in the case file criticizing how the country is being run," could warrant heightened scrutiny because it meant that the "organization may be more likely to engage in an activity to attempt to affect political change." *Id.*

- Names reflective of an ideology or viewpoint, such as "Tea Party" "912," or "Patriot," could warrant heightened scrutiny, because "an organization's name may indicate the types of activities it is engaging in." *Id.*

As a result of this litigation, the IRS no longer asserts these positions. Specifically, during its sworn deposition under Rule 30(b)(6), the IRS admitted that the Targeting Criteria are irrelevant and have no bearing on whether an organization qualifies for exemption. *See* IRS 30(b)(6) Merits Dep. at 120:17-121:7, PageID #14140 (Doc. #373-3). The IRS now agrees that its targeting of the Tea Party groups based on their viewpoint is wrong, and its admission to that effect has subsequently been repeated both publicly and in other litigation involving its conduct.

Lastly, following Plaintiffs' acceptance of the proposed Settlement, U.S Attorney General Jeff Sessions issued a statement condemning the IRS's actions. In pertinent part, he declared that "it is now clear" that the IRS singled out groups for treatment based on their names or ideological positions, which "disproportionately impacted conservative groups." *See* Ex. B, Memo. in Support Mot. Prelim. Approval (Doc. #414-2). He expressed that these actions were "wrong" and "improper" and confirmed that "[t]here is no excuse for this conduct." *Id.* He concluded his remarks by stating that "today's settlement makes clear that this abuse of power will not be tolerated." *Id.*

It is appropriate for the Court to consider both the monetary and non-monetary benefits of the litigation as a whole for purposes of the fee calculation. *See, e.g.*, Advisory Committee Comment, Rule 23(h) (2003 Amend.) ("[I]t is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fees award."); *see also In re Telectronics Pacing Sys, Inc.*, 137 F.Supp.2d at 1035 (considering non-monetary benefits for purposes of fee award); *In re Dun & Bradstreet Credit Servs. Cust. Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (enhancing fee award based on both monetary and non-monetary benefits conferred on class); *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148, at *6 (S.D. Ohio 2017) (considering non-monetary benefits). The substantial benefits afforded by the Settlement and the litigation as a whole supports the requested reimbursement of fees and expenses.

### B.     The Value to Society Supports an Award of Fees

The societal interest favoring public interest litigation supports the requested reimbursement of fees and expenses. This lawsuit involves issues of great public importance that affects society as a whole. As expressed by the Sixth Circuit, "[a]mong the most serious allegations a federal court can address are that an Executive agency has targeted citizens for mistreatment based on their political views." *See In re United States*, 817 F.3d at 955. This litigation has helped establish standards of permissible conduct by IRS officials and methods for holding them accountable. This benefits all taxpayers who interact with the IRS, regardless of viewpoint or ideology. In addition, Plaintiffs and Class Counsel have facilitated the public release of information, which provides transparency about what occurred. Beyond the substantial record evidence placed into the public docket, this is the only proceeding to date in which pivotal actors such as Lois Lerner and Holly Paz have testified, and Class Counsel have sought to make

that testimony publicly available. *See* Pls.' Mem. Opp. to Mot. for Protective Order (May 5, 2017) (Doc. #339). The Court should consider the overall benefit to the public flowing from this litigation. *See, e.g.*, *Bebchick v. Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C. Cir. 1986) (increasing fee award "to reflect the benefits to the public flowing from this litigation. It is not unreasonable to consider the public benefit of counsel's efforts in determining the level of reasonable compensation.").

Lastly, this lawsuit is a "negative value suit" in which the cost to any individual organization that attempts to enforce the law is disproportionate to its potential individual recovery. *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-MD-2017, 2013 WL 440622, at *5 (S.D.N.Y. Jan. 2013). This prompted Plaintiffs and Class Counsel to pursue this litigation as a class action, affording relief to hundreds of Class Members that, were each of them forced to pursue their cases individually, would be unable to overcome the costs of litigation. *See, e.g.*, Reply in Support of Class Action, PageID ##7643-44 (Doc. #199) (Sept. 14, 2015) (describing why class litigation is superior to other forms of adjudication). By authorizing the requested reimbursement, the Court will facilitate the goal of class actions. *See Lonardo*, 706 F.Supp.2d at 795 ("[T]he Court must ensure that Class Counsel is fairly compensated in order to facilitate the goal of class actions—i.e., to provide a vehicle for collective action to pursue redress for tortious conduct that is not feasible for an individual litigant to pursue.").

