# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: April 20, 2022

Mr. Edward Dean Greim
Graves, Bartle, Marcus & Garrett
1100 Main Street
Suite 2600
Kansas City, MO 64105

Re: Case No. 22-3357, *In re: NorCal Tea Party Patriots, et al*
Originating Case No. : 1:13-cv-00341

Dear Sir or Madam,

The petition for writ of mandamus or prohibition has been docketed as case number **22-3357** with the caption listed above. If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

Counsel for petitioner must file an Appearance of Counsel form and, if not admitted, apply for admission to the 6th Circuit Bar by **May 04, 2022**. The forms are available on the court's website.

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/C. Anthony Milton
Case Manager
Direct Dial No. 513-564-7026

cc: Mr. Richard W. Nagel

Case No. _____

RECEIVED
04/19/2022
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**In re:**

**NORCAL TEA PARTY PATRIOTS, SOUTH DAKOTA CITIZENS FOR LIBERTY, INC., AMERICANS AGAINST OPPRESSIVE LAWS, INC, TEXAS PATRIOTS TEA PARTY, AND SAN ANGELO TEA PARTY,**
*Petitioners,*

**LOIS LERNER, HOLLY PAZ, THE INTERNAL REVENUE SERVICE, THE UNITED STATES OF AMERICA, AND THE CINCINNATI ENQUIRER**
*Respondents.*

On Petition for Writ of Mandamus from the United States District Court for the Southern District of Ohio, The Honorable Michael R. Barrett, District Judge
Case No. 1:13-cv-00341

**GRAVES GARRETT LLC**

Edward D. Greim
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com

## **PETITION FOR WRIT OF MANDAMUS**

By failing to rule on pending motions regarding the sealing of certain court records for over three years, the District Court has shielded records of significant public interest from the public eye without issuing an order containing the required findings to do so. The Court's failure or refusal to render the required findings prevents Petitioners from obtaining the relief they seek and warrants the exercise of this Court's mandamus authority. Petitioners ask this Court to issue a writ of mandamus unsealing the records at issue by vacating the District Court's "temporary" protective order and denying Defendants' motion to seal.

In prosecuting their claims, Petitioners deposed Lois Lerner and Holly Paz, key IRS officials in the scandal that sparked the underlying class action litigation. Before their depositions were taken, Lerner and Paz moved for a protective order to prospectively seal the entirety of their deposition transcripts and to restrict dissemination of the sealed transcripts to the attorneys of record. Mtn. for Protective Order, R. 330-331. Over Petitioners' opposition, the Court granted a "limited" protective order permitting Lerner and Paz to designate their depositions as "Confidential- Attorneys' Eyes Only" and limiting dissemination to counsel. Order Granting Protective Order, R. 345, Page ID #11255.[1]

---

[1] Copies of all orders and parts of the record essential to the matters set forth herein are filed contemporaneously with this Petition.

The parties continued briefing the dispute regarding the sealing of the transcripts even as they were finalizing and seeking approval of a settlement. In the Order Granting Final Approval of Class Action Settlement, entered on August 8, 2018, the District Court included an express reservation of its decision regarding whether to unseal the Lerner and Paz transcripts and related materials. R. 431, Page ID #19531. The next day, on August 9, 2018, the Court held an in-person hearing on those issues. Minute Entry for Hearing, R. 432, Page ID # 19533. Lerner and Paz, Petitioner-Plaintiffs, Intervenor the Cincinnati Enquirer, and *amici* appeared through counsel to argue. *Id.* After over an hour of argument, the District Court took the matter under advisement. Later, in November 2018, over Petitioner-Plaintiffs' objection, Lerner supplemented the record (again, filed under seal without findings required by *Shane Group*) alleging she had another reason to fear threats. Supp. Dec. of L. Lerner in Supp. of Mtn. to Seal, R. 449. Lerner and Paz have submitted nothing more in the nearly three and a half years since that filing. The District Court never ruled on the motions, leaving the propriety of sealing material parts of the record unresolved.

On October 8, 2021, counsel for Petitioner-Plaintiffs wrote the District Court requesting a ruling on the pending motions. The District Court entered Counsel's correspondence on the docket as a Supplemental Memorandum in Support of the

motions to unseal. Supp. Memo, R. 453. Since then, another five months have passed without any action from the District Court.

## RELIEF SOUGHT

Pursuant to the All Writs Act, 28 U.S.C. § 1651, Petitioners, the named plaintiffs in the underlying class action, petition this Court to exercise its mandamus authority and issue an order directing the United States District Court for the Southern District of Ohio (Judge Michael R. Barrett) in *NorCal Tea Party Patriots, et al. v. The Internal Revenue Service, et al.*, No. 1:13-cv-00341, to vacate its temporary protective order (R. 345); deny Lerner and Paz's Motions to Seal (R. 392) and grant Plaintiffs' and the Cincinnati Enquirer's Motions to Unseal (R. 340, 386). Petitioners specifically request this relief in order to unseal Lerner's and Paz's deposition transcripts, as well as any filings in the underlying matter that are sealed because they reference those deposition transcripts.