The same rationales for compensating attorneys in class actions extend to CSG as third party funder in this action. CSG expended substantial resources to help correct a societal wrong and ensure appropriate relief for the Class. Because many of the Class Members are small, grassroots organizations with limited budgets, this litigation would not have been possible without the generosity and support of the Third Party Funder. By authorizing reimbursement for

a portion of the fees and expenses paid by the Third Party Funder on behalf of the Class, the Court will facilitate the ability of litigants to pursue public interest litigation that would otherwise not be feasible. This factor supports the requested reimbursement of attorneys' fees and expenses paid by CSG.

**C.      Any Reimbursement for Services Paid for by the Third Party Funder was Made on a Contingent Basis**

Throughout this proceeding, the Third Party Funder has paid the hourly attorneys' fees and expenses incurred by Class Counsel while prosecuting this matter. *See* Ex. A, Greim Aff., at ¶ 11. To date, the Third Party Funder has not received any reimbursement for the $3.59 million in fees and $231,802.63 in expenses it has paid on behalf of the Class. *Id.* at ¶ 13. Much like an attorney contingency fee arrangement, the prospect of reimbursement for the Third Party Funder has been solely contingent on a successful outcome for the Class. That contingency has now come to fruition, and Plaintiffs and the Class now enjoy substantial benefits, including the $3,500,000 settlement fund, arising from this litigation. Because the Third Party Funder undertook the financial burden and risk which helped make that outcome possible, this factor supports reimbursing a portion of those fees and expenses to the Third Party Funder. *See US Airways, Inc.*, 569 U.S. at 104 (expressing that, without cost sharing, recipients of benefits would receive a "free ride" in which they "take the fruits while contributing nothing to the labor.").

**D.      The Value of Services Provided Far Exceeds the Requested Reimbursement**

The value of the services provided by Class Counsel supports the requested reimbursement to the Third Party Funder. As previously detailed, Class Counsel have incurred $3.59 million in fees and expenses litigating this matter on behalf of the Class. Ex. A, Greim Aff., at ¶ 12. These fees and expenses were incurred over more than four years of hotly contested litigation, which included substantial written discovery about the IRS's conduct, more than 30

depositions of IRS officials, defending depositions of the named Plaintiffs and the Third Party Funder, and defeating each of the numerous attempts by the IRS to shut down the litigation. *Id.* at ¶¶ 3-7. The value of these services far exceeds the requested $1.75 million reimbursement to the Third Party Funder, which supports approval of the requested reimbursement.

        **E.**       **This Case Involved Highly Complex Legal and Factual Issues**

The factual and legal issues in this case are highly complex. In addition to overcoming multiple dispositive motions, Plaintiffs pursued this litigation on a class-wide basis on behalf of more than 400 entities located throughout the country. This effort required discovery and litigation into the propriety of class certification before any merits discovery could commence. Furthermore, Plaintiffs' claims for violations of § 6103 gave rise to numerous factual complexities, including the interplay between the IRS's discriminatory animus against Tea Party groups and how that affected each aspect of the IRS's tax-exempt determination letter program. The targeting itself spanned many years, took many forms, and involved dozens of agents positioned throughout the IRS. The successful litigation of this matter required thorough discovery and analysis into each of these issues.

Beyond factual complexities, the litigation also presented complicated legal issues. Plaintiffs assert theories of liability under §§ 7431 and 6103 that are unique and involved many issues of first impression. The parties have extensively briefed differing positions on the core elements of an inspection claim, including available defenses to the claim. Lastly, claims against the United States involve various legal complexities not present in most cases, such as immunities, Touhy Regulations, and governmental privileges. These issues were present at each step of the litigation, contributing to the complexity and difficulty of the litigation. This factor supports approval of the requested reimbursement.