This Court, recognizing the presumption of access to court records, should exercise its mandamus authority to correct a clear abuse of discretion and legal error on the part of the District Court that has resulted in and will continue to cause significant and irreversible harm to the Petitioners and the public.

## ISSUE PRESENTED

Whether this Court should exercise its mandamus authority to vacate a "temporary" protective order and unseal court records where the District Court never

made the findings required by *Shane Group* and has not ruled on pending motions regarding the propriety of sealing those records for several years.

## PROCEDURAL HISTORY

Petitioners are the Plaintiffs in the underlying class action against the United States, the IRS, and certain IRS employees which alleged that the IRS improperly targeted conservative groups for increased scrutiny when those groups applied for tax-exempt status. The suit was filed on May 20, 2013. Complaint, R. 1.

On April 12, 2017, several months before their merits depositions were taken, Lois Lerner and Holly Paz, defendants in the lawsuit due to their former management roles at the IRS, moved for a protective order prospectively sealing the entirety of their deposition transcripts and restricting dissemination of the sealed deposition transcripts and testimony to the attorneys of record. Mtn. for Protective Order, R. 330-334. Ms. Lerner and Ms. Paz did not at that time (and in later briefing, never did) allege that the testimony covered private or personal matters. *Id*. Instead, they argued that a protective order, and later, permanent sealing, was needed to protect them from threats, harassment, and intimidation from citizens who allegedly had been (or in the future, would be) driven to anger by public disclosure and discussion of Lerner's and Paz's testimony about how they had discharged their official duties. R. 331 at 3-7. Thereafter, Plaintiffs submitted a Motion to Unseal Court Filings. R.

5

340. Intervenor Cincinnati Enquirer also submitted an opposition to the Motion for Protective Order. R. 342.

The District Court issued a Protective Order before Lerner and Paz's merits depositions, on May 17, 2017. Prot. Ord., R. 345. The District Court took care to explain that it was only acting to preserve the status quo "during the discovery phase, as a contrary order would strip the court of its ability to order meaningful relief should the court at a later date determine that public disclosure of the depositions would compromise Movants' safety." *Id.* at p. 3, Page ID #11254. The order indicated that if a litigant wished to file designated materials in the record, it must first seek leave and at that juncture, any litigant wishing to maintain the designated materials as sealed would bear the burden of overcoming the presumption of access to court documents in accordance with *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 306 (6th Cir. 2016). *Id.* The District Court reserved ruling on Petitioner-Plaintiffs' request that the court unseal the briefing on the motion for protective order "until the matter of sealing the depositions is properly before the Court." *Id.* Both sides later entered portions of those "temporarily" sealed depositions into the record, including the parties' briefing on summary judgment.

Recognizing that under *Shane Group* and its progeny, this place-holder discovery order could not suffice as the District Court's last word on an issue of constitutional import, the Plaintiffs, Lerner and Paz, Intervenor the Cincinnati

6

Enquirer, and *amici* the Ohio Attorney General and Judicial Watch, devoted substantial time to briefing the question of whether the District Court had authority to issue a permanent and complete seal order. The submissions addressed the question of whether Lerner and Paz had (i) overcome the strong presumption in favor of openness, and (ii) established that the extent of the seal—here, a blanket order of secrecy covering all the transcripts—was "narrowly tailored" to meet any specific privacy interest that would be vindicated by a seal. *Shane Grp., Inc.*, 825 F.3d at 305-306; *Lipman v. Budish*, 974 F.3d 726, 753-4 (6th Cir. 2020).

This briefing continued from 2017 and into 2018 while the Parties' class action settlement was being noticed and approved over the course of several months. Even after the parties reported their settlement to the Court, the Intervenor Cincinnati Enquirer filed a Motion to Unseal Plaintiff's summary judgment response brief. R. 386 (filed on September 8, 2017). Soon afterwards, Lois Lerner and Holly Paz submitted a Motion to Seal the unredacted versions of documents referencing their deposition transcripts. Mtn. to Seal, R. 392. Throughout the first half of 2018, *amici* the State of Ohio and Judicial Watch were allowed over Lerner and Paz's objections to file briefs supporting public access. *See* State of Ohio Brief, R. 427; Judicial Watch Brief, R. 428.