**F.     This Case Involved Highly Experienced, Reputable, and Skilled Attorneys**

Class Counsel have litigated this class action since its inception more than four years ago. Graves Garrett, LLC is a firm experienced in complex commercial and class action litigation, and co-counsel David Langdon, Christopher Finney, and Bill Randles have substantial experience litigating complex cases, including matters involving constitutional and statutory law. *See* Ex. A, Greim Aff., at ¶ 4. In its order certifying the class, the Court previously found that Class Counsel had "demonstrated to the Court their intention to be zealous advocates through their arguments and briefing on dismissal, discovery, and class certification motions[.]" Order, PageID #8429 (Doc. #223). Class Counsel respectfully submit that their litigation efforts since that time are consistent with those prior findings. This factor supports the requested reimbursement.

As detailed above, each of the *Ramey* factors supports the requested reimbursement of fees and expenses in this case. This is particularly true under the circumstances, in which the fees paid for by CSG to achieve a successful outcome in this litigation far exceeds the amount of reimbursement requested. Given the substantial monetary and non-monetary benefits afforded by the Settlement, Plaintiffs and Class Counsel respectfully submit that the requested reimbursement is reasonable and should be approved.

**II.     The Court Should Award Reimbursement for Out-of-Pocket Litigation Expenses**

It is appropriate and customary in class action litigation to reimburse for out-of-pocket litigation expenses incurred on behalf of the Class. "It is well established that counsel who create a common fund are entitled to the reimbursement of expense that they have advanced to a class." *See* 2 McLaughlin, *supra*, at § 6.24 (noting that "class counsel is also entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses

15

incurred in prosecuting the action."). This principle is applied in the Sixth Circuit to award reimbursement of litigation expenses and costs. *See, e.g.*, *In re Telectronics Pacing Sys., Inc.* 137 F.Supp.2d 1029, 1036 (S.D. Ohio 2001) (authorizing reimbursement of out-of-pocket expenses incurred litigating the class action). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 469 (C.D. Cal. 2014) (quotes omitted); *see also In re Broadwing*, 252 F.R.D. at 382 ("[R]easonable and necessary expenses, includ[e] photocopying, postage, travel, lodging, filing fees and Pacer expenses, long distance telephone, telecopier, computer database research, depositions expenses, and expert fees and expenses.").

Here, Plaintiffs and Class Counsel request reimbursement to the Third Party Funder of $231,802.63 in litigation expenses necessarily incurred in the prosecution of that lawsuit. These litigation expense are for legal research expenses, printing and copying charges, telephone fees, postal fees, airline and travel costs, filing and service of process fees, food and hotel accommodations, and deposition costs. *Id.* at ¶ 12. These expenses were reasonable, necessary, and directly related to the prosecution of this lawsuit. *Id.* Accordingly, Plaintiffs and Class Counsel respectfully submit that the Court should approve the requested reimbursement of litigation expenses.

## III.    Plaintiffs Should Receive Reasonable Incentive Awards

Class Counsel also apply for incentive awards for each of the Class Representatives to recognize their efforts in bringing and prosecuting this case on behalf of the Class. "Class Representatives who have had extensive involvement in a class action litigation deserve

compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Lonardo v. Travelers Indem. Co.*, 706 F.Supp.2d 766, 787 (N.D. Ohio 2010). "[A]n incentive award is an effective tool to encourage a class member to become a class member and to reward their individual efforts taken on behalf of the class." *Estep v. Blackwell*, No. 1:06CV106, 2006 WL 3469569, at *6 (S.D. Ohio Nov. 29, 2006) (citing *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). In *Hadix v. Johnson*, the Sixth Circuit explained:

> Incentive awards are usually viewed as extensions of the common-fund doctrine, a doctrine that holds that a litigant who recovers a common fund for the benefit of persons other than himself is entitled to recover some of his litigation expenses from the fund as a whole. Thus, when a class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool.

322 F.3d at 898. "Incentive awards, where appropriate, generally range from a few thousand dollars to $85,000." *Liberte Capital Group v. Capwill*, No. 5:99 CV 818, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007) (citing collection of supporting authority).