The Parties eventually settled the underlying dispute as approved by the District Court on August 28, 2018. Ord. Appr. Settlement, R. 431. In that Order, the

7

Court expressly carved out and reserved ruling on certain motions related to the sealing and confidentiality of the Lerner and Paz transcripts and retained jurisdiction to decide those motions:

> This Court retains jurisdiction to enforce the terms of the Settlement Agreement as needed. In addition, the Court expressly reserves its decision on whether unseal the transcripts of Lois Lerner and Holly Paz and place them in the public record. Nothing in this order or in the final judgment on Plaintiffs' claims shall be construed as a denial of the motion(s) to unseal those transcripts, which the Court retains jurisdiction to decide at a later time.

*Id.*, Page ID # 19531.

The day after entering that order, the District Court heard in-person oral argument from several parties and *amici* on the motions regarding the sealing and confidentiality of the Lerner and Paz transcripts, which by that point had been in effect for a year. R. 432 (minute entry of hearing noting docket numbers 340, 386, and 392 were heard with court's decision to follow). Later, in November 2018, over Plaintiffs' objection, Lerner supplemented the record (again, filed under seal without findings as to whether sealing was proper under *Shane Group*) alleging she had another reason to fear threats. Suppl. Memos in Supp., R. 444, 445, 449.

In the three and a half years since that hearing, no ruling has issued.[2] On October 8, 2021, counsel for Petitioner-Plaintiffs wrote the District Court requesting a ruling on the pending motions to unseal the records, which the District Court docketed as a Supplemental Memorandum in Support of the motions to unseal. R. 453. Neither Lerner nor Paz have filed a response. Since then, another five months have passed without any action from the District Court.

Though the District Court claimed that nothing in its August 28, 2018 order "shall be construed as a denial of the motion(s) to unseal" its failure or refusal to rule on the motions in the impending three years effectively denies those motions without allowing for traditional appellate review under 28 U.S.C. § 1291 or the collateral order doctrine. Because of the District Court's failure to rule, the transcripts at issue in the Motions – as well as filings in the record which reference those transcripts – have remained under seal for over four years without any findings of fact or

_____

[2] The Parties stipulated to the dismissal of the case on January 1, 2019, but left the sealing issues before the District Court, just as the Court's order approving the class action settlement had done. *See* Stipulation of Dismissal, R 451 at p. 2, Page ID #20070 ("This dismissal does not impact or resolve the pending motions before the Court on whether to unseal the deposition transcripts for Lois Lerner and Holly Paz and related materials. Consistent with the Court's Order Granting Final Approval of Class Action Settlement (Doc. #431, at PageID #19531-32), nothing in this stipulation of dismissal is to be construed as a dismissal, waiver, or withdrawal of the motions and legal arguments to unseal those transcripts, which the Court expressly retained jurisdiction to decide.").

conclusions of law regarding the propriety of sealing as required by law. *See Shane Grp.,* 825 F.3d at 306.

## REASONS WHY THE WRIT SHOULD ISSUE

I.  **The deposition transcripts and filings citing those transcripts are court records to which the presumption of openness attached.**

At issue here are two categories of documents which have, in effect, been permanently sealed by the District Court's "temporary" protective order and subsequent inaction: (i) the transcripts of the depositions of Lois Lerner and Holly Paz and (ii) filings in the record which reference or incorporate portions of those transcripts. The transcripts were filed in their entirety as exhibits to both the United States' motion for summary judgment and the Petitioner-Plaintiffs' motion in opposition. *See*, e.g., R. 364-3 (Def. U.S.'s Index of Exhibits in Support of MSJ listing "43. Holly Paz, Deposition Transcript, Merits Discovery" and "44. Lois Lerner, Deposition Transcript, Merits Discovery"); R. 375-1 (Plts.' Memo, in Opp. to MSJ) (sealed); R. 375-2, 375-5 (Plts.' Exs. 46 & 104, Lerner Depo. Transcript) (sealed); R. 375-3, 375-4 (Plts.' Exs. 47 & 65, Paz Depo. Transcript) (sealed).

The public holds a qualified constitutional right of access to court documents that extends well beyond judicial opinions. *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 13–14 (1986). The right attaches to civil proceedings, *Detroit Free Press v. Ashcroft,* 303 F.3d 681, 695–96 (6th Cir. 2002), and constitutional

standards apply not only to courtroom proceedings, but to dockets, pleadings, and documents attached to pleadings. *See Shane Grp.*, 825 F.3d at 308 (holding district court abused discretion when it sealed various filings and 194 exhibits in case without requisite findings); *see also Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 92 (2d Cir. 2004); *In re New York Times Co.,* 828 F.2d 110, 114 (2d Cir. 1987).

While a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of good cause, at the adjudication stage, very different considerations apply. *See Shane Grp.*, 825 F.3d at 305. The line between the discovery and adjudicative stages is crossed when the parties place material in the court record. *Id.* Unlike information merely exchanged between the parties, "[t]he public has a strong interest in obtaining the information contained in the court record." *Id.* (citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). The public's interest in the record concerns the litigation's result, the conduct giving rise to the dispute, or both. *Id.* (citing *Brown & Williamson*, 710 F.2d at 1179). When the interest focuses on the conduct giving rise to the case, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id.* In any case, the public is entitled to assess for itself the merits of judicial decisions. *Id.* (citing *Brown & Williamson*, 710 F.2d at 1181) ("The public has an interest in ascertaining

what evidence and records the District Court … relied upon in reaching [its] decisions.")