In determining the propriety of incentive awards, the Court should consider: "(1) the extent to which actions taken by the class representative protect the interests of the entire class and whether those actions resulted in a substantial benefit to the entire class; (2) whether the class representative assumed substantial and indirect financial risk; and (3) the amount of time and effort expended by the class representative in pursuit of the litigation." *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991).

Here, Class Counsel respectfully request that the Court approve incentive awards in the amount of $10,000 for each Class Representative. Each Class Representative has been instrumental to the prosecution and successful resolution of this case, including the creation of the $3,500,000.00 common fund. Ex. A, Greim Aff., at ¶¶ 8-9. Their contribution has been active and meaningful throughout the four-plus years of litigation, from formulation of initial pleadings

17

to discovery, investigation into the IRS's actions, defending against litigation tactics by the IRS, review and contribution to motion practice, and extensive and prolonged negotiations relating to the Settlement. *Id.* Class Representatives have continuously overseen litigation efforts by Class Counsel, including review of court filings and verification of numerous written interrogatories and other discovery requested by the IRS. *Id.* The IRS deposed each Class Representative two times—totaling ten depositions—requiring outlays of time to prepare for the depositions with Class Counsel, give the depositions, and subsequently review the transcripts. *Id.* Further, the Class Representatives devoted substantial effort over a period of several months to prepare for detailed settlement demands, talks, a mediation, and negotiations that followed. None of the Class Representatives' expenditure of time or money was reimbursed.

These actions made certification of the Class possible, which has served to protect Class Members' interests and, ultimately, allows for distribution of relief to every member of the Class that files a valid claim. The amount of time and effort expended by the Class Representatives is considerable. And while their direct financial risk was minimized due to the support of CSG, they took on the risk of challenging a governmental entity that had already discriminated and retaliated against them based on their viewpoint. In fact, at least one Class Representative experienced retaliation for pursuing the lawsuit against the IRS. *See* TPTP's Reply in Support of Mot. Prelim. Inj. (Apr. 1, 2016) (Doc. #263) (detailing retaliation by the IRS as a result of this litigation). Their expenditure of time and resources, as well as the risk of pursuing claims against the IRS, resulted in an excellent outcome for the class that would not otherwise have been achieved. In light of the substantial benefits provided by the Settlement, which the Class Representatives made possible through their efforts, Class Counsel submit that the requested incentive wards of $10,000 are fair and reasonable and should be approved.

## Conclusion

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court enter an order: (1) approving the requested fee award of $1.75 million to reimburse the Third Party Funder, Citizens for Self-Governance; (2) approving the reimbursement of litigation expenses in the amount of $231,802.63; and (3) approving the requested incentive awards of $10,000 to each of the Class Representatives.

Dated: April 9, 2018          Respectfully submitted,

**GRAVES GARRETT, LLC**

*/s/ Edward D. Greim*
Edward D. Greim (*pro hac vice*)
Todd P. Graves (*pro hac vice*)
Dane C. Martin (*pro hac vice*)
J. Benton Hurst (*pro hac vice*)
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
tgraves@gravesgarrett.com
dmartin@gravesgarrett.com
bhurst@gravesgarrett.com

Christopher P. Finney (OH Bar No. 0038998)
FINNEY LAW FIRM LLC
2623 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 533-2980
Fax: (513) 533-2990
Chris@finneylawfirm.com

David R. Langdon (OH Bar No. 0067046)
 *Trial Attorney*
LANGDON LAW, LLC
8913 Cincinnati-Dayton Road
West Chester, OH 45069
Telephone: (513) 577-7380
Fax: (513) 577-7383
dlangdon@langdonlaw.com

Bill Randles (*pro hac vice*)
RANDLES & SPLITTGERBER, LLP
N. Cypress Avenue
Kansas City, MO 64119
Telephone: (816) 820-1973
bill@billrandles.com

***Class Counsel***

## <u>Certificate of Service</u>

The undersigned attorney hereby certifies that, on April 9, 2018, the foregoing document was served the Court's CM/ECF electronic notification system to all counsel of record.

*/s/ Edward D. Greim*
Attorney for Plaintiffs