The burden of overcoming that presumption is borne by the party that seeks to seal the records, *Shane Grp.*, 825 F.3d at 305 (citing *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)), and the burden is a heavy one: "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). Moreover, the greater the public interest in the litigation's subject matter the greater the showing necessary to overcome the presumption of access. *See Brown & Williamson*, 710 F.2d at 1179. The public's interest here – a class action alleging violation of constitutional rights by the federal government and its employees – could not be higher. *United States v. Beckham*, 789 F.2d 401, 413 (6th Cir. 1986) ("[W]hen the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records.").

Even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason. *See, e.g.*, *Press–Enter. Co. v. Superior Court of California, Riverside Cnty.*, 464 U.S. 501, 509-11 (1984). The proponent of sealing must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter*, 297 F.3d at 548. In like fashion, a district court that seals court

12

records must first set forth specific findings and conclusions "which justify nondisclosure to the public." *Brown & Williamson*, 710 F.2d at 1176.

A court's failure to set forth those reasons—as to why the interests in nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than needed—is itself grounds to vacate an order to seal. *Shane Grp.*, 825 F.3d at 306.

Summary judgment is an adjudicative stage at which the presumption of openness attaches. *See Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons."); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006) ("[T]here is a presumption of access to documents submitted on a summary judgment motion."); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986). It is the "act of filing *vel non* that trigger[s] the presumption of access." *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993).

The presumption of openness attached to the deposition transcripts and the briefs and filings referencing those transcripts when they were filed in the record, including as exhibits to and citations in both the United States' motion for summary judgment and the plaintiffs' opposition to the same. *See*, e.g., R. 364-3 (Def. United

13

State's Index of Exhibits in Support of MSJ listing "43. Holly Paz, Deposition Transcript, Merits Discovery" and "44. Lois Lerner, Deposition Transcript, Merits Discovery"); R. 375-1 (Plts.' Memo, in Opp. to MSJ) (sealed); R. 375-2, 375-5 (Plts.' Exs. 46 & 104, Lerner Depo. Transcript) (sealed); R. 375-3, 375-4 (Plts.' Exs. 47 & 65, Paz Depo. Transcript) (sealed).

Because the presumption of openness attached when these transcripts were filed in the record, the District Court was required to make the *Shane Grp.* findings *before* sealing the records. It did not, an *ipso facto* abuse of discretion. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 940 (6th Cir. 2019) ("No such findings or conclusions were made in this case, and the district court *ipso facto* abused its discretion").

## II. The District Court's inordinate delay in ruling on the motions while allowing the records to remain sealed renders this case appropriate for resolution by writ of mandamus.

This case arrives before the Court in an unusual posture, but this Circuit has regularly resolved disputes regarding the sealing of court records. The Court has unsealed records *sua sponte*, *Beauchamp v. Fed. Home Loan Mortg. Corp.*, 658 F. App'x 202, 207 (6th Cir. 2016), and recognized that orders sealing records can satisfy the collateral order doctrine. *See Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 592 (6th Cir. 2016); *Application of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 343 (6th Cir. 1987). If the District Court had ruled on the pending

14

motions at any time during the three and a half years they have been pending, Petitioners could have brought this appeal to the Court as a collateral order appeal. Here, however, the District Court expressly reserved ruling on the motions to seal the record, even as it resolved the rest of the case:

> In addition, the Court expressly reserves its decision on whether unseal the transcripts of Lois Lerner and Holly Paz and place them in the public record. Nothing in this order or in the final judgment on Plaintiffs' claims shall be construed as a denial of the motion(s) to unseal those transcripts, which the Court retains jurisdiction to decide at a later time.

Order Granting Mtn. for Final App. of Class Action Settlement, R. 431, Page ID #19531.

Because the District Court has not ruled on the motions in the three and a half years since it took the matter under advisement and retained jurisdiction for that specific purpose, there is no final order from which Petitioners may appeal under 28 U.S.C. § 1291, nor an interlocutory order which Petitioners may appeal under the collateral order doctrine. The District Court's failure to enter *any* order renders its "temporary" order sealing the records and subsequent failure to address the propriety of that seal unreviewable but for the availability of a writ of mandamus. Permitting the District Court to indefinitely sit on the motions without any means of appellate intervention would create a blueprint to undermine *Shane Group* altogether.

Fortunately, this Court need not shy away from the task of rectifying the District Court's inaction. "The traditional use of the writ in aid of appellate

jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or *to compel it to exercise its authority when it is its duty to do so*." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S. Ct. 938, 941, 87 L. Ed. 1185 (1943) (emphasis added). Not only does this case meet the traditional factors justifying a writ of mandamus to compel the District Court to act, as addressed below, but this Circuit has routinely exercised its mandamus authority to rectify inexplicable and harmful delays in a district court's ruling. *See In re Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 606 F.3d 855, 867 (6th Cir. 2010) (ordering trial court to rule on disparate-impact claims which were under advisement since conclusion of trial more than two years earlier); *In re Simons*, 567 F.3d 800, 800 (6th Cir. 2009) (writ issued to unseal records pursuant to Crime Victims' Rights Act even though motion to unseal had not been ruled upon where three month delay effectively denied relief sought by petitioner); *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 782 (6th Cir. 2007) (stating that if plaintiffs wanted to avoid claims being mooted due to district court's nine year delay in issuing its motion to dismiss decision, they could have brought mandamus action against district court judge to compel action).

To merit mandamus relief, Petitioners must demonstrate a "clear abuse of discretion" by the District Court. *Mallard v. U.S. Dist. Court,* 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) (citation and internal quotation marks

omitted). The District Court has permitted important transcripts and documents in the record to remain sealed without the findings required by *Shane Group*. This Court has previously stated that the sealing of court records without the required *Shane Group* findings is an *ipso facto* abuse of discretion. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 940 ("No such findings or conclusions were made in this case, and the district court *ipso facto* abused its discretion"). Thus, there is no question that the District Court abused its discretion here.

Where the District Court has clearly abused its discretion, this Court uses a five-factor test to determine whether to grant a writ of mandamus:

> We examine whether: (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression. These factors need not all be met, and some factors will often be balanced in opposition to each other.

*John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008).

Because the District Court clearly abused its discretion and, as addressed below, the *John B.* factors weigh in favor of relief, this Court should issue a writ of mandamus unsealing the records.

**a. The District Court abused its discretion by sealing court records without first making the findings unambiguously required by this Circuit's precedent.**

This Court's decision in *Shane Group* thoroughly examined the public's right to access court documents and the procedures a District Court must undertake to seal court records in defiance of that right. "The courts have long recognized, therefore, a 'strong presumption in favor of openness' as to court records." *Shane Grp.*, 825 F.3d at 305 (citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)). "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Id.* (citing *Brown & Williamson*, 710 F.2d at 1180).

A court that chooses to seal court records must set forth specific findings and conclusions "which justify nondisclosure to the public." *Id.* at 306 (citing *Brown & Williamson*, 710 F.2d at 1176). "And a court's failure to set forth those reasons—as to why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary—is itself grounds to vacate an order to seal." *Id.* (citations omitted). A court's order to seal its records is reviewed for an abuse of discretion, although, "[i]n light of the important rights involved, the district court's decision is not accorded" the deference that standard normally brings. *Id.* (citing *In re Knoxville News–Sentinel Co.*, 723

18

F.2d 470, 476 (6th Cir. 1983)). A court's failure to set forth the required analysis is

an abuse of discretion. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 940.

On May 18, 2017, the District Court partially granted Lerner and Paz's motion

for protective order:

> Here, good cause exists to maintain the confidentiality of the
> depositions during the discovery phase, as a contrary order would strip
> the Court of its ability to order meaningful relief should the Court at a
> later date determine that public disclosure of the depositions would
> compromise Movants' safety. To that end, the Court will enter a limited
> protective order as follows: the litigants, which for purposes of this
> Order also includes Movants, may *designate* (not seal) the Paz and
> Lerner depositions as "Confidential—Attorneys' Eyes Only." Such a
> designation shall serve to restrict access, dissemination, and use of the
> designated materials to counsel for Plaintiffs, Defendants, and Former
> Individual Management Defendants Lois G. Lerner and Holly Paz, in
> this action. At the appropriate time, any litigant wishing to file
> designated materials in the Court record must first seek leave. At that
> juncture, any litigant wishing that the designated materials be sealed in
> the Court record will bear the burden of overcoming the presumption
> of access to court documents, in accordance with *Shane Group*.

Order Granting Mtn. for Prot. Order, R. 345 at p. 4, Page ID # 11255.

While acknowledging *Shane Group*, the District Court kicked the proverbial

can down the road to resolve after the depositions took place and information from

them was entered into the record. As required by this order, when the parties began

briefing summary judgment requiring reference to the depositions in the court record

and the filing of those transcripts as exhibits, Lerner and Paz moved to seal. Mtn. to

Seal, R. 392. They asked the District Court to seal the transcripts as well as the

unredacted versions of documents referencing those transcripts. *Id.* These motions were opposed (or at least not supported) by nearly every other party and *amici* in the case. The District Court never ruled on the subject motions, never made any findings regarding the propriety or scope of the seal, and, per its earlier "temporary" protective order, the case continued with all copies of and references to the depositions filed under seal.

Those records remain sealed today without explanation, an abuse of discretion by the District Court. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 940 ("No such findings or conclusions were made in this case, and the district court *ipso facto* abused its discretion").

### b.  Petitioners lack other adequate means to attain the desired relief.

The District Court's failure to issue any order on the pending motions regarding the sealing of its records prevents Petitioners from seeking their desired relief through either a direct or collateral order appeal. A direct appeal under 28 U.S.C. § 1291 requires a final order. See *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (internal quotation omitted) (The Supreme Court has "consistently interpreted this language as indicating that a party may not take an appeal under this section until there has been a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). Because there is no order on

the pending motions, much less a final one, to appeal, Petitioners lack adequate means to seek relief via a direct appeal under 28 U.S.C. § 1291. Similarly, although orders sealing or unsealing records may be heard under the collateral order doctrine, *Rudd Equip. Co., Inc.*, 834 F.3d at 592, that doctrine still requires an *order* of some kind from which the appeal may be taken.

Because the District Court chose to leave the motions undecided for years, no order exists – final or otherwise – from which Petitioners may seek relief.  Absent intervention from this Court, the District Court's record will remain sealed without any findings as to the propriety or scope of that seal. This Court's precedent and the public's right to access require more.

### c. Absent a writ, Petitioners and the public will be damaged in a way not correctable on appeal.

The Petitioners here (plaintiffs below) are 501(c)(4) social welfare organizations whose missions and purposes, at least in part, include advocating for limited government and transparency while also acting as watchdogs for government overreach. Petitioners furthered their mission by seeking redress in the underlying lawsuit, but now lack the ability to use records from the suit to educate the public about corruption and government misconduct, which undermines their mission. The public and media also have a right to examine and weigh the merits of the serious accusations of misconduct made in this case, the first ever class action against the

21

IRS which was settled for a multimillion-dollar sum. Additionally, where the public's First Amendment rights to access are undermined because the record was closed without the necessary procedure, the abridgement of those First Amendment rights always constitutes irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Public interest in the IRS in particular remains high. Recently, regulations were proposed and withdrawn regarding tracking individual and group transactions, which, for many, raised questions about the potential for future abuse of that information.[3] How might this information be used to see what people or groups are pooling money for political purposes, particularly unpopular ones? Could that information be used to subject specific groups to heightened scrutiny or enforcement actions—conduct that could discriminate based on viewpoint or constitute retaliation under First Amendment doctrine? Although it is being shielded by the District Court, the public could look to the Lerner and Paz transcripts in this very litigation to see

---

[3] *See* "New Proposal for IRS Reporting of Consumer Personal Account Transactions", Katie Harrison, BKD CPAs & Advisors, September 9, 2021, available online at https://www.bkd.com/alert-article/2021/09/new-proposal-irs-reporting-consumer-personal-account-transactions ("Many financial institutions and trade groups have reacted negatively to this proposal."); "Breaking Down the Plan to Report Your Bank Account to the IRS", Kelly Phillips Erb, Bloomberg Tax & Accounting, October 14, 2021, available online at: https://news.bloombergtax.com/tax-insights-and-commentary/breaking-down-the-plan-to-report-your-bank-account-to-the-irs; "Venmo, PayPal and other payment apps have to tell the IRS about your side hustle if you make more than $600 a year.", Michelle Singletary, Washington Post, January 21, 2022, available online at: https://www.washingtonpost.com/business/2022/01/21/venmo-paypal-new-income-reporting-requirement/

that there is already a blueprint for this type of abuse to take place. Perhaps just as importantly, concerned readers could understand the mindset of longtime public officials who say they are utterly surprised that I.R.S. activity they consider to be routine—even banal—could seriously injure their citizen-taxpayers.

Given the unique posture of this case, there will not be an opportunity for appellate review other than in this proceeding, unless the District Court breaks its years-long silence and rules on the motions to seal and unseal. The issues involved are not otherwise correctable on appeal because no appeal will be ripe absent some action from the District Court.

### d. The District Court's actions manifest a persistent disregard of the federal rules and raise important issues regarding the court's responsibility to timely rule on motions to seal court records.

The District Court recognized throughout this case that its decisions implicated the public's right to access its records and that those decisions were governed by this Circuit's precedent as explained in *Shane Group. See* Order Granting Mtn. for Prot. Order, R. 345 at p. 4, Page ID # 11255 (acknowledging that party seeking to seal documents will have to make showing under *Shane Group* once materials were filed in the record). The District Court acknowledged that if it was to keep the subject depositions under seal, at some point it would have to make the findings required by *Shane Group*, including that (i) compelling reasons justified the

23

sealing of the records and (ii) the seal was not broader than necessary to protect the interests justifying the seal. *Id.*

Despite this explicit and repeated recognition of its own role in ensuring access to its record, the District Court disregarded its well-established duty, allowing transcripts and filings in its record to remain under seal indefinitely without explanation or justification. At this juncture, a writ of mandamus is the only meaningful avenue to redress the issue. If a district court may permit a "temporary" protective order to become permanent and unreviewable by indefinitely reserving jurisdiction to decide the issue and then failing to rule, *Shane Group*'s protections will mean little.

### III. Any potential harm to Lerner and Paz which may have justified sealing the record years ago has diminished with the passage of time, but the Constitutional presumption of openness and the public's right to access court documents has not.

The public has a heightened interest in the conduct and alleged misconduct of government officials. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 299 (U.S. 1964) (Goldberg, J., concurring)) ("In a democratic society, one who assumes to act for the citizens in an executive, legislative, or judicial capacity must expect that his [or her] official acts will be commented upon and criticized."). This interest was high when the underlying litigation was ongoing and has diminished only marginally, if at all, with the passage of time.

24

Lerner and Paz were defendants in this case because of their central roles in the underlying controversy, under which the I.R.S., under their leadership, targeted conservative groups for increased scrutiny when they applied for tax exempt status. References to "Lois Lerner" continue to be used as a red flag when controversies involving government officials targeting their political opponents arise. And with newly proposed regulations from the IRS, the public's interest in what information it collects and how it might use or misuse that information is at its peak.[4]

Particularly in the face of this heightened public interest, only the most compelling reasons may justify the sealing of court records. *Shane Grp.*, 825 F.3d at 305 (citing *In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). Those reasons typically involve trade secrets or the privacy rights of third parties. *See Shane Grp.*, 825 F.3d at 308 (citing *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 546 (7th Cir. 2002) ("In civil litigation only trade secrets, information covered by a recognized privilege…and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret on appeal."). This standard is strictly applied in class actions because of the interest of the broader public in the outcome. *Kondash v. Kia Motors Am., Inc.*,

---

[4] *See* n. 2, *supra*.

767 F. App'x 635, 637 (6th Cir. 2019) (standards "should be applied [...] with particular strictness" in class actions).

Back in 2017, Lerner and Paz cited two primary reasons for sealing their depositions in their entirety: (i) safety for them and their families and (ii) avoiding unflattering depictions of themselves and their involvement in the underlying controversy. *See* Memo. in Supp. of Mtn. to Seal, R. 392-1, Page ID ## 18915-6 ("Indeed, Plaintiffs themselves have aggressively promoted the very caricatures of Mss. Lerner and Paz in the public consciousness that have inspired many of the threats they received…Here, returning Mss. Lerner and Paz to the media spotlight places them at risk, regardless of what they actually said in those depositions. The only way to keep this litigation from putting them in the media spotlight is to completely seal the depositions and summary judgment materials quoting them.").

Lerner and Paz provided only a conclusory statement that mere publicity regarding the release of their depositions will "renew the threats and harassment." *Id.*, Page ID # 18916. Such a conclusory statement does not meet the "most compelling reasons" standard. *See In re Southeastern Milk Antitrust Litig.*, 666 F.Supp.2d 908, 915 (E.D. Tenn. 2009) (A conclusory statement that a party will be injured by the release of court records is insufficient to overcome the presumption in favor of public access).

Further, the last alleged "threat" or harassment of Lerner or Paz took place years ago. There is no evidence in the record that Lerner or Paz face continued harassment or that unsealing the transcripts after this substantial passage of time would have any negative impact on them whatsoever. The public interest in the activities of the IRS and its employees is high and growing. The risk to Lerner and Paz if the transcripts are unsealed at this point is minimal. The transcripts should never have been sealed and should not remain sealed now.

## IV. The "temporary" seal in place is not narrowly tailored.

The wholesale sealing of the entirety of the deposition transcripts and any filings referencing those transcripts is not narrowly tailored to protect any compelling privacy interest Lerner and Paz may have. Even when a party can show a compelling reason to seal a court record, "the seal must be narrowly tailored to serve that reason." *Shane Group*, 825 F.3d at 305. The proponent "must analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305-306. The District Court did not consider whether sealing the entire transcripts and all filings referencing them was narrowly tailored. Lerner and Paz similarly failed to identify any specific content within their depositions they claim is sensitive and needed to be sealed, evidence that they are not concerned with the content of the depositions at all but only with the media attention and embarrassment that may result.

27

## CONCLUSION

The public is entitled to know how Lerner and Paz, acting in their official capacity as IRS employees, carried out their duties and to judge for itself the propriety of their actions. Actual or alleged misconduct by a government official is typically going to be embarrassing for that official, especially when the allegations are substantiated, but that embarrassment does not justify shielding the official from public scrutiny. Because the District Court abused its discretion and undermined the public access to its records, this Court should issue a writ of mandamus vacating the District Court's temporary protective order (R. 345); denying Lerner and Paz's Motions to Seal (R. 392) and granting Plaintiffs' and the Cincinnati Enquirer's Motions to Unseal (R. 340, 386).

Dated: April 19, 2022

Respectfully submitted,

**GRAVES GARRETT, LLC**

*/s/ Edward D. Greim*
Edward D. Greim
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com

***Counsel for Petitioners***

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that this petition for mandamus was filed with the Clerk of Court on April 19, 2022, via this Court's electronic filing system. It is also hereby certified that a copy of this Petition will be filed in the record in case number 1:13-cv-00341 providing notice to the parties in the District Court case and that service of this petition will be made by sending one copy thereof via FedEx to each of the following, including counsel of record for the Respondents:

The Honorable Michael R. Barrett
United States District Court
for the Southern District of Ohio
Potter Stewart U.S. Courthouse
Room 227
100 East Fifth St.
Cincinnati, OH 45202

Jennifer Auchterlonie
U.S. Dept. of Justice, Tax Division
PO Box 26, Ben Franklin Station
Washington, DC 20044
202-616-2901
Jennifer.D.Auchterlonie@usdoj.gov
Counsel for Respondent United States

Jeremy N Hendon
U.S. Dept. of Justice, Tax Division
PO Box 683, Ben Franklin Station
Washington, DC 20044
202-353-2466
202-307-0054 (fax)
Jeremy.Hendon@usdoj.gov
Counsel for Respondent United States

Brigida Benitez
Steptoe & Johnson LLP
1330 Connecticut Avenue,
Washington, DC 20036
202-429-6261
202-429-3902 (fax)
bbenitez@steptoe.com
Counsel for Respondents Lerner and Paz

Catherine Cockerham
Steptoe & Johnson LLP
1330 Connecticut Avenue NW
Washington, DC 20036
202-429-6438
202-429- 3902 (fax)
ccockerham@steptoe.com
Counsel for Respondents Lerner and Paz

Marcus Gadson
Steptoe & Johnson LLP
1330 Connecticut Avenue NW
Washington, DC 20036
202-429-6245
202-429- 3902 (fax)
mgadson@steptoe.com
Counsel for Respondents Lerner and Paz

30

Laura M Conner
U S Dept of Justice
Tax Division
555 4th St NW
Washington, DC 20001
202-514-6438
202-514-9868 (fax)
laura.m.conner@usdoj.gov
Counsel for Respondent Internal
Revenue Service

Grover Hartt, III
U.S. Department of Justice
Tax Division
717 N. Harwood, Ste. 400
Dallas, TX 75201
214-880-9733
214-880-9742 (fax)
grover.hartt@usdoj.gov
Counsel for Respondent Internal
Revenue Service

John Charles Greiner
Graydon Head & Ritchey LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
513-629-2734
513-651-3836 (fax)
jgreiner@graydon.com
Counsel for Respondent The Cincinnati Enquirer

*/s/ Edward D. Greim*
Attorney for Petitioners

31

## DOCUMENT INDEX

Dkt. 330 – Individual Management Defendants' Motion for a Protective Order

Dkt. 331 – (SEALED) Memo in Support of Former Individual Management Defendants' Motion for Protective Order

Dkt. 332 – (SEALED) Declaration of Lois Lerner

Dkt. 333 – (SEALED) Declaration of Michael Miles

Dkt. 334 – (SEALED) Declaration of Holly Paz

Dkt. 340 – Plaintiffs' Motion to Unseal Court Filings & Open the May 19th Hearing to the Public

Dkt. 342 – Cincinnati Enquirer's Motion to Intervene

Dkt. 345 – Order Granting Protective Order

Dkt. 364-3 – Def. U.S.'s Index of Exhibits in Support of MSJ

Dkt. 386 – Cincinnati Enquirer's Motion to Unseal

Dkt. 392 – Lerner & Paz's Motion to Seal

Dkt. 392-1 – Memo in Support of Motion to Seal

Dkt. 427 – Amicus Curiae Brief of the State of Ohio Opposing Motion to Seal

Dkt. 428 – Brief of Amicus Curiae Judicial Watch in Support of Motion to Unseal Depositions

Dkt. 431 – Order Granting Motion for Final Approval of Class Action Settlement

Dkt. 432 – Minute Entry for Hearing

Dkt. 444 – Motion for Leave to File Supp Declaration Under Seal (Lerner)

## <u>DOCUMENT INDEX CONTINUED</u>

Dkt. 445 – Memo in Opposition to Motion to File Supp. Declaration

Dkt. 449 – (SEALED) Supplemental Declaration of L. Lerner in Support
        of Motion to Seal

Dkt. 453 – Request to Rule on Pending Motions